IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RICHARD WAYNE WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:06-cv-00863-WKW-CSC |
| | ) | |
| RICHARD ALLEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>SPECIAL REPORT AND ANSWER</u>

COME NOW the Defendants, Commissioner Richard Allen, Jesse Giles, Darrell Parker, Stephen Walker, Marshall Larry Monk, Mary Taylor, Sharon McSwain-Holland, Dorothy Flowers, Camelia Cargle, Michael Smith, Carolyn Longmire, Mark Bruton, Rebecca Pittman, Sara Livingston, Aaron Patterson, Kenneth Cargle, David Pittman, Levy Richardson, Gladie Richardson, Terry Person, Inez Alexander, Carolyn Abercombie, Roosevelt Brown, Sherwin Carter, Daniel Rieben, Linda Brown, and Governor Bob Riley, by and through the undersigned counsel in the above-styled action, and file their Special Report and Answer pursuant to the November 28, 2006 Order (Doc. 24) and January 9, 2007 Order (Doc. 39) of this Honorable Court.  Defendants state as follow:

<u>PLAINTIFF'S ALLEGATIONS</u>

Plaintiff alleges various claims against the various Defendants.  The basic allegations are violations as to his Freedom of Religion, assault and battery, conspiracy to have Plaintiff killed, deliberate indifference, and negligence.

1

## DEFENDANTS

1.   Richard Allen, Commissioner
     Alabama Department of Corrections
     P.O. Box 301501
     Montgomery, AL 36130

2.   Jesse Giles, Warden III
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL 36016-0767

3.   Darrell Parker, Warden II
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL 36016-0767

4.   Stephen Walker, Chaplain
     Bullock Correctional Facility
     P.O. Box 5107
     Union Springs, AL 36089-5107

5.   Marshall Larry Monk, Captain
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL 36016-0767

6.   Mary Taylor, Lieutenant
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL 36016-0767

7.   Sharon McSwain-Holland, Lieutenant
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL 36016-0767

8.   Dorothy Flowers, Lieutenant
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL 36016-0767

9.   Camelia Cargle, Sergeant
     Ventress Correctional Facility
     P.O. Box 767
     Clayton, AL 36016-0767

10.   Michael Smith, Sergeant
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

11.   Carolyn Longmire, Sergeant
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

12.   Mark Bruton, Classification Specialist Supervisor
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

13.   Rebecca Pittman, Classification Specialist
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

14.   Sara Livingston, Steward III
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

15.   Aaron Patterson, Officer
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

16.   Kenneth Cargle, Officer
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

17.   David Pittman, Officer
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

18.   Levy Richardson, Officer
      Ventress Correctional Facility
      P.O. Box 767
      Clayton, AL 36016-0767

19. Gladie Richardson, Officer
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

20. Terry Person, Officer
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

21. Inez Alexander, Officer
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

22. Carolyn Abercombie, Officer
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

23. Roosevelt Brown, Officer
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

24. Sherwin Carter, Sergeant
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

25. Daniel Rieben, Chaplain
Ventress Correctional Facility
P.O. Box 767
Clayton, AL 36016-0767

26. Linda Brown, Regional Nurse Manager
Alabama Department of Corrections
P.O. Box 301501
Montgomery, AL 36130

27. Bob Riley, Governor
State of Alabama
c/o Alabama Department of Corrections
P.O. Box 301501
Montgomery, AL 36130

## DEFENSES

Defendants assert the following defenses to Plaintiff's claims:

1.  Defendants deny each and every material allegation contained in Plaintiff's Complaint and demand strict proof thereof.

2.  Defendants plead not guilty to the charges in Plaintiff's Complaint.

3.  Plaintiff's complaint fails to state a claim upon which relief can be granted.

4.  Plaintiff is not entitled to any of the relief requested.

5.  Defendants plead the defense of qualified immunity and aver that any purported action taken by any of them was reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by Plaintiff.

6.  Defendants are entitled to qualified immunity and aver it is clear from the face of the complaint that Plaintiff has not alleged specific facts indicating that any Defendant violated any clearly established constitutional right.

7.  Defendants cannot be held liable on the basis of *respondeat superior,* agency, or vicarious liability theories.

8.  Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

9.  The allegations contained in Plaintiff's Complaint against Defendants, fails to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. *See Oladeinde v. City of Birmingham,* 963 F. 2d 1481, 1485 (11th Cir. 1992); *Arnold v. Board of Educ. of Escambia County, Ala.,* 880 F. 2d 305, 309 (11th Cir. 1989).

10. Defendants plead all applicable immunities, including but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

11. Defendants were at all times acting under the color of state law and therefore, they are each entitled to substantive immunity.

12. Defendants plead the general defense.

13. This Court lacks subject matter jurisdiction due to the fact that even if Plaintiff's allegations should be proven, the allegations against these Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights.

14. All claims of Plaintiff against these Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution.

15. Defendants plead the affirmative defense that Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to Plaintiff.

16. Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

17. Defendants plead the affirmative defense of unclean hands.

18. Defendants plead the affirmative defense that Plaintiff has failed to mitigate his own damages.

19. Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. §1997e (a) and as such these claims should be dismissed.

20. Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against any of them and that any such award would violate the United States Constitution.

21. Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e) (c).

22. Plaintiff's claims are moot.

23. Defendants reserve the right to raise additional defenses.

### DISCLOSURES

In accordance with the November 28, 2006 Special Report Order, Defendants submit the following initial disclosures:

1. Attached affidavits of:

    1.    Carolyn Abercrombie, Officer

    2.    Inez Alexander, Officer

    3.    Roosevelt Brown, Officer

    4.    Mark Bruton, Classification Specialist Supervisor

    5.    Camelia Cargle, Lieutenant

    6.    Kenneth Cargle, Officer

    7.    Sherwin Carter, Sergeant

    8.    Dorothy Flowers, Lieutenant

    9.    J.C. Giles, Warden III

    10.    Sara Livingston, Steward III

    11.    Carolyn Longmire, Sergeant

    12.    Sharon McSwain-Holland, Lieutenant

13.     M. Larry Monk, Captain

14.     Darrell Parker, Warden II

15.     Terry Person, Officer

16.     Rebecca Pittman, Classification Specialist

17.     David Pullom, Officer

18.     Gladie Richardson, Officer

19.     Levy Richardson, Officer

20.     Daniel Rieben, Chaplain

21.     Michael Smith, Sergeant

22.     Mary Taylor, Lieutenant

23.     Stephen Walker, Chaplain

28.     Linda Brown, Regional Nurse Manager

2. The following persons may have personal knowledge of the facts relevant to the claims asserted by Plaintiff or the defenses asserted by Defendants:

Carolyn Abercrombie, Officer

Inez Alexander, Officer

Roosevelt Brown, Officer

Mark Bruton, Classification Specialist Supervisor

Camelia Cargle, Lieutenant

Kenneth Cargle, Officer

Sherwin Carter, Sergeant

Dorothy Flowers, Lieutenant

J.C. Giles, Warden III

Sara Livingston, Steward III

Carolyn Longmire, Sergeant

Sharon McSwain-Holland, Lieutenant

M. Larry Monk, Captain

Darrell Parker, Warden II

Terry Person, Officer

Rebecca Pittman, Classification Specialist

David Pullom, Officer

Gladie Richardson, Officer

Levy Richardson, Officer

Daniel Rieben, Chaplain

Michael Smith, Sergeant

Mary Taylor, Lieutenant

Stephen Walker, Chaplain

Linda Brown, Regional Nurse Manager

Ruth Naglich, Associate Commissioner of Health Services

George Lyrene, Medical Director

Paul Whaley, Classification Director

Terrance McDonnell, Deputy Commissioner of Special Programs

3.     Clear and legible copies of the documents relevant to claims or defenses asserted in the action are as follows:

24.     Inmate Summary Data

25.     Inmate Disciplinary Sheet

26.    Administrative Regulation 333, Religious Program Services

27.    Administrative Regulation 403, Disciplinary Hearing Procedures For Major Rule Violations

## STATEMENT OF THE FACTS

Plaintiff is an inmate within the Alabama Department of Corrections. He is currently confined at Easterling Correctional Facility in Clio, Alabama; however, the incidents of Plaintiff's complaint and amended complaint took place while he was confined at Ventress Correctional Facility in Clayton, Alabama. Plaintiff is serving a 25-year sentence for Burglary I. (Ex. 24)

Plaintiff has made allegations that are involved in several instances over the course of several months. Defendants will try to address the issues according to affidavits and incidents.

Defendant Abercombie states that the only contact that she had with Plaintiff was through her duties as Law Library Officer and providing Notary services. (Ex. 1) She was not involved in any of the incidents as stated by Plaintiff. (Ex. 1)

In April, 2005, Plaintiff refused to take the TB skin test. (Ex. 28) Plaintiff was placed in Segregation as a safety precaution. (Ex. 28) Plaintiff finally agreed to take the TB skin test. (Ex. 28) The results were negative and Plaintiff was released from Segregation. (Ex. 28) On March 25, 2006, Defendant Person was assigned to the Health Care Unit where he was informed by Nurse Anthonette Marsh that Plaintiff refused to take his annual TB test. (Ex. 15) All supervisors were notified of the matter. (Ex. 15) Plaintiff was processed into Administrative Segregation for intentionally creating a health

10

hazard. (Ex. 15)  Plaintiff had a chest x-ray test. (Ex. 28)  The results were negative and Plaintiff was released from Segregation. (Ex. 28)

As to the incident of November 23, 2005, there was a loud disturbance in Dorm 10.  (Ex. 7, 11, 19)  Defendants Carter and Longmire reported to the lobby where Plaintiff was on his knees at the right of the cubicle door. (Ex. 7, 11)  Plaintiff was shouting to all of the inmates that were exiting the Dorm, so that the Dorm could be cleaned. (Ex. 7, 11, 19)  Plaintiff was trying to get the other inmates to rebel against the orders of Defendants Brown and L. Richardson. (Ex. 7, 11)  Plaintiff was shouting, "If we stick together we can get something done, I'm going to file and all ya'll are my witness, I know my rights, I'm gonna get me a lawyer." (Ex. 11)  Defendant Carter approached Plaintiff and instructed him to calm down. (Ex. 7)  Plaintiff got up and ran to the front door. (Ex. 7, 11)  Defendant Carter grabbed the coat and belt of Plaintiff, which Plaintiff then began to struggle with Defendant Carter. (Ex. 7, 11)  Defendant Carter and Plaintiff fell to the floor where Plaintiff continued to struggle. (Ex. 7, 11)  Defendants Carter, Brown and L. Richardson restrained Plaintiff with handcuffs while Plaintiff was on the floor. (Ex. 3, 7, 11, 19)  During the process of placing the handcuffs on Plaintiff, Defendant L. Richardson was kicked in the stomach area. (Ex. 7, 19)  Plaintiff continued to yell; but the use of necessary force stopped. (Ex. 3, 7, 19)  Defendant Longmire was clearing other inmates from the lobby when Inmate Alton Carter exited and returned stating "You officers didn't have to do that to that inmate, we inmates need to stick together." (Ex. 3, 11) Defendant Brown instructed Inmate Carter to get back, but Inmate Carter refused and was restrained by Defendants Carter, Brown and Pullom. (Ex. 3, 11, 17) Defendant Alexander was not at work on the day of the incident. (Ex. 2)

Plaintiff alleges that persons at Ventress Correctional Facility have conspired to elevate his custody level so that Plaintiff will be transferred to a higher level security facility and later be killed. On February 7, 2006, Plaintiff had his Annual Progress Review. (Ex. 16) Based upon the Alabama Department of Corrections Classification Manual, "medium security inmates with no disciplinary action in the last ninety (90) days and who have served at least three (3) months at a medium security facility and no sentence of life without parole (or life barred from parole) who meet the applicable time frame for consideration" are considered for minimum custody. (Ex. 16) Plaintiff was not considered for minimum custody due to the fact that he did not meet the criteria for minimum custody. (Ex. 16) Plaintiff "had received three (3) major disciplinaries within the last six (6) months and failed to maintain a ninety (90) day clear record." (Ex. 16, 25) There was no recommendation for Plaintiff's custody level to be increased or for Plaintiff to be transferred to a higher security institution. (Ex. 16, 18) "A lateral transfer to another Medium Security, Level 4 institution was recommended for Plaintiff by Respondent, Psychological Associate and Deputy Warden." (Ex. 16)

Defendant Bruton states that he does not have anything to do with religious programs at Ventress. (Ex. 4) He further states that he has not discriminated against Plaintiff. (Ex. 4) Defendant Bruton states that race and religious affiliation affect him in any way. (Ex. 4)

Plaintiff was in a single cell when his religious materials came into the institution. (Ex. 20) Defendant C. Cargle gave the religious materials to Defendant Rieben for verification of approval. (Ex. 5) The materials were put into storage until Plaintiff was released from lockup. (Ex. 20) Defendant Rieben asked security to look for Plaintiff's

property and to allow Plaintiff to have the religious materials. (Ex. 20)  Plaintiff notified

Defendant Rieben that his principle badge was missing. (Ex. 20)  A search was made for

the badge; however, it was not found. (Ex. 20)

During Ramadan, double portions were given during the approved time. (Ex. 10,

22)  The sandwich closes at 3:30 pm each day that is open, even during Ramadan. (Ex.

22)  All measures were taken ensure the security, custody and control of the institution

during Ramadan. (Ex. 22)

There was an internal power struggle in as to who would be "leader" in the Moors

Science Temple. (Ex. 13, 20)  The elected leader Inmate Clayton was having problems

with the group. (Ex. 20)  The problems were so severe that one member contacted the

State representative, Joseph Bonner. (Ex. 20)  Mr. Bonner, in turn, contacted the National

Prison Minister of the Moors Science Temple. (Ex. 20)  Mr. Bonner was to attend a

meeting on October 28; however, he was detained and could not attend. (Ex. 20)  Mr.

Bonner asked Defendant Rieben to relay a message that "R. McDowell, Bey of the

National Office hereby removes Sidney Clayton from position of acting Grand Sheik at

Ventress Correctional Facility." (Ex. 20)  Mr. Bonner further stated that an election was

to take place in one week and that Inmate Clayton would be eligible for the position. (Ex.

20)  In the mean time, Defendant Monk spoke with several of the inmates and advised

them of the ramifications if a "holy war" were to start in the Chapel. (Ex. 13)   On

November 4, 2005, Defendant Rieben delivered the message to the group. (Ex. 20)

Plaintiff confronted Defendant Rieben and Defendant Rieben contacted security to come

to the Chapel. (Ex. 20)   Defendant G. Richardson reported to the Chapel after an

announcement for all available officers to go to the Chapel.  (Ex. 18)  Plaintiff stated to

Defendant G. Richardson that he was having a problem with Defendant Rieben. (Ex. 18) Defendant G. Richardson escorted Plaintiff out of the Chapel. (Ex. 18)  When Defendant Smith arrived at the Chapel, he spoke with Plaintiff about the matter. (Ex. 18)

As to Plaintiff's allegations of medical care, Plaintiff has been seen in the Health Care Unit. (Ex. 28)  There is no experimental or research testing being performed on the inmates. (Ex. 28)

Defendants K. Cargle, Flowers, Giles, McSwain-Holland, Parker, Smith, and Walker have no knowledge of any of the incidents that Plaintiff alleges occurs. Ex. 6, 8, 9, 12, 14, 21, 23)

## ARGUMENT

### I.   Immunities

As is evident from Plaintiff's complaint, his claims are directed principally toward actions allegedly perpetrated by officials of the Alabama Department of Corrections (ADOC).  There are no claims directed specifically toward the Governor.

Though it is not couched as such in the complaint, Plaintiff's allegations appear to be an attempt to hold Commissioner Allen and the Governor vicariously liable.  Yet, "'[i]t is well established in [the Eleventh] Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability.'"  Cottone v. Jenne,  326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999).  Thus, the Governor or the Commissioner cannot be subjected to suit merely because other state officials or agents who may ultimately answer to them have allegedly violated the law.

Plaintiff's claims ramble and are confusing. There is a requirement for "heightened pleading" that attends section 1983 claims, especially those for which qualified immunity is raised as a defense. See Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003). As the Eleventh Circuit has held, "[i]n civil rights and conspiracy actions, . . . more than mere conclusory notice pleading is required" and "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory." Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984). The courts "'generally accord . . . official conduct a presumption of legitimacy.'" Gonzalez, 325 F.3d at 1235 (quoting United States Dep't of State v. Ray, 502 U.S. 164, 179 (1991)).

In the present case, the claims against the Defendants are confusing and ramble. Plaintiff has not attributed any specific actions to Defendants Allen and Riley. Some allegations are assigned collectively and are stated generally against the various Defendants. Thus, this cause should be dismissed.

Defendants are officials or agencies of the State of Alabama, Plaintiff's official-capacity claims must be considered to be against the State itself. This, in turn, affords the Defendants Eleventh Amendment immunity; the State need not actually be named as a party for such immunity to be available. See Williams v. Bennett, 689 F.2d 1370, 1376 (11th Cir. 1982), cert. denied 464 U.S. 932 (1983). Thus, Plaintiff's federal claims for damages against the Defendants in their official capacities are barred by Eleventh Amendment immunity and should be dismissed.

Plaintiff's state-law claims against the Defendants in their official capacities are similarly barred by the State's sovereign immunity, as is bestowed by Article I, Section 14 of the Alabama Constitution of 1901. In Haley v. Barbour County, the Alabama

Supreme Court held that "Section 14 prohibits actions against state officers in their

official capacities when those actions are, in effect, actions against the State." 885 So. 2d

783, 788 (Ala. 2004) (citing Lyons v. River Road Constr., Inc., 858 So. 2d 257, 261 (Ala.

2003), and Mitchell v. Davis, 598 So. 2d 801, 806 (Ala. 1992)). Thus, the Plaintiff's

claims under state law for damages against the Defendants in their official capacities are

barred by sovereign immunity and should be dismissed.

The Defendants are entitled to qualified immunity regarding the individual-

capacity federal claims stated in Plaintiff's complaint. The basic test for qualified

immunity was stated in Harlow v. Fitzgerald, 457 U.S. 800 (1982):

> [G]overnment officials performing discretionary functions
> generally are shielded from liability for civil damages
> insofar as their conduct does not violate "clearly
> established" statutory or constitutional rights of which a
> reasonable person would have known.

457 U.S. at 818. Qualified immunity bars claims "so long as [the defendant's] actions

could reasonably have been thought consistent with the rights they are alleged to have

violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Further, qualified

immunity is not just a bar to damages; it is a bar to suit. Mitchell v. Forsyth, 472 U.S.

511, 526 (1985). Even allegations of animus by a state actor against a plaintiff are not

sufficient to overcome the presumption of qualified immunity. See Hansen v.

Soldenwagner, 19 F.3d 573, 578 (11th Cir. 1994) (stating that "[f]or qualified immunity

purposes, the subjective motivation of the defendant-official is immaterial"). Also, in

Gardner v. Howard, 109 F.3d 427, 429-430 (8th Cir. 1997), the Eighth Circuit held

"[q]ualified immunity shields government officials from §1983 damage liability unless

their conduct violates "clearly established statutory or constitutional rights of which a

reasonable person would have known." (Citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982)).

The justification for qualified immunity is that such immunity is necessary in order for the government to effectively function. If not for the protections immunity provides, state officials could be subject to suit for every move they make. This action would have a serious chilling effect on the ability of such officials to do their jobs. In sum, state officials should be allowed to exercise discretion in the performance of their duties without fear of a lawsuit around every corner. <u>Mitchell</u>, 472 U.S. at 525-26; <u>see also</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991); <u>Burrell v. Bd. of Trustees of Ga. Military College</u>, 970 F.2d 785, 794 (11th Cir. 1992), <u>cert. denied</u>, 507 U.S. 1018 (1983).

In the present case, the Defendants deny that they violated "a clearly established right" of the Plaintiff. As such, it is incumbent upon Plaintiff to show that the Defendants violated "clearly established constitutional law" in their dealings with Plaintiff. <u>See</u> <u>Zeigler v. Jackson</u>, 716 F.2d 847, 849 (11th Cir. 1983) (holding that it is a plaintiff's burden to rebut a defendant's qualified immunity defense). This, however, has not been demonstrated by Plaintiff. He has alleged no constitutional injury perpetrated by any of the Defendants. Likewise, Plaintiff cannot contend that the Governor or the Commissioner vicariously harmed him because of the alleged actions of other state officials or agents. <u>See</u> <u>Cottone</u>, 326 F.3d at 1360. Because Plaintiff cannot demonstrate that any of his clearly established constitutional rights have been infringed, qualified immunity bars his attempt to impose liability on the Defendants. Therefore, Plaintiff's federal claims against the Defendants in their individual capacities should be dismissed.

The fact of the matter, however, is that the Governor has no special duties as it regards the Plaintiff in this case. The Governor did not conspire to elevate the custody of Plaintiff or take away Plaintiff's religious materials. For these reasons, the Governor now cannot affect any actions to provide whatever declaratory or injunctive relief Plaintiff may seek in this lawsuit. As a result, his state-law claims, vis-à-vis the Governor, are simply nonjusticiable.

The Alabama Supreme Court has held that actions will be deemed nonjusticiable "'where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive.'" Stamps v. Jefferson County Bd. of Educ., 642 So. 2d 941, 944 (Ala. 1994). That court has further observed that "'[a]ctions for declaratory judgments brought by individuals to test or challenge the propriety of public action often fail on this ground, . . . because the . . . public officer or other person selected as a defendant has . . . no special duties in relation to the matters which would be affected by any eventual judgment.'" Id. (quoting Rogers v. Alabama Bd. of Educ., 392 So. 2d 235, 237 (Ala. Civ. App. 1980)). Stated another way, "actions will be deemed nonjusticiable '[w]hen the defendant has no power to affect the plaintiff's rights.'" Ex parte State ex rel. James, 711 So. 2d 952, 964 (Ala. 1998).

As argued herein, it is evident in this case that the Governor has no specific duties regarding Plaintiff. Thus, to the extent Plaintiff seeks declaratory or injunctive relief against the Governor, such claims are nonjusticiable, and this Court lacks subject-matter jurisdiction to consider such claims. See James, 711 So. 2d at 960 n.2.

Plaintiff asserts his allegations against the Defendants in both their individual and official capacities. As was stated previously, Defendants are entitled to sovereign

immunity to the extent Plaintiff has sued them in their official capacities for damages under state law. However, just as the Defendants in their individual capacities are entitled to qualified immunity under federal law, they are protected by State-agent immunity under state law.

In <u>Ex parte Butts</u>, 775 So. 2d 173 (Ala. 2000), the Alabama Supreme Court adopted a test that was first set out in its plurality opinion in <u>Ex parte Cranman</u>, 792 So. 2d 392 (Ala. 2000), for evaluating whether a state official sued in his individual capacity is entitled to immunity as an agent of the State. Though distinct from a qualified immunity analysis under federal law, State-agent immunity similarly shields state officials from liability while they are discharging their duties in good faith. In this case, the Defendants' alleged actions clearly fall within the protection of State-agent immunity under Alabama law. See <u>Butts</u>, 775 So. 2d at 177-78 ("A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners").

The Defendants can only be divested of State-agent immunity upon a showing that they acted willfully, maliciously, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of law. <u>Butts</u>, 775 So. 2d at 177-78; <u>Ryan v. Hayes</u>, 831 So. 2d 21, 28 (Ala. 2002). Moreover, it is the Plaintiff's burden to make such a showing. <u>Ryan</u>, 831 So. 2d at 27-28; <u>see also</u> <u>Giambrone v. Douglas</u>, 874 So. 2d 1046, 1052 (Ala. 2003) (holding that, once it is shown that a state agent was undertaking a discretionary function, the burden shifts to the plaintiff to disprove the defendant's entitlement to immunity).

19

Plaintiff simply cannot carry the burden of proof in this case. As argued herein, the Plaintiff has not bothered to state with any particularity what all of the Defendants did to become defendants in this lawsuit. Consequently, it is inconceivable that Plaintiff could marshal the evidence needed to defeat State-agent immunity.

II.     Duties

The courts have continuously recognized that the operation of correctional institutions are, at best, a difficult assignment and that correctional officials must be given broad range in discretion and latitude in which to carry out their duties. See Hewitt v. Helms, 459 U.S. 460 (1983). "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979), Sims v. Mashburn, 25 F. 3d 980 (11th Cir. 1994).

It has been the position of the Alabama Court of Criminal Appeals that an inmate "does not have a liberty interest in a particular custody or security classification." Block v. Alabama Department of Corrections, 923 So.2d 342,(Ala. Crim. App. 2005); Handley v. State, 549 So.2d 630, 631 (Ala. Crim. App. 1989). (Others citations omitted.) The Court has also held "'[t]he classification scheme adopted by the Alabama prison system to determine the custody status of prisoners "is not arbitrary and capricious, but reasonable and appropriate.""" Block at 343; citing Hill v. State, 594 So.2d 246, 248 (Ala. Crim. App. 1992) (Other citations omitted). "[C]ustody classifications in prison do not amount to matters in which the inmate has a constitutional right." Block at 343; Hadley, 549 So.2d at 631.

Although, the Alabama Supreme Court held in Ex parte Berry, 794 So.2d 307 (Ala. 2000) that an inmate had a protected liberty interest in work release once classified in said program that has since changed. The Alabama Court of Criminal Appeals held in Ward v. State, ---So.2d ---, 2005 WL 2046385, p. 2 (Ala. Crim. App., Aug. 25, 2005) the following:

> However, subsequent to the Supreme Court's decision in *Ex parte Berry*, the DOC changed the language in its *Classification Manual*. On July 9, 2003, the *Classification Manual* was amended to delete the requirement that a due-process hearing be held before an inmate is removed from work-release status. The pertinent language now reads: "[A] reclassification process is not required in order to remove an inmate from work release." This language does not prevent the arbitrary removal of an inmate from the work release program; therefore, this language does not create a liberty interest in remaining in the work-release program, like the language in the *Classification Manual* as the time in *Ex parte Berry* was decided did.

Due to this change in the *Classification Manual* and the Ward ruling, Plaintiff does not have a liberty interest in a lower custody level and is "not entitled to the due-process protections of Wolff v. McDonnell, 415 U.S. 539 (1974)." (Ward at 2.). Thus, Plaintiff's claim of elevating his custody level in conjunction with a conspiracy is ridiculous. Plaintiff's allegation of said conspiracy among several of the Defendants must be specific and based upon facts rather than conclusions. Fullman v. Graddick, 739 F.2d 553 (11th Cir. 1984). Therefore, this claim is without merit.

Plaintiff alleges a claim for deliberate indifference. There is a two part analysis that governs an Eighth Amendment challenge to conditions of confinement; first a prisoner must prove that the conditions that he complains of is sufficiently serious to violate Eighth Amendment, and second, under the "subjective component" the prisoner must show that the defendant prison officials acted with sufficiently culpable state of

mind with regard to the condition at issue.  Severe discomfort is insufficient to establish the objective component. Chandler v. Crosby, 17 Fla. L. Weekly  Fed. C. 891 (11th CA 2004). Under the objective component, a prisoner must prove the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8 (1992). Specifically, a prisoner must prove "a serious medical need" or the denial of "the minimal civilized measure of life's necessities." Chandler, 379 F.3d at 1289-1290; (other citations omitted). "The challenged prison condition must be 'extreme'" and must pose "an unreasonable risk of serious damage to his future health." Chandler, 379 F.3d at 1289-90 (quoting *Hudson,* 503 U.S. at 9) (other citation omitted).  Under the subjective component, the prisoner must prove that the prison official acted with "deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 837 (1994) (stating that an individual may be held liable under the Eighth Amendment only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); Hudson, 503 U.S. at 8; Wilson v. Seiter, 501 U.S. 294 (1991). To prove deliberate indifference, the prisoner must show that the defendant prison official "'acted with a sufficiently culpable state of mind' " with regard to the serious prison condition or serious medical need in issue. Chandler, 379 F.3d at 1289-1290 (quoting Hudson, 503 U.S. at 8). Negligence or even gross negligence does not satisfy this standard. Id.; Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir.1996).  Plaintiff has not and cannot support such claim.

Wherefore these premises considered, the Defendants pray that this Honorable Court will find that the Plaintiff is not entitled to any relief and this complaint should be dismissed.

Respectfully submitted,

/s/TARA S. KNEE
TARA S. KNEE
ASSISTANT ATTORNEY GENERAL
ASSISSTANT GENERAL COUNSEL

**ADDRESS OF COUNSEL:**
Alabama Department of Corrections
Legal Division
Post Office Box 301501
Montgomery, Alabama 36130-1501
(334) 353-3885

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of January, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

Richard Wayne Wright
#187140
Easterling Correctional Facility
200 Wallace Drive
Clio, AL 36017

William Lunsford, Esq.
Balch and Bingham, LLP

/s/Tara S. Knee
Tara S. Knee
Assistant Attorney General
Assistant General Counsel

23

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,     )
                                   )
     Plaintiff,           )
                                   )
vs.                           )   Civil Action 2:06-CV-863-WKW
                                   )
RICHARD ALLEN, et. al.     )
                                   )
     Defendants.      )

## **A F F I D A V I T**

Before me, the undersigned Notary Public, did personally appear Carolyn Abercrombie, who being duly sworn, deposes and presents the following affidavit.

My name is Carolyn Abercrombie and I am an individual over the age of twenty-one years.  I am employed with the State of Alabama Department of Corrections at Ventress Correctional Facility, Clayton, Alabama.  I am employed in this capacity as a Correctional Officer I.  I have read the complaint in the above styled cause and note that inmate Richard Wright, #187140 lists me as a defendant in this case.  I make this affidavit in defense thereof.



DEFENDANT'S
EXHIBIT
1

Page 2
Affidavit – Carolyn Abercrombie

I was not personally involved in any of the incidents described in inmate Wright's lawsuit. My sole involvement with inmate Wright is through my duties as Law Library Officer and providing Notary services for him and other inmates in population as well as those assigned to segregation cells.

After reviewing my notary log for the entire present calendar year, up to and including December 16, 2006, I found that I have interacted with Plaintiff Wright by notarizing the following documents:

| | |
|---|---|
| April 11, 2006 | Affidavits (two) |
| April 25, 2006 | Habeas Corpus |
| May 31, 2006 | Affidavit (four) |
| June 6, 2006 | Affidavit (seven) |
| June 27, 2006 | Affidavit (seven) |
| October 27, 2006 | Declaration |
| November 20, 2006 | Amended Complaint (nine) |
| November 30, 2006 | Affidavit (two) |

I have not violated any of his constitutional rights. The beforementioned facts are true and correct to the best of my knowledge.

_Carolyn Abercrombie_    01/05/07
Carolyn Abercrombie    Date


State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this __5th__ of January, 2007.

_Reba J Currie_
Notary Public

My Commission Expires: __9-8-08__

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,           )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )   Civil Action 2:06-CV-863-WKW
                                     )
Richard Allen, et. al.,              )
                                     )
        Defendants.                  )

## **A F F I D A V I T**

Before me, the undersigned Notary Public, did personally appear Inez D. Alexander, who being duly sworn, deposes and presents the following affidavit.

My name is Inez D. Alexander and I am an individual over the age of twenty-one years.  I am employed with the State of Alabama Department of Corrections at Ventress Correctional Facility, Clayton, Alabama.  I am employed in this capacity as a Correctional Officer I.  I have read the complaint in the above styled cause and note that inmate Richard Wright, #187140 lists me as a Defendant in his complaint but does not indicate my involvement.

I, COI Inez D. Alexander was not at work on November 23, 2005; therefore, I have no knowledge of why he is listing me as a defendant in this case.



DEFENDANT'S
EXHIBIT
2

Page 2
Affidavit – Inez Alexander

The beforementioned facts are true and correct to the best of my knowledge.

_Inez D. Alexander_  1/2/07
Inez D. Alexander    Date


State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this  2nd  of ~~December, 2006~~ Jan. 2007.

_Reba D Currie_
**Notary Public**

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,              )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )    Civil Action 2:06-CV-863-WKW
                                        )
Richard Allen, et. al.,                 )
                                        )
        Defendants.                     )

## <u>A F F I D A V I T</u>

Before me, the undersigned Notary Public, did personally appear Roosevelt

Brown, who being duly sworn, deposes and presents the following affidavit.

My name is Roosevelt Brown and I am an individual over the age of twenty-

one years.  I am employed with the State of Alabama Department of Corrections

at Ventress Correctional Facility, Clayton, Alabama.  I am employed in this

capacity as a Correctional Officer I.  I have read the complaint in the above styled

cause and note that inmate Richard Wright, #187140 alleges that he was

assaulted by me and Sgt. Sherwin Carter.  I make this affidavit in defense

thereof.

I, COI Roosevelt Brown assisted Officer Levy Richardson in placing Inmate

Richard Wright on the floor as to place handcuffs on him.  Inmate Richard Wright



DEFENDANT'S
EXHIBIT
3

**Page 2**
**Affidavit – Roosevelt Brown**

was screaming and yelling.  Sgt. Longmire was clearing the inmates out of the

lobby, Inmate Alton Carter, B/M,#194650 had exited but turned around and

started coming back to the lobby stating, "You officer's didn't have to do that to

that inmate, we inmates need to stick together."  I ordered Inmate Alton Carter to

get back.  Inmate Carter refused and had to be restrained by Officer David

Pullom and myself.

   The beforementioned facts are true and correct to the best of my knowledge.

                                        _Roosevelt Brown_        _12-26-06_
                                        Roosevelt Brown          Date


State of Alabama    )

Barbour County     )

Sworn to and subscribed before me this _26th_ of December, 2006.

_Reba J Currie_
Notary Public

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,           )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )   Civil Action 2:06-CV-863-WKW
                                     )
Richard Allen, et. al.               )
                                     )
        Defendants.                  )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Mark

Bruton, who being duly sworn, deposes and presents the following affidavit.

My name is Mark Bruton and I am an individual over the age of twenty-one

years. I am employed with the State of Alabama Department of Corrections at

Ventress Correctional Facility, Clayton, Alabama. I am employed in this capacity

as a Classification Supervisor. I have read the complaint in the above styled

cause and note that inmate Richard Wright, #187140 alleges the following

complaints against me. I make this affidavit in defense thereof for each

allegation.

1) Page 3 of 24 – Second paragraph – Inmate Wright states that he did not

receive any problems or opposition from me.

DEFENDANT'S
EXHIBIT

H

Page 2
Affidavit – Mark Bruton

**Response**:  None needed.

2)  Page 3 of 24 – Third paragraph – Inmate Wright states that he faces

persecution from me due to his Islamic beliefs.

**Response**:  Inmate Wright does not state how or in what way I have

persecuted him.  It is just a blanket statement with no support.  I, as the

Classification Supervisor do not have anything to do with the religious

programs here at Ventress and do not care what an inmate's beliefs may

be.

3)  Page 4 of 24 – Paragraph Five – Inmate Wright states that I along with

others issued a memorandum effecting religious practices.

**Response:**  I have not ever issued a memo concerning religious

practices.

4)  Page 5 & 6 of 24 – Paragraph Eight – Inmate Wright alleges he has come

under great opposition by Mr. Bruton.

**Response**:  Again, Inmate Wright has made a blanket statement without

any support or examples.  I have not discriminated against Inmate Wright.

5)  Page 7 of 24 – Paragraph Eleven – Inmate Wright alleges collectively

harms the plaintiff through their irrational hatred of the plaintiff's shade of

skin and religious practice.

**Response**:  Blanket statement with no supporting facts about me.  I do

not hate inmate Wright nor does his race or religious affiliation effect me in

any way.

Page 3
Affidavit – Mark Bruton

6) Page 15 of 24 – Paragraph 27 – Inmate Wright states Mr. Bruton

attempted to raise plaintiff's custody to Level Five (V) and transfer plaintiff

to a prison where inmates are easier persuaded to take bribes to kill

plaintiff.  (See Exhibit 18)

**Response**:  Exhibit 18 is a copy of Progress Review that was done on

Inmate Wright on February 7, 2006.  On the Progress Review form it

clearly shows that neither I nor anybody else from Ventress recommended

an increase in custody or a transfer to a higher level camp.  The only

mention of an increase in custody and security level came from the

Central Review Board in Montgomery who has to approve the progress

reviews.

**In summary**, at no time have I, Mark Bruton discriminated against Inmate

Richard Wright for any reason much less race or religious beliefs.  Inmate Wright

has also offered a blanket accusation without any proof or any supporting

incidents.  The only actual evidence (exhibit 18) that he tried to use against me

clearly shows that I did not do what he accused me of.

The beforementioned facts are true and correct to the best of my knowledge.

Mark Bruton                    Date    1/3/2007

Page 4
Affidavit – Mark Bruton

State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this  __3rd__  of January, 2007.

Kimberly White

Notary Public

My Commission Expires: _10-27-09_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,    )
                                      )
      Plaintiff,             )
                                      )
vs.                                  )   Civil Action 2:06-CV-863-WKW
                                      )
RICHARD ALLEN, et. al.      )
                                      )
      Defendants.       )

## **A F F I D A V I T**

Before me, the undersigned Notary Public, did personally appear Camelia A. Cargle, who being duly sworn, deposes and presents the following affidavit.

My name is Camelia A. Cargle and I am an individual over the age of twenty-one years. I am employed with the State of Alabama Department of Corrections at Ventress Correctional Facility, Clayton, Alabama. I am employed in this capacity as a Correctional Officer Supervisor I. I have read the complaint in the above styled cause and note that inmate Richard Wright, #187140 lists my name as a Defendant.

My only involvement in the situation with inmate Richard Wright is that I gave the religious material to Chaplain Rieben for his verification of whether it was approved or not.

DEFENDANT'S
EXHIBIT
5
tabbies

Page 2
Affidavit – Camelia Cargle


I have no knowledge of Inmate Richard Wright's complaints regarding any

other incidents.

The beforementioned facts are true and correct to the best of my knowledge.


_Camelia A. Cargle_     12/27/06
Camelia A. Cargle     Date




State of Alabama     )

Barbour County      )

Sworn to and subscribed before me this _27th_ of December, 2006.


_Reba S Currie_
Notary Public

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,        )
                                  )
        Plaintiff,                )
                                  )
vs.                               )    Civil Action 2:06-CV-863-WKW
                                  )
RICHARD ALLEN, et. al.            )
                                  )
        Defendants.               )

## <u>A F F I D A V I T</u>

Before me, the undersigned Notary Public, did personally appear Kenneth J.

Cargle, who being duly sworn, deposes and presents the following affidavit.

My name is Kenneth J. Cargle and I am an individual over the age of twenty-

one years.  I am employed with the State of Alabama Department of Corrections

at Ventress Correctional Facility, Clayton, Alabama.  I am employed in this

capacity as a Correctional Officer I.  I have read the complaint in the above styled

cause and note that inmate Richard Wright, #187140 lists me as a defendant in

this case.

I have not violated Richard Wright, B/M, #187140, rights nor do I have any

knowledge of this incident.  The beforementioned facts are true and correct to the

best of my knowledge.


DEFENDANT'S
EXHIBIT
6

**Page 2**
**Affidavit – Kenneth J. Cargle**

_Kenneth J. Cargle_ 12/27/06
Kenneth J. Cargle    Date

State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this __27th__ of December, 2006.

_Reba I Currie_
**Notary Public**

My Commission Expires:__9-8-08__

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,     )
                             )
     Plaintiff,            )
                             )
vs.                        )   Civil Action 2:06-CV-863-WKW
                             )
RICHARD ALLEN, et. al.     )
                             )
     Defendants.     )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Sherwin V. Carter, who being duly sworn, deposes and presents the following affidavit.

My name is Sherwin V. Carter and I am an individual over the age of twenty-one years. I am employed with the State of Alabama Department of Corrections at Ventress Correctional Facility, Clayton, Alabama. I am employed in this capacity as a Correctional Officer II. I have read the complaint in the above styled cause and note that inmate Richard Wright, #187140 alleges that on November 23, 2005 he was assaulted by myself and Officer R. Brown in 10 Dorm lobby. He further states that I initiated the physical assault and Officer L. Richardson stood back and watched him be assaulted. I make this affidavit in defense thereof.


DEFENDANT'S
EXHIBIT
7

Page 2
Affidavit – Sherwin Carter

On November 23, 2005, I, Sgt. Sherwin Carter was in the Shift Commander's Office. At approximately 7:36 a.m., I heard a loud disturbance coming from the lobby area of Dorm 10. I along with Sgt. Carolyn Longmire reported to the lobby. I observed Inmate Richard Wright, B/187140 on his knees at the right of the cubicle door. Inmate Wright was shouting at the top of his lungs to all the inmates that were exiting the dorm. Officers' Roosevelt Brown and Levy Richardson were in the process of clearing the inmates out of the dorm in order for the dorm to be cleaned. Inmate Richard Wright was trying to encourage the other inmates to rebel from Officer's Brown and Richardson's orders to leave the dorm. Inmate Wright was shouting, "If we stick together we can get something done, I'm gonna file and all ya'll are my witness, I know my rights, I'm gonna get me a lawyer." Inmate Wright continued shouting. I, Sgt. Sherwin Carter approached Inmate Wright and told him to calm down. The inmates in the lobby started listening to Inmate Wright. I assisted Officer 's Brown and Richardson in clearing the lobby. Inmate Richard Wright got up and began to run toward the front door. I grasped Inmate Wright by his coat and belt. Inmate Wright began to struggle. Inmate Wright and myself went to the floor, Inmate Wright continued to resist. Officer Richardson assisted me in an attempt to restrain Inmate Wright. Inmate Wright kicked Officer Richardson during the struggle. Officer Richardson was finally able to get handcuffs on Inmate Wright. All force stopped at this time with Inmate Wright.

**Page 3**
**Affidavit – Sherwin Carter**

The beforementioned facts are true and correct to the best of my knowledge.

_Sherwin V. Carter_    12/12/06
Sherwin V. Carter          Date

State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this _12th_ of December, 2006.

_Reba J Currie_
Notary Public

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,          )
                                    )
          Plaintiff,                )
                                    )
vs.                                 )     Civil Action 2:06-CV-863-WKW
                                    )
RICHARD ALLEN, et. al.              )
                                    )
          Defendants.               )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Dorothy

Flowers, who being duly sworn, deposes and presents the following affidavit.

My name is Dorothy Flowers and I am an individual over the age of twenty-

one years.  I am employed with the State of Alabama Department of Corrections

at Ventress Correctional Facility, Clayton, Alabama.  I am employed in this

capacity as a Correctional Officer Supervisor I.  I have read the complaint in the

above styled cause and note that inmate Richard Wright, #187140 alleges that I

allowed others to intentionally violate his constitutional rights.  I make this

affidavit in defense thereof.



DEFENDANT'S
EXHIBIT
8

**Page 2**
**Affidavit -- Dorothy Flowers**


I, Dorothy Flowers, COSI have no knowledge of any incident that occurred

with Inmate Richard Wayne Wright, Sr.


_Dorothy Flowers, COSI 12-13-06_
Dorothy Flowers        Date



State of Alabama   )

Barbour County     )

Sworn to and subscribed before me this ___13th__ of December, 2006.


_Reba D Currie_
Notary Public

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,      )
                                )
      Plaintiff,                )
                                )
vs.                             )    Civil Action 2:06-CV-863-WKW
                                )
RICHARD ALLEN, et. al.          )
                                )
      Defendants.               )

## <u>A F F I D A V I T</u>

Before me, the undersigned Notary Public, did personally appear J. C. Giles,

who being duly sworn, deposes and presents the following affidavit.

My name is J. C. Giles and I am an individual over the age of twenty-one

years.  I am employed with the State of Alabama Department of Corrections at

Ventress Correctional Facility, Clayton, Alabama.  I am employed in this capacity

as a Warden III.  I have read the complaint in the above styled cause and note

that inmate Richard Wright, #187140 alleges that I allowed others to intentionally

violate his constitutional rights.  I make this affidavit in defense thereof.

I have not violated Richard Wright, B/M, #187140, rights nor do I know of

anyone else violating his rights at any time.  I have no knowledge of Inmate



**Page 2**
**Affidavit – J. C. Giles**

Wright's allegations of not being permitted to worship with Moorish Science

Temple of America or being threatened by anyone.

    The Plaintiff also alleges that I allowed several employees at Ventress to deny

him equal protection of the laws of the United States Constitution of the

fourteenth amendment.  I have no knowledge of this obligation.  The Alabama

Department of Corrections is governed by rules to protect employees and

inmates, i.e., Administrative Regulations, Standard Operating Procedures

(SOP's), etc.   The beforementioned facts are true and correct to the best of my

knowledge.


_____  12-13-06
J. C. Giles          Date


State of Alabama    )

Barbour County      )

Sworn to and subscribed before me this  _13th_ of December, 2006.


_____
Notary Public

My Commission Expires:  _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,              )
                                        )
        Plaintiff,                      )
                                        )
vs.                                     )   Civil Action 2:06-CV-863-WKW
                                        )
Richard Allen, et. al.                  )
                                        )
        Defendants.                     )

## **A F F I D A V I T**

Before me, the undersigned Notary Public, did personally appear Sara
Livingston, who being duly sworn, deposes and presents the following affidavit.

My name is Sara Livingston and I am an individual over the age of twenty-one
years. I am employed with the State of Alabama Department of Corrections at
Ventress Correctional Facility, Clayton, Alabama. I am employed in this capacity
as a Steward III. I have read the complaint in the above styled cause and note
that inmate Richard Wright, #187140 alleges that I refused to allow him to have
double portions during Ramadan. I make this affidavit of my involvement with
inmate Richard Wright.



DEFENDANT'S
EXHIBIT
10

Page 2
Affidavit – Sara Livingston

   Per instructions from Warden J. C. Giles, Inmate Wright and approved

participants in the Ramadan group were given double portions during the

approved time.  He further alleged that I didn't allow him proper time to eat his

meal.  Setting the time limit for the inmates to eat is not a part of my job duties.  I

have nothing to do with the time limits.

   The beforementioned facts are true and correct to the best of my knowledge.

_Sara Livingston_ 1-4-2007
     Sara Livingston     Date


State of Alabama   )

Barbour County     )

Sworn to and subscribed before me this ___4th___ of January, 2007.

_Reba I Currie_
     Notary Public

My Commission Expires:__9-8-08__

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| Richard Wayne Wright, Sr., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action 2:06-CV-863-WKW |
| | ) | |
| Richard Allen, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## **A F F I D A V I T**

Before me, the undersigned Notary Public, did personally appear Carolyn
Longmire, who being duly sworn, deposes and presents the following affidavit.

My name is Carolyn Longmire and I am an individual over the age of twenty-
one years. I am employed with the State of Alabama Department of Corrections
at Ventress Correctional Facility, Clayton, Alabama. I am employed in this
capacity as a Correctional Officer II. I have read the complaint in the above
styled cause and note that inmate Richard Wright, #187140 alleges that he,
Richard Wright was brutally beaten by Officer Roosevelt Brown and Sgt. Carter
for taking a stand about the weather conditions.



DEFENDANT'S
EXHIBIT
\\

Page 2
Affidavit – Carolyn Longmire


On November 23, 2005, I, Sgt. Carolyn Longmire was in the Shift
Commander's Office. At approximately 7:36 a.m., I heard a loud disturbance
coming from the lobby area of dorm 10. I along with Sgt. Sherwin Carter
reported to the lobby. I observed Inmate Richard Wright, B/M, #187140 on his
knees at the right of the cubicle door. Inmate Wright was shouting at the top of
his lungs to all inmates that were exiting the dorm. Officer's Roosevelt Brown
and Levy Richardson were in the process of clearing the inmates out of the dorm
in order for the dorm to be cleaned. Inmate Wright was trying to encourage the
other inmates to rebel from Officer's Brown and Richardson's orders to leave the
dorm. Inmate Wright was shouting, "If we stick together we can get something
done, I'm going to file and all ya'll are my witness, I know my rights, I'm gonna
get me a lawyer." Inmate Wright continued shouting. I continued to clear the
lobby area to avoid any problems with the other inmates. I observed Inmate
Wright get up and try to run toward the front door. Sgt. Carter caught Inmate
Wright by his coat and belt. Inmate Wright began to struggle with Sgt. Carter.
Inmate Wright and Sgt. Carter went to the floor, Inmate Wright continued to
resist. Officer Richardson assisted Sgt. Carter in an attempt to restrain Inmate
Wright. As they were trying to restrain Inmate Wright, Officer Brown and I were
trying to secure the lobby and Inmate Alton Carter, B/M, #194650 refused to
leave the lobby front door. Inmate Carter started coming back into the dorm
yelling, "Ya'll didn't have to do that to that inmate, we inmates need to stick

**Page 3**
**Affidavit – Carolyn Longmire**

together." Officer Roosevelt Brown tried to stop Inmate Carter but Inmate Carter

resisted, Sgt. Carter assisted Officer Brown in restraining Inmate Carter.

The beforementioned facts are true and correct to the best of my knowledge.

*Carolyn Longmire COII* 12-21-06
_____
Carolyn Longmire, COII    Date


State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this *21*ᵗ _____ of December, 2006.

*Reba J Currie*
_____
Notary Public

My Commission Expires: *9-8-08* _____

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,    )
                              )
      Plaintiff,           )
                              )
vs.                        )   Civil Action 2:06-CV-863-WKW
                              )
RICHARD ALLEN, et. al.     )
                              )
      Defendants.      )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Sharon

McSwain-Holland, who being duly sworn, deposes and presents the following

affidavit.

My name is Sharon McSwain-Holland and I am an individual over the age of

twenty-one years. I am employed with the State of Alabama Department of

Corrections at Ventress Correctional Facility, Clayton, Alabama. I am employed

in this capacity as a Correctional Officer Supervisor I. I have read the complaint

in the above styled cause and note that inmate Richard Wright, #187140 lists my

name on his Motion to Amend Complaint. He does not state the reason for

listing my name.


DEFENDANT'S
EXHIBIT
12

**Page 2**
**Affidavit – Sharon McSwain-Holland**

    I have no knowledge of Inmate Richard Wright's complaints regarding these incidents.

    The beforementioned facts are true and correct to the best of my knowledge.

_____ 12-13-06
Sharon McSwain-Holland      Date


State of Alabama  )

Barbour County    )

Sworn to and subscribed before me this ___13th___ of December, 2006.


_____
Notary Public

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,     )
                             )
     Plaintiff,         )
                             )
vs.                        )   Civil Action 2:06-CV-863-WKW
                             )
RICHARD ALLEN, et.al.     )
                             )
     Defendants.     )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear M. Larry

Monk, who being duly sworn, deposes and presents the following affidavit.

My name is M. Larry Monk and I am an individual over the age of twenty-one

years.  I am retired from the State of Alabama Department of Corrections from

Ventress Correctional Facility, Clayton, Alabama.  I was employed in this

capacity as a Correctional Officer Supervisor II.  I have read the complaint in the

above styled cause and note that inmate Richard Wright, #187140 alleges that I

made threats to stop the religious services he was attending.  I make this affidavit

in the defense thereof.

This allegation is not true.  The Group was having an internal power struggle

as to who would be the "leader."  I did talk to several inmates involved in the

"power struggle" and advised them of the ramifications if a "holy war" broke out in

DEFENDANT'S
EXHIBIT
13

Page 2
Affidavit – M. L. Monk

the Chapel while a service was being conducted.  It is within the scope of my

duties to advise inmates of the possible consequences of their actions.

Consequences that are within the guidelines of Alabama Department of

Corrections regulations.

     Inmate Wright's allegations are untrue.  I have not denied him any civil rights;

harassed him in any manner; threatened him verbally or physically; or denied him

anything afforded him within the ADOC Regulation 333, "Religious Services."

     The beforementioned facts are true and correct to the best of my knowledge.

_____     12-15-06
M. Larry Monk               Date


State of Alabama   )

Barbour County    )

Sworn to and subscribed before me this   15th   of December, 2006.

_____
Notary Public

My Commission Expires: 9-8-08

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,           )
                                     )
        Plaintiff,                   )
                                     )
vs.                                  )    Civil Action 2:06-CV-863-WKW
                                     )
RICHARD ALLEN, et. al.               )
                                     )
        Defendants.                  )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Darrell

Parker, who being duly sworn, deposes and presents the following affidavit.

My name is Darrell Parker and I am an individual over the age of twenty-one

years.  I am employed with the State of Alabama Department of Corrections at

Ventress Correctional Facility, Clayton, Alabama.  I am employed in this capacity

as a Warden II.  I have read the complaint in the above styled cause and note

that inmate Richard Wright, #187140 alleges that I allowed others to intentionally

violate his constitutional rights.  I make this affidavit in defense thereof.

I have not violated Richard Wright, B/M, #187140, rights nor do I know of

anyone else violating his rights at any time.   The beforementioned facts are true

and correct to the best of my knowledge.

DEFENDANT'S
EXHIBIT
14

**Page 2**
**Affidavit – Darrell Parker**

Darrell Parker    12/12/06
'Darrell Parker        Date

State of Alabama   )

Barbour County     )

Sworn to and subscribed before me this _12th_ of December, 2006.

Reba J Currie
Notary Public

My Commission Expires: 9-8-08

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr., )
)
     Plaintiff, )
)
vs. )  Civil Action 2:06-CV-863-WKW
)
RICHARD ALLEN, et. al. )
)
     Defendants. )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Terry

Person, who being duly sworn, deposes and presents the following affidavit.

My name is Terry Person and I am an individual over the age of twenty-one

years.  I am employed with the State of Alabama Department of Corrections at

Ventress Correctional Facility, Clayton, Alabama.  I am employed in this capacity

as a Correctional Officer I.  I have read the complaint in the above styled cause

and note that inmate Richard Wright, #187140 alleges that I intentionally violated

his constitutional rights.  I make this affidavit in defense thereof.

On March 24, 2005, I, Officer Terry Person was assigned as Health Care

Rover.  At approximately 9:00 a.m., Nurse Anthonette Marsh examined Inmate

Richard Wright, B/M, #187140.  At approximately 9:10 a.m., Nurse Marsh notified



DEFENDANT'S
EXHIBIT
15

Page 2
Affidavit -- Terry Person

me that Inmate Wright refused to take the annual TB Skin Test. At

approximately 9:12 a.m., I notified Lt. John S. Dowling, First Shift Supervisor of

the incident. At approximately 11:00 A.M., Officer's Kenneth Cargle and Dorein

Robbins processed Inmate Wright into Administrative Segregation Holding Cell --

Infirmary #103 pending disciplinary action for violation of Rule #62, "Intentionally

Creating a Security, Safety or Health Hazard." from Administrative Regulation

403. At approximately 9:40 a.m., Captain M. Larry Monk was notified of the

incident. No further action was taken.

   The beforementioned facts are true and correct to the best of my knowledge.

                              _Terry Person_  12-15-06
                         Terry A. Person      Date




State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this ___15th___ of December, 2006

                         _Reba J Currie_
                         Notary Public

                         My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,               )
                                         )
         Plaintiff,                      )
                                         )
vs.                                      )   Civil Action 2:06-CV-863-WKW
                                         )
RICHARD ALLEN, et. al.                   )
                                         )
         Defendants.                     )

## <u>A F F I D A V I T</u>

Before me, the undersigned Notary Public, did personally appear David

Pullom, who being duly sworn, deposes and presents the following affidavit.

My name is David Pullom and I am an individual over the age of twenty-one

years.  I am employed with the State of Alabama Department of Corrections at

Ventress Correctional Facility, Clayton, Alabama.  I am employed in this capacity

as a Correctional Officer I.  I have read the complaint in the above styled cause

and note that inmate Richard Wright, #187140 lists me as a defendant in this

case.

I have not violated Richard Wright, B/M, #187140, rights.  I was involved with



Page 2
Affidavit – David Pullom


inmate Carter who came back into the dorm area and refused to leave.  I have

not violated any of his constitutional rights. The beforementioned facts are true

and correct to the best of my knowledge.


_____
David Pullom        Date



State of Alabama    )

Barbour County      )

Sworn to and subscribed before me this _____28th_____ of December, 2006.


_____
Notary Public

My Commission Expires:_____9-8-08_____

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,      )
                                 )
       Plaintiff,            )
                                 )
vs.                              )   Civil Action 2:06-CV-863-WKW
                                 )
RICHARD ALLEN, et. al.       )
                                 )
       Defendants.       )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Rebecca D.

Pittman, who being duly sworn, deposes and presents the following affidavit.

My name is Rebecca D. Pittman and I am an individual over the age of

twenty-one years. I am employed with the State of Alabama Department of

Corrections at Ventress Correctional Facility, Clayton, Alabama. I am employed

in this capacity as a Classification Specialist. I have read the complaint in the

above styled cause and note that inmate Richard Wright, #187140 lists me as a

defendant in this case. I make this affidavit in defense thereof.



DEFENDANT'S
EXHIBIT

16

Page 2
Affidavit – Rebecca D. Pittman

Plaintiff, Richard Wright, #187140 in his complaint delivered to me on December 18, 2006, alleges that his civil rights have been violated by Respondent in attempting to raise plaintiff's custody to level five (V) and transfer plaintiff to take bribes to kill plaintiff.

Respondent replies that inmate Richard Wright's Annual Progress Review was conducted on February 7, 2006. (See Exhibit A)  Based on the Classification Manual, Chapter 2, Section IV, Part C, #4. Page 31. (Exhibit B), "medium security inmates with no disciplinary action in the last ninety (90) days and who have served at least three (3) months at a medium security facility and no sentence of life without parole (or life barred from parole) who meet the applicable time frame for consideration" will be considered for minimum custody. Inmate Wright was reviewed and no recommendation was made based on the fact that he did not meet the classification criteria for minimum custody in that he had received three (3) major disciplinaries within the last six (6) months and failed to maintain a ninety (90) day clear record.  Respondent replies that no recommendation was made to increase Inmate Wright's custody and/or security level.  Inmate Wright was not recommended for a custody or security level increase or a transfer to a higher security institution (Exhibit A).  A lateral transfer to another Medium Security, Level 4 institution was recommended for Plaintiff by Respondent, Psychological Associate and Deputy Warden.

Respondent replies that to the best of her understanding that inmates have no right to any specific classification decision regarding custody, placement or

Page 3
Affidavit – Rebecca D. Pittman

programs.  To the best of respondent's knowledge, classification procedures are

consistently applied throughout the Alabama Department of Corrections.

Therefore, respondent denies she violated inmate Wright's rights in any way.

The beforementioned facts are true and correct to the best of my knowledge.

_Rebecca D. Pittman_ 1/5/07
Rebecca D. Pittman          Date


State of Alabama    )

Barbour County      )

Sworn to and subscribed before me this ___5th___ of January, 2007.

_Reba J Currie_
Notary Public

My Commission Expires: __9-8-08__

"EXHIBIT A"

DNA: 5/20/96 (017)

ALABAMA DEPARTMENT OF CORRECTIONS - PROGRESS REVIEW FORM - JANUARY 26, 2006
(COU122)

AIS #: 00187140    SSN: 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  RACE/SEX:  B/M    DATE OF BIRTH: 08/15/1967
NAME: WRIGHT, RICHARD WAYNE SR    CUSTODY:  MED9    SECURITY LEVEL: 4
INST: VENTRESS CORRECTIONAL CENTER    TIME SRVD:  10Y03M02 LAST DISC: 12.07 2005
CRME: BURGLARY I    MIN REL DT: 10/23/2020 ACTIVE DET:  0

DISC: FAIL TO OBEY A DIRECT ORDER OF PRL CONS:  08/01/2009 EDUCAT LEV: 12

WL/PGM:  Kitchen    PRIM OCCUP: LABORER - GENERAL

RECOMMENDED INSTITUTION: East, LCF, SCC, Bibb ata    RECOMMENDED CUSTODY: Med

JUSTIFICATION: APR: Violent offender serving 25 yrs Burgl I + Asslt II -
S entered acc residence by breaking a window; S was armed w/a
weapon. S fired 2x @ elderly M/v + shot M/v in L/side of face.
Prior: '84 GUP TO P Ig c TII; '87 Criminally Negligent Homicide. T3 has
accumulated 3 major disciplinaries in 12/05 to include RUI #39.
Completed 6 mo Crime Bill @ BCCF 9/28/01, Anger Management 9/28/01,
DV 9/28/01, 8wk SAP 5/7/99 + numerous M/H + faith based W/S. No
found detainers, escapes or sex convictions. NC based
on disciplinaries. No treatment needs - Transfer per
1-26-06 APR (1045)
request of warden.

I CERTIFY ENEMY LIST WAS REVIEWED AND UPDATED:    APR. S/L:

Rebecca Pittman 2/7/06    Daniel Payton 2/7/06
_____    _____
CLASSIFICATION SPECIALIST    DATE    WARDEN OR DESIGNEE    DATE

_____ 2/7/06    _____
PSYCHOLOGIST/PSYCHOLOGIST'S ASSOC.  DATE    CLASSIFICATION COORDINATOR DATE

CENTRAL REVIEW BOARD ACTION

___ APPROVED  X DENIED; DIVERTED TO: ___    REASONS: Does not have a 90 day cp
Clear - should have been reclassed    A. Cullum    2-17-06
w/ 12/2005 Disciplinaries.    _____
CRB MEMBER    DATE

X APPROVED ___ DENIED; DIVERTED TO: ___    REASONS:
Reenergize poor adjustment at    Change 7
Ventress    Felton  3/7/06
_____
CRB MEMBER    DATE

___ APPROVED  X DENIED; DIVERTED TO: ___    REASONS: Probably could
justify a SLV.    Stephanie Richardson 3-9-06
_____
CRB MEMBER    DATE

FINAL DECISION: INST VCC CUSTODY me DATE

DATE INMATE INFORMED: ___    INMATE'S SIGNATURE: X NO SHOW
LAST ACTION: 2/3/05 Med    DUTY STATUS 1
ADC: NO
SKILLS: GEN LABORER    2-8-06
Meds:    4    "EXHIBIT A"
Diabetes: NO

"EXHIBIT B"

C.    Criteria for Minimum Custody

1.    Not an escape risk.

2.    Has not been sentenced to two or more consecutive life sentences.    Those in minimum custody as of 9/24/85 may remain; however, if removed from minimum custody for any reason, will not be eligible for return to that custody. Ninety-nine year sentences are considered to be the same as life.    Life plus 99 years consecutive or 99 years consecutive sentences will be treated the same as consecutive life sentences.

3.    Evidence of ability to adjust to institutional environment.

4.    Medium security inmates with no disciplinary in the last ninety (90) days and who have served at least three months in a medium facility and no sentence of life without parole (or life barred from parole) who meet the applicable time frame for consideration.

5.    Inmates with felony detainers may be considered on a **case by case** basis.    Best professional judgement will be carefully exercised.    *Misdemeanor detainers are not a bar to level 2 and 1 except in very specific instances. Misdemeanor time to serve (12 months or less) is not a bar to work release.*

6.    Inmates convicted of only property crimes or other non-violent offense(s) who are within seven (7) years of EOS or parole review.    Drug crimes are considered non-violent and includes convictions for drug trafficking.    While drug traffickers may be considered for minimum-out custody, they can only be utilized for on-property jobs.    Therefore, traffickers in minimum-out security being considered for a minimum institution are limited to Elmore, J.O. Davis, and FLYC.    Inmates assigned to other level II institutions may remain until removed by attrition.

7.    Inmates currently convicted of non-violent crimes but may have prior conviction of Class A crime who is within five years of EOS or parole review.

8.    Inmates convicted of Class A crime(s) and/or crimes involving a weapon or threat of a weapon with no serious injury* to victim who is within four years of EOS or parole review.

9.    Inmates convicted of homicide {past or present, who is not otherwise barred} or any crime with serious victim injury*, inmates convicted of Class A crime(s) with multiple escape history (two or more), who is within three years of EOS or parole review.



"EXHIBIT B"

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,          )
                                    )
        Plaintiff,                  )
                                    )
vs.                                 )    Civil Action 2:06-CV-863-WKW
                                    )
RICHARD ALLEN, et. al.              )
                                    )
        Defendants.                 )

## <u>A F F I D A V I T</u>

Before me, the undersigned Notary Public, did personally appear Gladie

Richardson, who being duly sworn, deposes and presents the following affidavit.

My name is Gladie Richardson and I am an individual over the age of twenty-

one years.  I am employed with the State of Alabama Department of Corrections

at Ventress Correctional Facility, Clayton, Alabama.  I am employed in this

capacity as a Correctional Officer I.  I have read the complaint in the above styled

cause and note that inmate Richard Wright, #187140 lists me as a defendant in

this case.

On November 4, 2005, Officer Gladie Richardson worked overtime on Second

Shift.  While Officer Richardson was roving the yard, Sgt. Michael Smith

announced on the walkie-talkie for all available officers to report to the chapel.



Page 2
Affidavit -- Gladie Richardson

    I, Officer G. Richardson was the first officer to arrive at the Chapel.  Inmate

Richard Wright, B/187140 stated to Officer Richardson that he was having a

problem with Chaplain Rieben.  Officer Richardson escorted Inmate Wright out of

the Chapel.  Sgt. Smith arrived at the Chapel.  Inmate Wright discussed the

matter with Sgt. Smith.  Sgt. Smith took over the situation.

    The before mentioned facts are true and correct to the best of my knowledge.


_____
Gladie Richardson    Date


State of Alabama  )

Barbour County   )

Sworn to and subscribed before me this ____4th____ day of January, 2007.


_____
Notary Public

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,    )
                           )
      Plaintiff,      )
                           )
vs.                     )   Civil Action 2:06-CV-863-WKW
                           )
Richard Allen, et. al.     )
                           )
      Defendants.    )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Levy

Richardson, who being duly sworn, deposes and presents the following affidavit.

My name is Levy Richardson and I am an individual over the age of twenty-

one years.  I am employed with the State of Alabama Department of Corrections

at Ventress Correctional Facility, Clayton, Alabama.  I am employed in this

capacity as a Correctional Officer I.  I have read the complaint in the above styled

cause and note that inmate Richard Wright, #187140 does not state how I

violated his rights but lists me as a defendant.  I make this affidavit of my

involvement with inmate Richard Wright.



DEFENDANT'S
EXHIBIT
19

Page 2
Affidavit – Levy Richardson

On November 23, 2005, I, Levy Richardson was assigned as dorm 10A rover; I heard a loud commotion in the lobby. I quickly moved to the lobby and saw Inmate Richard Wright, #187140 telling the other inmates not to leave the dorm. I instructed Inmate Wright to clear the lobby. Inmate Wright failed to comply. Officer Richardson and Sgt. Carter placed restraints on Inmate Wright. While placing restraints on Inmate Wright, he kicked me in the stomach area. After restraints were placed on inmate Wright, he continued to struggle and be disorderly.

The beforementioned facts are true and correct to the best of my knowledge.

Levy Richardson COI    1-4-07
Levy Richardson, COI    Date


State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this ___4th___ of January, 2007.

Reba D Currie
Notary Public

My Commission Expires: 9-8-08

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,          )
                                    )
       Plaintiff,                   )
                                    )
vs.                                 )    Civil Action 2:06-CV-863-WKW
                                    )
RICHARD ALLEN, et. al.              )
                                    )
       Defendants.                  )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Daniel Rieben, who being duly sworn, deposes and presents the following affidavit.

My name is Daniel Rieben and I am an individual over the age of twenty-one years. I am employed with the State of Alabama Department of Corrections at Ventress Correctional Facility, Clayton, Alabama. I am employed in this capacity as a Chaplain. I have read the complaint in the above styled cause and note that inmate Richard Wright, #187140 alleges that I treated him differently after he declared his "free national name." I deny that he has been treated any differently. I was not aware of when he made the above declaration.



DEFENDANT'S
EXHIBIT
20

Page 2
Affidavit – Daniel Rieben

I am very respectful of all Islamic Groups that meet at Ventress Correctional Facility. Furthermore, the Moors Science Group uses Bey or El behind their names in their chapel dealings.

The Moors Science Temple was having internal problems. Their elected leader, Sidney Clayton was having problems with the group. The group problems become so severe that one of them contacted their State Representative in Alabama, Mr. Joseph Bonner, Bey. My understanding of the Moors Science Temple would place the "branch temple" at Ventress subject to the temple in Mobile that Mr. Bonner attends. As I stated the problems were severe enough that Mr. Bonner contacted the Nation Prison Minister of the Moors Science Temple, Mr. R. McDowell, Bey. Mr. Bonner was going to come and handle the problems on Friday, October 28, but he was detained. I talked to him on the phone and he instructed me to deliver a message to the group as follows:

"R. McDowell, Bey of the National Office hereby removes Sidney Clayton from position of acting Grand Sheik at Ventress Correctional Facility."

Mr. McDowell further directed that an election be held a week from today. (One problem was over previous election) Interim Asst. Grand Sheik was to carry out leadership duties until the new election. Questions concerning eligibility to vote needed to be directed to the Chaplain who would contact Mr. Bonner, Bey for direction. Sidney Clayton was not prohibited from being considered for the position again in the election.

Page 3
Affidavit – Daniel Rieben

I delivered the above message to the group when they met on the 28th of

October from those in authority over them in their religion.  Several seemed to

get upset and Inmate Wright confronted me so I called and asked security to

come to the chapel.  When I delivered the message I was very respectful.  I was

acting under directive from their outside leadership to give the message.  I called

security when Inmate Wright appeared very upset and confronted me when I was

monitoring the Chapel and following the directives of their outside leadership.

Inmate Wright further alleges that on or about November 4, 2005, I, stepped into

his business meeting again.  He claims that he confronted me instantly to prevent

me from acting as a mufti by telling me I was totally out of place.

I was very respectful and only fulfilling my responsibilities as Chaplain at

Ventress Correctional Facility.

I do not have any memory of ever seeing the principle badge Inmate Wright is

referring to.  I have looked for it in good faith.

Inmate Wright was in a single cell when the material he is referring to came in.

He notified me that the material had come and had been placed in his property

being stored until he got out of lockup.  I then asked Security to look into his

property and to give him his material if possible.  He then notified me that the

principle badge was missing.  A search was made to no avail.  The mail must

have been sent directly to his property and I have no memory of ever seeing any

of it.  There were a couple of conclusions that I reached as a possibility of the

badge:

Page 4
Affidavit – Daniel Rieben

      1) It was backordered or shorted in the order from the supplier

      2) It was placed in the mail room to be sent home within 30 days or be

         destroyed

    The above conclusions are based on the fact that Inmate Richard Wright had

to notify me of the material coming.  I cannot be sure of what happened to this

material.  I checked and rechecked after Inmate Wright notified me of it not being

there.

    The above assessment is made with the understanding of the volume of mail I

look at daily.  I do not think I ever saw the principle badge.  I haven not violated

Inmate Richard Wright's  civil rights at any time.

    The beforementioned facts are true and correct to the best of my knowledge.


                    _Daniel E Rieben_  _12~15~06_
                    Daniel Rieben, Chaplain   Date



State of Alabama   )

Barbour County     )

Sworn to and subscribed before me this __15th__ of December, 2006.

                   _Reba J. Currie_
                   Notary Public
                   My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,               )
                                         )
        Plaintiff,                       )
                                         )
vs.                                      )    Civil Action 2:06-CV-863-WKW
                                         )
RICHARD ALLEN, et. al.                   )
                                         )
        Defendants.                      )

## A F F I D A V I T

Before me, the undersigned Notary Public, did personally appear Michael

Smith, who being duly sworn, deposes and presents the following affidavit.

My name is Michael Smith and I am an individual over the age of twenty-one

years.  I am employed with the State of Alabama Department of Corrections at

Ventress Correctional Facility, Clayton, Alabama.  I am employed in this capacity

as a Correctional Officer II.  I have read the complaint in the above styled cause

and note that inmate Richard Wright, #187140 lists my name on his Motion to

Amend Complaint.  He does not state the reason for listing my name.



DEFENDANT'S
EXHIBIT
21

Page 2
Affidavit -- Michael Smith


I have no knowledge of Inmate Richard Wright's complaints regarding these

incidents.

The beforementioned facts are true and correct to the best of my knowledge.


_Michael Smith_ 12-21-06
Michael Smith    Date



State of Alabama    )

Barbour County    )

Sworn to and subscribed before me this _27th_ of December, 2006.


_Reba J Currie_
Notary Public

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

Richard Wayne Wright, Sr.,            )
                                      )
        Plaintiff,                    )
                                      )
vs.                                   )     Civil Action 2:06-CV-863-WKW
                                      )
RICHARD ALLEN, et. al.                )
                                      )
        Defendants.                   )

## <u>A F F I D A V I T</u>

Before me, the undersigned Notary Public, did personally appear Mary R.

Taylor, who being duly sworn, deposes and presents the following affidavit.

My name is Mary R. Taylor and I am an individual over the age of twenty-one

years.  I am employed with the State of Alabama Department of Corrections at

Ventress Correctional Facility, Clayton, Alabama.  I am employed in this capacity

as a Correctional Officer Supervisor I.  I have read the complaint in the above

styled cause and note that inmate Richard Wright, #187140 alleges that I

intentionally violated his constitutional rights.  I make this affidavit in defense

thereof.

At no time have I persecuted Inmate Richard Wright, B/187140, for his

religious practices or beliefs.  I have not conspired with anyone to interfere with

DEFENDANT'S
EXHIBIT
22

Page 2
Affidavit – Mary Taylor

inmate Wright's freedom of religion.  During the Islamic Ramadan fasting period, I honored the Warden's request concerning double portions while feeding.

The sandwich line closes at 3:30 p.m. each day that it is open, during Ramadan or any other event.  During Ramadan and the evening meal, the sandwich line would not be open.  At no time have I implemented any controlled conditions against Inmate Richard Wright because of Islamic observance of Ramadan.  I did not play any games and I did not conspire with Chaplain Rieben to put Sergeant C. Cargle in the midst of any so called games, to take inmate Wright's religious material.  I have no knowledge of inmate Wright's religious pin(s) being taken from him.  During the month of Ramadan, all measures were taken to ensure the security, custody and control of the institution were maintained.  At no time did I make it more difficult to get to and from the Chapel. The beforementioned facts are true and correct to the best of my knowledge.

Mary R. Taylor _____ Date 12/13/06

State of Alabama    )

Barbour County     )

Sworn to and subscribed before me this _13th_ of December, 2006

_____
Notary Public

My Commission Expires: _9-8-08_

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RICHARD WAYNE WRIGHT, SR.,   )
AIS #187140,   )
        )
     Plaintiff,   )
        )
     v.   )   CIVIL ACTION NO. 2:06-CV-863-WKW
        )
RICHARD ALLEN, et al.,   )
        )
     Defendants.   )

## A F F I D A V I T

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Stephen O. Walker, who being known to me, and being by me first duly sworn, deposes and says under oath as follows:

My name is Stephen O. Walker, and I am presently employed as a Chaplain, with the Alabama Department of Corrections, Bullock County Correctional Facility, Post Office Box 5107, Union Springs, AL 36089. I am over twenty-one (21) years of age.

I, Chaplain Stephen O. Walker, had no prior contact, nor knowledge, of any of the events that occurred in this lawsuit. My office does not have any letter of complaint filed on violation of Religious Practice concerning this individual.

The above statement is true and correct.

_Stephen O. Walker_
Stephen O. Walker

DEFENDANT'S
EXHIBIT
23

Page 2


STATE OF ALABAMA)

COUNTY OF BULLOCK)

SWORN TO AND SUBSCRIBED before me and given under my hand and official seal

on this the _____*21st*_____ day of __December__ 2006.


_____*Justine B. Person*_____
                    NOTARY PUBLIC

My Commission Expires:_____*2/24/2009*_____.



    SEAL

```
                               DISPLAY INMATE SUMMARY DATA                PRODUCTION
  22/JAN/2007     15:58:43     CDSUM     499     L-TARA        CDSUM01     604
-----------------------------------------------------------------------------
AIS: 00187140     INMATE: WRIGHT, RICHARD WAYNE SR        RACE: B  SEX:  M

INST: 041-EASTERLING CORRECTIONAL CENTER JAIL CR: 0186D DOB: 08/15/1967
SSN: 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 PAR CONS DT: 08/2009  CURR CUST: MED9  CURR CUST DT:08/24/2004
ALIAS: WRIGHT, RICHARD               ALIAS: WRIGHT, RICHARD W
ADM TP: NEW COMIT FROM CRT W/O REV OF   STATUS: REMOVED FROM SEGREGATION
INIT SENT DT:04/30/1996 ADM DT: 04/30/1996 DEAD TIME: 00Y 00M 00D
                              N                                        TY
COUNTY      SENT DT   CASE   L CRIME                       TERM        PE
LEE         04/30/1996 000005 Y BURGLARY I               25Y00M00D    CS
LEE         04/30/1996 000007 Y ASSAULT II             * 10Y00M00D    CC


              NO MORE RCDS THIS TYPE AVAIL
INMATE HAS 008DISCIPLINARIES RESULTING IN LOSS OF 000Y00M00D OF GOOD TIME.
INMATE HAS 052TRANSFER RECORDS ON FILE.
INMATE HAS 00 DETAINER/WARRANT RECORDS ON FILE.
 TOTAL  TERM  REV GOOD TIME  MIN REL DT  TOT GOOD TIME  SHORT DATE  LONG DATE
025Y 00M 00D  000Y 00M 00D   10/23/2020  000Y 00M 00D   10/23/2020  10/23/2020
```

DEFENDANT'S EXHIBIT
24

```
  24/JAN/2007     11:50:10     CDDIS     499      L-TARA        CDDIS04      649
  A I S NUMBER : 00187140        COMMITMENT NAME : WRIGHT, RICHARD WAYNE SR
SEQ #    DATE        RECV     RSN      REVK     TYP    RULE    PNLT    RT DYS    CST-FR   CST-TO
008   03/28/2006                     00/00/00    4     62      4      0000       29       29
007   12/07/2005                     00/00/00    4     56      4      0000       29       29
006   12/07/2005                     00/00/00    4     53      4      0000       29       29
005   12/01/2005                     00/00/00    4     29      4      0000       29       29
004   05/10/2005                     00/00/00    4     62      4      0000       29       29
003   12/01/2004                     00/00/00    4     31      4      0000       29       29
002   09/22/2003                     00/00/00    4     38      4      0000       19       19
001   10/01/1997                     00/00/00    9     85      5      0000       29       29
```

                    END DATA-KEY CDDIS[SEQ#] FOR SEQ# DETAIL



DEFENDANT'S EXHIBIT
25





*State of Alabama*

# Alabama Department of Corrections

301 S. Ripley Street
P. O. Box 301501
Montgomery, AL 36130

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

December 17, 2004

ADMINISTRATIVE REGULATION
NUMBER                 333

OPR:  PROGRAMS SERVICES

## RELIGIOUS PROGRAM SERVICES

### I.  GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes responsibilities, policies, and procedures for recognition of religious beliefs and practices of committed offenders.

### II.  POLICY

The ADOC has the policy to permit offenders the privilege/right to worship their declared faith and to identify activities and practices most commonly approved.

### III.  DEFINITION (S) AND ACRONYM (S)

A.   Approved free-world sponsor(s):  An organization that has been approved through the Chaplain and the Warden to bring in ministry items for Chaplaincy ministries and religious programs and food for a specific religious celebration.

B.   PMOD:  Prisoner Money On Deposit.

C.   Religious Activities Review Committee (RARC):  This committee consists of the Deputy Commissioner of Programs (Chair Person), the Chaplaincy Program Coordinator, and four senior regional Chaplains.

### IV.  RESPONSIBILITIES

A.   The Departmental Chaplaincy Coordinator is responsible for:

   1.   Serving as a liaison with outside offices and agencies for faith-based treatment initiatives.



DEFENDANT'S
EXHIBIT
26

    2.       Program planning and administration of the chaplaincy division.

    3.       Developing departmental and community resources to meet the needs of inmates within the ADOC.

    4.       Developing policy recommendations for executive level review.

B.    The Regional Senior Chaplains are responsible for:

    1.       Participating on the RARC to review, research, and vote on religious requests submitted by ADOC inmates.

    2.       Providing advice, technical support, and serving as a resource, and liaison for Institutional Chaplains and volunteers within their region.

C.    The Chaplain is responsible for:

    1.       Publishing the institutional religious activities schedule.

    2.       Overseeing all religious activities in the institution.

D.    The Warden is responsible for:

    1.       Approving all religious activities.

    2.       Approving all free-world sponsor(s).

## V.    **PROCEDURES**

A.    The following religious celebrations, by religious groups, and dates are approved to be conducted within the ADOC institutions.

**NOTE:  There are no work proscriptions noted for the following religious celebrations.**

**1.    Buddhism**

Buddhist are only allowed solo study only with a picture of Buddha, prayer oil, incense and incense holder, prayer beads, books, and study materials; all of the religious items are used according to the approval of the Chaplain and Warden of the institution.  These items will be stored in the Chaplain's office and be used at the assigned area for them.

AR 333 – December 17, 2004

| 2. | **Catholics** | **Date** |
|---|---|---|
| | Ash Wednesday | Date varies, confer with the Chaplain |
| | Good Friday | Date varies, confer with the Chaplain |
| | Easter | Date varies, confer with the Chaplain |
| | Christmas | December 25 |

| 3. | **Five Percent Nation of Islam** | **Date** |
|---|---|---|
| | Birth of Founder (Clarence 13X-Allah) | February 22 |
| | Death of Founder | June 13 |
| | Monthly Parliament | Last Sunday of each month |

NOTE: Neither the Moorish Science Temple nor the Five Percent Nation of Islam are obligated to fast, their fasting is voluntary. If the Moorish Science Temple or Five Percenters request to fast, they may fast with either the Sunni Muslims or the Nation of Islam Muslims, but not with both groups. No individual or group will be allowed to participate in more than one fasting period a year.

**4.     Jehovah's Witness**

The Lord's Evening Meal, a communion service celebrated on Nissan 14, usually in late March or April. Chaplains will confirm the date.

| 5. | **Judaism** | **Date** |
|---|---|---|
| | Rosh Hashanah –New Year | A separate calendar is used and the Chaplain will confirm the dates with a Rabbi. |
| | Yom Kippur | Day of Atonement |
| | Sukkoth | Feast of Tabernacles |
| | Simchat Torah | Season of Our Rejoicing |
| | Pesach | Passover |
| | Shavout/Pentecost | Second Pilgrimage Festival |
| | Chanukah | Feast of Dedication |

| 6. | **Moorish Science Temple of America (MSTA/Moors)** | **Date** |
|---|---|---|
| | Noble Drew Ali's Birthday | January 8 |
| | Moorish New Year | January 15 |

AR 333 – December 17, 2004

They believe that Friday is a Holy Day for all Muslims.

NOTE: Neither the Moorish Science Temple nor the Five Percent Nation of Islam are obligated to fast, their fasting is voluntary. If the Moorish Science Temple or Five Percenters request to fast, they may fast with either the Sunni Muslims or the Nation of Islam Muslims, but not with both groups. No individual or group will be allowed to participate in more than one fasting period a year.

| | | |
|---|---|---|
| **7.** | **Nation of Islam (NOI)** | **Date** |
| | Observe Ramadan | Date varies, confer with Chaplain |
| | Savior's Day | February 26 |
| | Birthday of Elijah Muhammad | October 7 |
| | Day of Atonement | October 16 |
| **8.** | **Native American** | **Date** |
| | Spring and Fall Equinoxes | Date varies, confer with the Chaplain |
| | American Indian Day | September 24 and 25 |
| | Winter and Summer Solstices | Date varies, confer with the Chaplain |
| | Green Corn Ceremony/ Harvest Moon Festival | Usually the third Sunday of October. Confer with the Chaplain |
| **9.** | **Protestants** | **Date** |
| | Good Friday | Date varies, confer with the Chaplain |
| | Easter | Date varies, confer with the Chaplain |
| | Christmas | December 25 |
| **10.** | **Seventh-Day-Adventist** | |

The Weekly Sabbath is celebrated from sundown Friday to sundown Saturday during Sabbath hours.

| | | |
|---|---|---|
| **11.** | **Sunni Muslims** | **Date** |
| | Ramadan begins | Date varies, confer with the Chaplain. |

AR 333 – December 17, 2004

| Eid-ul-Fitr (Feast of breaking Fast) | Date varies, confer with the Chaplain. |
| Eid-ul-Adha (Feast of Sacrifice) | Date varies, confer with the Chaplain. |

Friday Jum'ah services

NOTE 1:  The Eid-ul-Adha (Feast of Sacrifice) is the second of only two religious festivals required for Sunni Muslims.  It concludes with annual pilgrimage to Mecca and emphasizes prayer and the value of sacrifice.  It falls on the tenth month of Dhul-Hijjah, approximately two-and-a-half months after "Eid-ul-Fitr," rotating clockwise around the year and occurring twelve days earlier annually, as do all dates.  The Chaplain will notify appropriate personnel of these respective dates.

NOTE 2:  Inmates who are eligible to participate and are approved to participate in the "Feast of Sacrifice" may be allowed access to the dinning hall after the rest of the population has eaten.  Free-world food will not be allowed for this particular festival.

NOTE 3:  Neither the Moorish Science Temple nor the Five Percent Nation of Islam is obligated to fast; their fasting is voluntary.  If the Moorish Science Temple or Five Percent Nation of Islam requests to fast, they may fast with either the Sunni Muslims or the Nation of Islam Muslims, but not with both groups.  No individual or group will be allowed to participate in more than one fasting period a year.

| 12. | **Wiccan** | **Date** |

Samhain                                    October 31
    Candles: black and orange
    Stones: onyx or obsidian
    Carved gourd (pumpkin, turnip, or small gourd)/jack-o-lantern
    Ancestor's feast
Yule (Winter Solstice)                     December 21
    Candles: red and green
    Stones: quartz crystal
    Foods: approved nuts
    Fragrant evergreens of rosemary and cedar, strings of dried rosebuds and cinnamon sticks to adorn the altar
Imbolic                                    February 2
    Candles: yellow and white
    Stones: Amethyst
Ostara (Spring Equinox)                    March 21
    Candles: Pink (God) and Green (Goddess)
    Stones: Rose Quartz (God) and Moonstone (Goddess)

AR 333 – December 17, 2004

Dandelions to decorate the altar
Plastic egg (green) – represents the earth.

Beltane                                    April 30
    Candles: Red (God) and Green (Goddess)
    Stones: Heliotrope or Bloodstone
    Roses to decorate the altar, along with flowers and green
    Branches
    May basket: resembles an Easter basket and will contain
    roses
    May pole: No more than two feet long
    Four lengths of ribbon (2 red, 2 white)

Litha (Summer/Midsummer)        June 22 (varies)
    Candles: 1 blue and 1 green
    Stones: Tiger's Eye or Lapis Lazuli

Lughnasadh                              August 2
    Candles: 1 orange and 1 green
    Stones: Citrine and Peridot
    Libation: Instant Oatmeal (to be eaten and given as an
    offering); one ear of corn (to be burned as offering) to be
    eaten and given as a part of
    the religious ceremony

Mabon (Fall Equinox)               September 21
    Candles: deep gold and violet
    Stones: Amethyst
    Herbs: cedar

B.    Religious celebrations where food is required.

An "approved free-world sponsor(s)" will be responsible for submitting a dinner menu to the Chaplain at least 20 days prior to the date of the celebration. The free-world sponsor(s) must plan the dinner menu to accommodate the number of inmates attending the religious celebration. The Warden shall review and approve the dinner menu. If an approved free-world sponsor cannot be found, the inmates shall be fed from the regular dinner menu.

C.    The following religious events and religious celebrations have been given permission to have food brought into the institution by free-world sponsor(s):

1.    <u>Kairos Events</u>.  Four times each year, usually once each quarter, and is open to all inmate groups.

2.    <u>Ramadhan Eid Feast</u>.  The Festival of Fast – Breaking at the conclusion of Ramadhan.  This ceremony is for traditional Muslims, but other Muslim groups may participate (q.v. Moorish Science Temple and Nation of Islam).

AR 333 – December 17, 2004

3.   Harvest Moon Festival.  A period of "thanksgiving and celebration" for Native Americans, usually on the third Sunday of October.

4.   Jewish Passover.  This festival is the best known of all Jewish festivals, recalling the deliverance of the people of Israel from slaves in Egypt.  It takes place on the first evening of the Passover.

5.   Samhain.  This celebration includes a major feast on October 31.

6.   For smaller religious sects like the Muslims and the Native Americans, among others, where free-world sponsors may be limited, inmates may draw from their PMOD accounts for their "approved sponsors" to purchase food.  If sponsors cannot be found to facilitate the religious celebration, the group will be fed from the regular menu and have access to the dinning hall after the rest of the population has eaten.

D.   Approved Religious Practices and Activities

NOTE: These practices are based on surveys of religious literature, consultations with experts in the field, current practices already being observed in the ADOC, and a review of Alabama court orders. Only one religious item of any kind is allowed (e.g. only one drum, one medallion, one religious cap).

1.   Medallions:  This practice was officially mandated by Victor D. Ayler-Bey v. Jones, court order in May of 1994.  The "Moorish Science Temple will, during the Friday services, be allowed to wear medallions."

a.   To be consistently applied, it is recommended that medallions be allowed at all times for religious groups.

b.   All medallions will be worn on a breakable string only and should be no more than one and one-half inch in diameter.

c.   Medallions may be constructed of metal, wood, plastic or leather, and inexpensive (costs no more than $25.00).

d.   The ADOC will permit inmates to wear colored medallions if they are made of wood, plastic or leather for use in religious practices.

e.   The ADOC will require that such items may not be worn, shown, or displayed anywhere other than the designated place of worship.

AR 333 – December 17, 2004

      f.     These items will be concealed at all times under the inmate's shirt or kept in the inmate's personal possession.

      g.     Outer display of religious medallions is permitted but only during services.

2.    <u>Fezzes, Koofies, and Yarmulke</u>: The practice of wearing religious caps was mandated by Carl Hall v. Oliver court order in March 1982, and then reaffirmed in Victor D. Ayler-Bey v. Jones court order of May 1994. They may be allowed during religious services only and may be colored, to include the red fezz for the Moorish Science Temple.

3.    <u>Prayer Oils</u>: The practice of using prayer oils was mandated by the Victor D. Ayler-Bey v. Jones court order of May 1994, and should be allowed only during religious services. Personal possession is not allowed.

4.    <u>Incense Burning</u>: This practice was mandated by the Carl Hall v. Oliver court order in March 1982, and then reaffirmed in the Victor D. Ayler-Bey v. Jones court order of May 1994. This practice should be allowed.

5.    <u>Prayer Beads</u>:  Muslim prayer beads are analogous to the Catholic rosary (an allowed practice) and are used to remember the names of Allah. Native American beadwork is important as a way of identifying with nature.  It is recommended that these three groups be allowed to wear a small colored string of beads during religious services only, which will easily break away if pulled or grabbed, but only during religious services.

6.    <u>Prayer Rugs</u>:  Muslims should be allowed to have a small prayer rug for their five daily prayers.  Prayer rugs should be the approximate size of two feet by three feet. They may be colored.

7.    <u>Religious Space</u>:  There is a right to collective assembly for approved religious groups.  Court decisions emphasize, however, that the group's size does have a bearing on the amount and frequency of space provided e.g. a small group does not have the right to occupy an entire chapel).

8.    <u>Prayer Shawl (Tilith)</u>:  The size of the prayer shawl for Jewish Services should be approximately 18" wide by 70" long.  It may be colored and is worn during religious services only.

9.    <u>Religious literature, religious audios, DVDs, VCR tapes or videocassettes</u>: Any religious literature, audio, DVD, VCR tape or videocassette that contain any material that is racially offensive or

causing a security problem or conflict will not be allowed. ADOC will determine if media materials poses a legitimate security threat to the security of the prison on a case-by-case basis. Chaplains will also ensure that there are no copyright/royalty infringements by following protocols established by the Chaplaincy Coordinator and the Legal Division.

10. <u>Fire (for use in Native American Ceremonies)</u>: A small fire is only permitted for Native American Ceremonies at a designated place, in the area of the outside Sacred Ground. Fire will only be permitted at this appropriate place. The Chaplain and security personnel will ensure that the fire does not violate any fire safety codes, is small, and safe.

    a.    Fire is regarded as a sacred gift from the Creator, primarily because it warms, purifies, and illuminates, and without it mankind would perish.

    b.    In Native American belief, fire is important because it has the ability to carry prayers, calm the inner-self, and unite all around it to be one people.

11. <u>Wine</u>: One ounce of wine will be allowed to be brought into the institution by the priest to be used in the Eucharist celebration. Only the priest will partake of the wine. Inmates will be prohibited from the partaking of wine.

12. <u>Islamic Turbah</u>: Islamic inmates, who are Shiite, may use a small clay tablet for prayer purposes, called a turbah.

13. <u>Native American/Dream Catchers</u>: The Native American Dream Catcher is a small circular item, usually made of leather, with feathers hanging from the circle. It "catches impure thoughts that come to Native Americans in their sleep".

    a.    The Religious Activity Review Committee has approved this item, and has agreed that it can be hung from the inmate's bed during the hours he is asleep.

    b.    It should be maintained with the inmate's personal property at all other times.

14. <u>Oils</u>: The following types of oils have be approved by the Religious Activities Review Committee to be ordered for Islamic inmates:

    a.    African Musk

AR 333 – December 17, 2004

    b.      Black Coconut

    c.      Black Madina Musk

    d.      Blue Nile

    e.      China Musk

    f.      Egyptian Musk

    g.      Frankincense

    h.      Myrrh

    i.      Nubian Musk

    j.      Sandalwood

E.    Native American Beliefs and Practices

1.    <u>Medicine Bag</u>:  The term "Medicine Bag" shall include any object attached to the bag and the string to which it is attached.

    a.    Native American inmates shall be allowed to have a personal medicine bag to be kept on their person or in their personal property box.  When worn outside the ceremonial grounds, it will be worn underneath their prison clothing.

    b.    The ADOC shall permit the outside of the medicine bag to be adorned with colored beads as well as beads which are white or black.  Beads greater in size than approximately eight millimeters in diameter (the size of a "pony" bead) are **not** permitted.

    c.    Inmates shall be allowed to affix items such as claws, beads, stag buttons, and pieces of antlers to their medicine bags with the following restrictions:

        1)    Claws shall be no longer than one and one-half inches in length from tip to tip.

        2)    Stag buttons shall be no longer than one and one-half inch in diameter.

        3)    Arrowheads shall be no larger than one and one-half inch in length.

AR 333 – December 17, 2004

       4)  Antler pieces shall be no longer than one and one-half inch long and may not be sharp at the tip.

    d.     Antlers, claws, and arrowheads must be permanently affixed to the Native American inmate's medicine bag or contained within the medicine bag itself.

    e.     Medicine bags that do not exceed 4" X 4" in size are permitted.

    f.     If the medicine bag is strung from the inmate's neck, it is to be attached with a natural or neutral color leather string or shoelace. This string must be breakable for the inmate's safety in the event it is jerked or snatched from the neck..

    g.     All medicine bags shall be inspected in a proper manner by correctional offices when the inmate is either entering or exiting a correctional institution and at any time a correctional officer has reasonable cause to believe that it conceals contraband, and/or items that could be used as a weapon, are concealed in the medicine bag.

    h.     In the event that a return dispute of a specific medicine bag occurs, the inmate retains the right to petition the court for its return.

2.    <u>Contents of Medicine Bag</u>: Native American inmates shall be allowed to keep inside their medicine bag all objects, which have a religious significance to the practitioner, including, but not limited to, small stones, sand or dirt, feathers, beads, except those items that are otherwise prohibited within this regulation. Upon reasonable cause and when requested by a correctional officer, a Native American inmate will display all objects in the medicine bag, allowing a visual inspection of the inside area/space/part/portion of the medicine bag.

3.    <u>Vegetation</u>: ADOC officials shall permit vegetation to be grown on the Native American ceremonial grounds.

    a.     The inmates shall be allowed to plant and maintain a tree of life, preferably cedar.

    b.     Native American inmates shall be allowed to grow and maintain on the ceremonial grounds:

       1)  One variety of corn and up to eight stalks planted at least one foot apart.

AR 333 – December 17, 2004

      2) One variety of bean and up to eight plants planted at least one foot apart.

      3) One variety of squash and up to eight plants planted at least three feet apart

   c.   Flowers and gourds shall also be grown by the Native American inmates on the ceremonial grounds for ceremonial purposes.

   d.   Vegetation, other than the tree of life or any existing trees of life, shall not be permitted to grow to a height greater than four and one-half feet and shall be planted in such a manner as to not obstruct the view of correctional officers, not within ten feet of any perimeter fence of the correctional institution, nor cause any type of fire hazard to any prison building or areas of the yard.

4.   <u>Access and Time Allowed on Ceremonial Grounds</u>: Native American inmates shall be allowed access to the ceremonial grounds when the prison yard is open. Additionally, when the prison yard is **not** open, Native American inmates shall have access to the ceremonial grounds if the chapel is open or during "chapel call", but not after sunset. Factors that may be considered regarding additional access to the ceremonial grounds are the level of security of the institution, the number of Native American inmates who will use the ceremonial grounds, and the physical structure of the institution.

5.   <u>Size of Ceremonial Grounds</u>: Native American inmates shall be allowed to have and maintain a ceremonial ground at each institution where Native American inmates are incarcerated. The size and location of the ceremonial grounds is to be determined by factors such as: the specific institution, the availability of space, the level of security, and the number of Native American inmates wanting to use said ceremonial grounds. All ceremonial grounds shall be a minimum of 20'X20'.

6.   <u>Location of Ceremonial Grounds</u>: Any correctional institution, which has Native American inmates, shall have an area designated for use by them as ceremonial grounds. Factors for determining the exact location of the grounds are as follows: Judgment of ADOC officials for the most appropriate place for the ceremonial grounds, the security level of the institution, the normal operation of the institution, and flow of inmate traffic at the institution.

7.   <u>Medicine Wheel</u>: Native American inmates shall be allowed to maintain a medicine wheel, comprised of stones, upon the ceremonial grounds. The size of the medicine wheel will be

AR 333 – December 17, 2004

dictated by the amount of space available for the ceremonial grounds at each institution and the number of Native American inmates that will use it.

8.  Provisions of Storage Space: The ADOC shall permit the Native American groups at each institution to place a box on or adjacent to the ceremonial grounds in which religious items are kept. The box shall be secured by a combination lock. Native American inmates and the appropriate ADOC officials shall maintain the combination to this lock.

9.  Feathers: The ADOC shall not prohibit Native American inmates from possessing feathers for religious and ceremonial use. Feathers must be kept in their personal property box or at their bed. The ADOC shall not prohibit the use of feathers on the ceremonial grounds or in the areas used for Native American activities. Practitioners shall be allowed to keep, in their possession at all times, personal prayer fans for use on the ceremonial grounds.

10. Moccasins: The ADOC shall not prohibit Native American inmates from wearing moccasins while on the ceremonial grounds. According to the ADOC discretion, moccasins may be kept with the inmate's personal possessions, on the ceremonial grounds, or with the Chaplain.

11. Prayer Pipes: Native American inmates shall be allowed to keep a personal prayer pipe. In addition to a personal prayer pipe, a congregant prayer pipe will also be kept by the designated "pipe keeper." The personal prayer pipe will only be used while on the ceremonial grounds. The ADOC will permit inmates, according to each inmate's personal preference, to keep the pipes with other personal religious items at the ceremonial grounds, an area specifically provided for Native American activities, or with the Chaplain. Nothing prohibits a correctional officer or ADOC official from visually inspecting a prayer pipe, when there is reasonable cause to inspect the pipe, in the manner set forth in this regulation for the inspection of medicine bags and prayer pipes.

12. Herbs: The ADOC shall permit Native American inmates to purchase the following herbs through the Chaplain's office: Sage, Sweetgrass, Cedar, Kinnikinick, and Tobacco. All herbs, except tobacco, are to be maintained and kept by the Chaplain or in the Shift Commander's office.

13. Drums and Rattles: The ADOC shall permit Native American inmates to have drums and rattles for use during ceremonies held on the ceremonial grounds. These items will be maintained and kept either on the ceremonial grounds or with the Chaplain. These

AR 333 – December 17, 2004

items will not be used in a manner that disrupts the normal operation of the correctional institution.

14.    <u>Ceremonial Items</u>:  The ADOC shall permit inmates to possess colored ceremonial items, such as armbands, chokers, and headbands for use in religious practice.  The ADOC prohibits wearing, showing, or outer display of such items anywhere except the ceremonial grounds or in the area specifically provided for Native American activities, and only then for the purpose of practicing Native American spirituality.  The ADOC shall require these items to be kept on the ceremonial grounds.

15.    <u>Ceremonial Days</u>:  The ADOC shall permit inmates to celebrate the following sacred days: American Indian Days, the Green Corn Ceremony, the Harvest Moon Ceremony, the Winter and Summer Solstices, and the Spring and Fall Equinoxes.  The ADOC shall require Native American inmates to notify the Chaplain or Warden/designee twenty days prior to the observance of sacred days.  The ADOC may impose the same work proscriptions on Native American sacred days as work proscriptions observed by the Department for recognized sacred days of other religions.

16.    <u>Publications/Literature</u>:  The ADOC shall impose no proscriptions on the cultural and spiritual literature allowed to the Native American inmates and shall not require inmates to purchase literature in a particular month of the year.  Cultural and spiritual literature shall be evaluated by the ADOC on a case-by-case basis to determine if it poses a legitimate threat to the security of the prison.  This literature shall be obtained through the channels and procedures set forth in the applicable regulations compatible with this provision.  Nothing in this regulation obligates the ADOC to grant rights to Native American inmates who adhere to other recognized religions.

17.    <u>Purchase of Items</u>:  The ADOC shall impose no proscriptions on ordering religious items by the Native American inmates, provided such items do not constitute a legitimate threat to security. Such items shall be obtained through the channels and procedures set forth in the applicable regulations compatible with this provision.

18.    <u>Training of Correctional Officers on Inspections</u>:  ADOC officials shall be taught the proper procedures for inspecting and viewing all Native American items.  Specifically, the ADOC shall train its personnel not to touch the medicine bags or sacred pipes of the Native American inmates.  Should an officer believe that it is necessary to inspect the contents of a Native American's medicine bag or sacred pipe, the officer shall bring the inmate to the Chaplain's office where the contents of the bag or the pipe can be

AR 333 – December 17, 2004

visually inspected. In the event that the Chaplain is not present, the inspection may be performed in the presence of the Shift Commander.

19. <u>Retention of Religious Items on Transfer</u>: The ADOC shall permit inmates to keep and retain their religious items during their transfer from one institution to another. When an inmate is transferred, he/she shall be given access to the ceremonial grounds to retrieve his/her religious items.

20. <u>Sacred Item Box</u>: The ADOC shall not prohibit Native American inmates from maintaining a sacred item box in their personal possession so long as the size of such box allows it to be kept within the inmate's locker box or personal possessions.

21. <u>Right to Petition</u>: The religious and ceremonial items, which were previously possessed by an inmate and do not violate the provisions set forth in this regulation or ADOC policy, shall be returned. In the event that a dispute arises as to the return of specific items of an inmate, he/she retains the right to petition the Court for his/her item.

22. <u>Personal Prayer Book</u>: The ADOC shall permit Native American inmates to possess personal prayer books and shall permit them to keep such books covered with a natural material such as leather or fir so long as the covers slip off easily for review and inspection by correctional personnel.

23. <u>Talking Stick</u>: The ADOC shall permit Native American inmates to maintain and store a talking stick no larger than two feet long and one inch in diameter on the ceremonial grounds of each prison.

F.    Sweat Lodge Ceremony

1. <u>Sweat Lodge Structure</u>: The lodge is usually a dome-shaped structure made of willow or other saplings indigenous to the area. The saplings are lashed together with twine or bark.. The structure is then covered with a tarpaulin, blankets, or canvas to make it light proof. The Warden, upon the recommendation of the Chaplain and spiritual advisor, shall determine the size of the sweat lodge. Generally the dome of the sweat lodge should be approximately 4 feet in height by 12 feet in diameter. The sweat lodge may be a prefabricated, temporary structure.

2. <u>Sacred Altar</u>: A small earthen mound is built as a sacred altar outside the lodge, using the dirt from the inside fire pit.

AR 333 – December 17, 2004

3. <u>Outside Fire Pit</u>: Beyond the sacred altar is a fire pit for heating rocks. The fire pit should not exceed an area 3 feet in diameter.

4. <u>Inside Fire Pit</u>: A pit dug inside the sweat lodge where hot rocks are placed with a shovel or rake for the production of steam. This inside fire pit should not exceed an area 3 feet in diameter. A container of water is required to sprinkle on the hot rocks to produce the steam and heat. A fire suppression system such as a hose, fire extinguisher, or extra buckets of water will be required in case the fire gets out of control.

5. <u>Barrier Around Area</u>: The Warden should designate an area to preserve the sacredness of the lodge, altar, and fire pit that should be roped off. In those institutions designated to conduct a sweat ceremony, the area for the sweat ceremony and the Native American ceremonial ground should be approximately 40 feet x 40 feet, space permitting.

6. <u>Sacred (Ceremonial) Pipe</u>: The sacred pipe is often used during the sweat lodge ceremony.

7. <u>Sweat Schedule</u>: Sweats will be conducted four times a year during the Spring and Fall equinoxes and the Winter and Summer solstices. The spiritual advisor and Chaplain will determine the respective time frames for the sweats, with the Warden's approval. The duration of the ceremony from the time of the fire to the actual sweat should not exceed 4 hours; 2 hours to heat the rocks and 2 hours for the sweat ceremony.

8. <u>Institutional Counts</u>:

   a. During a <u>formal</u> count, and at times when a sweat lodge ceremony is in progress, the correctional officers should respectfully notify inmates of the count. The correctional officials will open the flap/door for the count. If the Warden or designee deems it appropriate, the inmates will be ordered to return to their assigned beds for a lock-down count.

   b. Upon occasion, while a sweat lodge ceremony is in progress, it will be necessary for a correctional official to conduct an <u>informal</u> inmate count to ensure that all inmates under his/her supervision are accounted for. The correctional official should respectfully notify inmates of the count. The correctional official will open the flap/door for the count.

AR 333 – December 17, 2004

c. Upon occasions, it is necessary to conduct an emergency inmate count while a sweat lodge ceremony is in progress. The Warden/designee will order an emergency count and all inmates will be returned to their assigned beds. The correctional official will open the flap/door and order the inmates to return to their assigned beds.

9.  Clothing/Attire:  Inmates participating in sweat ceremonies are required to wear appropriate outerwear, such as prison uniforms or T-shirt and shorts approved by the Warden.

10. Wood and Rocks for the fire: The designated institutions should collect these materials. The spiritual advisor with the Warden's approval shall determine the type of rocks used. The number of rocks used should not exceed twenty-eight in numbers and should be no greater than six inches in diameter.

11. Participation: Participating in the sweat lodge is limited to those inmates who declare Native American Spirituality, by their own choice. Without approval of the Warden, no more than five inmates may enter the sweat lodge at one time. The Warden shall allow a sufficient number of sweat ceremonies in connection with the Spring and Fall equinoxes and the Winter and Summer solstices so that each inmate meeting the participation requirements of this paragraph has the opportunity to participate in the ceremony.

12. Spiritual Advisor:   A designated free-world representative will be the spiritual advisor for facilitating the sweat lodge ceremony. The spiritual advisor shall be someone with knowledge of the sweat ceremony and a sincere desire to assist the Native American inmates. The advisor will collaborate with the Warden and Chaplain on proper procedures for establishing/construction of the sweat lodge, and will be responsible for conducting or facilitating the sweat lodge ceremony.  If a spiritual advisor is not available to conduct a sweat lodge ceremony, then the ceremony will be conducted by an inmate approved by the Warden who will consult with the Chaplain and/or spiritual advisor.

13. Sweat Lodge Institutions:  The ADOC will designate four institutions to contain a Sweat Lodge Structure. These institutions will include (1) one maximum-security institution, (2) two medium-security institutions, and (1) one minimum-security institution. The provisions of the ceremony at these institutions shall be administered to meet the needs of the inmate population and at the discretion of the Commissioner/designee.  The ADOC will follow the classification procedures to allow Native American

AR 333 – December 17, 2004

inmates who desire to participate in sweat ceremonies to transfer to a designated institution.

G.    Parameters for the Practice of the Wiccan Religion

    1.    <u>Place</u>:

        a.    The place will be outside and consist of a circle.

        b.    The Warden, based on the Chaplain's recommendations, will designate the place.

        c.    The only inmates allowed at that place will be identified as serious practitioners who have studied Wiccan belief and practices.

    2.    <u>Ritual</u>:

        a.    There are eight recognized Sabbats.

        b.    Each individual must make a written request to the Chaplain or Warden well in advance to set up the Ritual they desire to conduct.

        c.    An inmate must make a written request to celebrate a holy day at least two weeks in advance.

    3.    <u>Solo Study</u>:  Solo studies or group activities are based on religious needs, as determined by the Chaplain or Warden.

        a.    Approved outside rituals and activities only.

        b.    The only exception would be single or group studies inside by the approval of the Chaplain or Warden.

        c.    Inside at bunks, prayer and literature activities that are reasonable, does not disturb anyone else, and is not a security violation, not encroaching on the orderly function of the dorm or cell area.

    4.    <u>Religious Practices</u>:

        a.    Wiccans meet in sacred circles where rituals are held.

        b.    The area to cast circle (reasonable) will be determined by the Warden and the Chaplain.

        c.    Required daily observance:

AR 333 – December 17, 2004

1) No universal standard across traditions
2) Personal prayer such as:

    a) Greeting the day
    b) Prayer before meals
    c) Prayer to close the day

d.   Required weekly observance

1) No universal standard
2) Approved space on yard

    a) Go to the approved area
    b) At the approved scheduled time
    c) Box for religious items approved by the Warden
    d) Allow a small tree in a pot 24 inches or less in height

    a) Approved inside space during inclement weather for study and review of tapes and literature only.

5.   <u>Religious Items</u>:

a.   Personal religious items

1) Book of shadows
2) A spiritual journal
3) This will include all rituals
4) All rituals will be screened and reviewed by the Chaplain or Warden/designee before used
5) A copy will be kept by the area review Chaplain

b.   Divinations tools

1) Tarot cards
2) Runes or picture
3) Items to honor the elements of nature

    a) Salt-earth (un-iodized only)
    b) Feather-air
    c) Approved herbs-air
    d) Wood wand-fire
    e) Water-water
    f) Picture of divine unity-center

4) Religious medallion, usually a pentacle on a breakable string.

AR 333 – December 17, 2004

    c.    Congregate religious items:

1) Altar - cardboard box
2) Altar cloth
3) Bell - very small
4) Book of Shadows*
5) Candles – used outside (various colors may be used)
6) Chalice – plastic
7) Drums
8) Herbs (sage, cedar, lavender only)
9) Incenses
10) Pentacle*
11) Rattle
12) Tarot cards or picture runes on paper*
13) Salt (Un-iodized)
14) Dowel sticks to be used as a magic wand* (no larger than 12 inches in length and no thicker than a pencil and will be made from an all natural substance such as an apple blossom branch)
15) Libation dish for indoor worship
16) Scented anointing oils stored with the Chaplain (lavender, myrrh, frankincense only)
17) Feathers and feather fan
18) Abalone shell
19) Two icons (a small statue or picture of a goddess and god)
20) Small cauldron no bigger than one foot in height and diameter
21) Two non-glass dishes for salt and earth, at least three inches in diameter
22) Small scissors with rounded ends to cut paper and herbs (checked out from the Chaplain)
23) Clear barreled pens and paper*
24) Several semi-precious crystals, including quartz (stones are to be approved by the Warden)
25) Sacred items box  approved by the Warden
26) Tea purchased from the canteen.
27) Talisman bag not larger than 4" x 4"*
28) Teas which can be purchased from the canteen

Note: The asterisk (*) symbol indicates that the inmate may have these items in their personal possession.

6.    <u>Requirements for membership</u>:

    a.    Decision to follow the Wiccan path

AR 333 – December 17, 2004

      b.     Self-initiation

      c.     Group as determined need

      d.     Wiccan volunteer/sponsor

         1) Self-choice
         2) Acceptance by the group leadership and general
         3) Theology (Chaplains will have a permanent copy of the list or information on theology)

      e.     No universal dietary standard exist for Wicca (self-selection from the main cafeteria)

      f.     No universally recognized sacred writings exist for Wicca

7. <u>Divination Tools</u>:

      a.     Tarot cards

      b.     Rune pictures

8. <u>Organization structure</u>:

      a.     Outside

         1) Most are solitary practitioners
         2) The large groups based on need (No covens)
         3) The group leader will be called a facilitator, not high priest
         4) There will be no priestess

      b.     Inside prison – Inmate lay leaders are permitted for a group and identified as facilitators

      c.     Wiccan activities will include:

         1) White magic only
         2) **NO** black magic of any kind

9. <u>Prohibited Sects, Practices, Materials, and Tools</u>:

      a.     The ritual knives

      b.     The broadsword

      c.     No robes

AR 333 – December 17, 2004

        d.     No skyclad

        e.     No drugs

        f.     No alcohol

        g.     No scourge

H.    Guidelines for Considering Music

There is a large variety of religious music used in the various religious services of the ADOC. All music should be screened by the Chaplain and judged on content. Any content that violates the security standards of AR 303, Visitation and Correspondence Procedure, and AR 313, Chaplaincy Services and Religious Activities, or any other regulation of the ADOC will be automatic grounds for rejection of material. Music materials will be screened on a case-by-case basis.

I.    Inmates Speaking in any Religious Service

Any inmate who speaks at any religious service, large or small, must have the prior approval of the Chaplain of that institution.

J.    Religious Education Programs/Faith Based Honor Dorm Program:

1.    Is defined as a specialized, systematic, rehabilitative, approach over and above the regular chaplaincy programs.

2.    In the ADOC, these programs have treatment status under the directive of the chaplaincy programming.

3.    Court ordered programs still have priority for the inmate.

4.    These programs are based upon the inmate choosing this approach of his own free will and signing a contract for participation.

5.    These programs are open for all to participate in.

## VI. **DISPOSITION**

Any forms will be disposed of and retained according to the Departmental Records Disposition Authority.

## VII. **FORMS**

There are no forms prescribed in this regulation.

AR 333 – December 17, 2004

VIII.   **SUPERCEDES**

This regulation supercedes AR 333 dated April 21, 2004.

IX.   **PERFORMANCE**

    A.    Limbaugh v. Thompson, CV No. 93-D-1404-N, March 5, 1998.

    B.    Victor D. Ayler-Bey v. Jones, May 1994.

    C.    Carl Hall v. Oliver, March 1982.

Donal Campbell, Commissioner

AR 333 – December 17, 2004



**State of Alabama**
# Alabama Department of Corrections

301 South Ripley Street
P. O. Box 301501
Montgomery, AL 36130-1501



**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

October 21, 2005

TO:   WARDENS                                        CHANGE #1
      HEADS OF STATE AGENCIES          ADMINISTRATIVE REGULATION 333
      DIVISION HEADS
      ADMINISTRATIVE REGULATION MONITORS

### RELIGIOUS PROGRAM SERVICES

PURPOSE:    To clarify services.

CHANGES TO BE MADE:

| **Reference** | **Action Required** |
|---|---|
| Page 4, Section V. A. 8. | Change paragraph to read:<br><br>"Green Corn Ceremony or<br>Harvest Moon Festival" |
| Page 5, Section V. A. 11. | Delete Note 2 and change renumber Note 3 to "Note 2" |
| Page 6, Section V. C. | Change paragraph to read:<br>"The following religious holy days that require food approved by the ADOC and have been given permission to have food brought into the institution by free-world sponsor(s):" |
| Page 6, Section V. C. 1. | Change paragraph to read:<br>"Eid-ul-Adha (Feast of Sacrifice)" This ceremony is for traditional Muslims, but other Muslim groups may participate (q.v. Moorish Science Temple and Nation of Islam." |
| Page 11, Section E. 3. a. | Change paragraph to read:<br>"The inmates shall be allowed to plant and maintain a tree of life, preferably cedar not to exceed the height of the 10 feet." |

Page 12, Section E. 3. d.          Change paragraph to read:
                                   "Vegetation, other than the tree of life, shall
                                   not......"

Page 14, Section V. E. 15.         Change paragraph to read:
                                   "the Harvest Moon Ceremony, on or about
                                   the Winter and Summer Solstices, and on or
                                   about the Spring and Fall Equinoxes."

Page 15, Section V. E. 22.         Change "fir" to "fur"

Page 22, Section V. K.             Add new paragraph K.:
                                   "K. SPECIAL RELIGIOUS PROGRAMS:

                                   Where food is permitted by the Warden, the
                                   Chaplain and/or the Deputy Commissioner
                                   of Programs, for events such as Kairos
                                   events, graduations, Faith Based Honor
                                   Dorm family activities."

Donal Campbell, Commissioner

AR 333 Chg 1 – October 21, 2005



# State of Alabama
# Alabama Department of Corrections



**Bob Riley**
GOVERNOR

Research and Planning
P. O. Box 301501
Montgomery, AL 36130-1501

**Donal Campbell**
COMMISSIONER

January 30, 2003

ADMINISTRATIVE REGULATION
NUMBER                    403

OPR: INSTITUTIONS

## DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS

I       **GENERAL**

A.      This regulation establishes policies/procedures governing the conduct and disposition of Disciplinary Hearings for inmates in the custody/control of the Alabama Department of Corrections (ALDOC). The Commissioner, his designee(s), Wardens and other ALDOC employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation. All procedures require final action by the Institutional Head or his/her designee. The Institutional Head will identify said designee in writing.

B.      A Hearing Officer will hear evidence in cases of major violations of departmental administrative regulations, and institutional rules and regulations, for which punishments or sanctions may be imposed.

C.      Sanctions or punishments may include, segregation, forfeiture of earned good time, custody review, and loss of privileges.

D.      When an inmate with a serious mental illness receives a disciplinary report, the inmate's mental status will be considered in determining the inmate's competency to participate in the hearing process. When an inmate is found incompetent, the disciplinary hearing process will be delayed until the inmate's competence has been restored. The inmate's mental status will be considered in the disposition when as inmate with a mental illness is found guilty of a rule violation. The institutional psychologist will assess the inmate's competency and culpability, and provide relevant information to the disciplinary hearing officer.

E.      Inmates will not be punished for symptoms of a serious mental illness. This is not to say that a mental health inmate should never receive a disciplinary. The intent of the mental status evaluation is to determine if the misconduct is symptomatic of the presence of a



AR 403 January 30, 2003

serious mental illness. If such is the case, disciplinary action is deemed counterproductive and should not be completed.

## II    DUE PROCESS REQUIREMENTS

Any inmate charged with a violation of departmental administrative regulations, institutional rules and regulations must be given a due process hearing if the violation can result in the loss of earned good time and/or confinement to segregation. An inmate can be placed in disciplinary segregation for up to 45 days and upon reclassification from work release for up to 30 days.

Due Process requirements are:

A.    The inmate must be given written notice of the charges at least 24 hours prior to the Hearing.

B.    The inmate must be permitted to attend the hearing and testify or present documentary evidence, unless he refuses to attend or is disruptive.

C.    The inmate must be permitted to call a reasonable number of reasonably available witnesses to the hearing, normally no more than three (3) witnesses.

D.    The inmate must be permitted to prepare and submit to the Hearing Officer, prior to the hearing, pertinent written questions to be asked of witnesses at the hearing, or to ask another inmate to assist him in preparing these questions if he is incapable of doing so.

E.    The inmate must be informed of the decision of the Hearing Officer, and must be given a copy of the signed and approved Disciplinary Report which lists the findings of fact, the basis for the findings of fact, the decision of the Hearing Officer, and the punishment or sanction imposed.

F.    If the inmate has been identified as a mental health inmate, an evaluation of the inmate's competency to understand the disciplinary process must be conducted by the institutional psychologist.

## III    PROCEDURE BEFORE HEARING

A.    <u>Arrest or Charge of Inmate</u>

The arrest or charge of an inmate for a rule violation may be made by any employee or contract medical employee of the ALDOC. The person making the arrest or charge is designated as the Arresting Officer. The Arresting Officer will appear as a witness at the Disciplinary Hearing. For the purpose of this regulation, an arrest is defined as the taking of an inmate into custody or making a charge by the authority of this regulation, federal law, Alabama law, or municipal law for the purpose of charging him/her with an offense or violation of a departmental administrative regulation or institutional rules and regulations or

AR 403 January 30, 2003

charges. The arrest should be made within ten (10) calendar days after the violation is reported, discovered, or within ten (10) calendar days after an investigation has been completed, or within ten (10) calendar days after an escapee (in an escape charge) is back in custody of the ALDOC.

B.    Appointment of Hearing Officer

Wardens will appoint a ALDOC employee to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403. Wardens, personnel who have formed an opinion of the innocence or guilt of the charged inmate, Arresting Officer, and witnesses may not serve as Hearing Officer.

C.    Investigation of Charges

The Wardens may, if he/she deems it necessary or advisable, order an investigation of the charges at the institutional level and a report to him/her or request an investigation by the Investigations and Intelligence (I & I) Division.

D.    Preparation of Charges

ALDOC Form 225B, Disciplinary Report (Annex C) items 1-4 must be completed when the inmate is charged. If the inmate's actions in one incident violates various major or minor rules, then the Arresting Officer may use his/her discretion in which charges to bring. All offenses growing out of the same incident may be charged at the same time, using separate 225B forms for each charge. The charge(s) should be filed and served within ten (10) calendar days after the inmate is arrested or charged. If the charge is escape, the writer of the incident report will complete an incident report which will be notarized (See AR 302). It will include therein additional information such as contacts for evidence and testimony including law enforcement officers, free world witnesses, and ALDOC personnel.

E.    Serving the Inmate with the Charge

The Form 225B completed through item five must be served by the Serving Officer on the inmate at least 24 hours before the schedule hearing. The Serving Officer will read the charges to the inmate. If the inmate refuses to sign for receipt of charges, then the Serving Officer will so indicate by "Refused to Sign" and sign Serving Officer's signature. The Serving Officer at this time will inform the accused inmate that he/she should prepare his/her testimony, in the form of a written statement, to be read by the inmate to the Hearing Officer during the hearing. After the inmate has been served a copy of 225B, a suspense copy will be placed in the inmate's institutional file.

F.    Obtain Name of Witnesses Inmate wants at Hearing

At the time of service of charges on an inmate, the Serving Officer will advise the inmate of his/her right to call witnesses whose testimony will be relevant and whose presence will not present a security threat. The Serving Officer will obtain those names at this time and will not refuse to list any witnesses desired by the inmate. The Hearing Officer will determine if the

AR 403 January 30, 2003

witnesses' testimony could possibly be relevant and/or if bringing certain witness (es) would present a security threat. Normally no more than three (3) witnesses with relevant testimony are called. The Hearing Officer will be responsible for having the inmates and employees called as witnesses present at the hearing. Any free world witness the inmate wishes to testify, and whose testimony would be relevant, must be written or called by the inmate, and permission must be given to the inmate to write or call. Form 225B, Items 6 and 7, are to be completed by the Serving Officer when serving the inmate. If an inmate requests more than three witnesses, including free world witnesses, the Hearing Officer, prior to the hearing, may require the inmate to submit a summary of the witnesses' expected testimony. The Hearing Officer may refuse to allow any witness whose testimony is not relevant to testify.

G.      Provide Data on Inmate to Hearing Officer

At institutions where computer input, printer capability, and personnel are available, on the working day prior to the Disciplinary Hearing, a copy of the inmate's record display, CDINC may be produced and provided to the Hearing Officer along with the inmate's good time earning status and good time earned.

## IV     PROCEDURES DURING HEARING

The Hearing should be held within ten (10) working days after the inmate has been served with the charge(s), but cannot be held in less than 24 hours. If there is a need to postpone or reschedule the hearing, Form 225D, Notice of Postponement of Disciplinary Hearing (Annex D) should be completed advising the inmate of the rescheduled date and reason for delay. The Hearing Officer at the time the hearing is to begin will follow these procedures:

A.      Have the inmate present in the hearing room and identify him/her as the inmate charged. The inmate must be present in the hearing room unless he/she refuses to attend the hearing or is disruptive. You may proceed without him/her only for these two (2) reasons. If he/she is not present, explain in detail on an additional page and attach to the disciplinary report.

B.      Read the charges to the inmate and determine if he/she understands the charges.

C.      Determine if the inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days if requested. Neither inmates nor free world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on Form 225B.

AR 403 January 30, 2003

D.  Ask the inmate how he/she pleads and record on Form 225B. If inmate pleads guilty, then go forward to procedural Step L.

E.  Swear the inmate and all witnesses under oath to testify truthfully.

F.  Hear the evidence brought by the Arresting Officer and all witnesses present at the hearing. Affidavits and written statements should not be used in lieu of testimony, except in extreme circumstances, which must be documented on additional page(s) and attached to the disciplinary report.

G.  Allow the inmate to read his/her prepared written statement to the Hearing Officer and allow the inmate to add his/her oral testimony if the inmate desires.

H.  Ask the questions, if relevant, prepared by the inmate, to the respective witness (es) and write the answers.

I.  Explain to the inmate why any witness (es) he/she has requested were not called and complete item 16 on Form 225B.

J.  Dismiss everyone from the hearing room, consider the evidence and make a finding of fact and finding of not guilty or guilty and determine the punishment or sanctions imposed. The Hearing Officer may determine that the violation charged has not been proven but that a lesser included similar offense has been proven. A lesser included violation is defined as being a violation in which some but not all of the elements of proof of the originally charged violations are present. With good justification the Hearing Officer has authority to find the inmate guilty of a lesser included offense, in which case, provisions of AR 414 may apply in order to complete disposition of appropriate disciplinary action.

K.  Call the inmate into the hearing room and inform him/her of the decisions reached.

L.  If the inmate has pled guilty, then omit procedures E through K, swear in the inmate only, require the inmate to explain the details of his/her violation to you, have the inmate sign the guilty plea, and then, make a finding of fact, and a finding of guilt or innocence. If the inmate's plea of guilty is accepted then inform him/her of the punishment or sanctions imposed. If the inmate refuses to sign the guilty plea this will be considered a "Not Guilty" plea and proceed with the hearing.

V    **PROCEDURES AFTER HEARING**

The Hearing Officer, after the hearing will follow these procedures:

A.  Have a condensed version of all pertinent testimony typed on Form 225B using additional pages if necessary.

B.  Complete all spaces on Form 225B or put [N/A] (Not Applicable) in those appropriate spaces.

AR 403 January 30, 2003

C.    Complete, in the appropriate space, specifically the findings of fact made by the Hearing Officer.

D.    Complete, in the appropriate space, specifically the basis for the findings of fact.

E.    Obtain all necessary signatures on the Disciplinary Report Form 225B.

F.    The Warden or his/her designee will approve or disapprove the findings and/or recommendations within ten (10) working days after hearing. The Warden may not disapprove a finding of "not guilty". If the Warden disapproves of the recommended punishment, he/she may order the punishment to be reduced.

G.    A completed signed copy of the disciplinary report will be served on the inmate as soon as possible without undue delay after the Warden's determination, and all approved punishments will begin at this time or at the time the inmate is placed in the segregation cell to begin serving disciplinary segregation. If the Warden determines that a security threat will exist by a delay in the imposition of punishment, he/she may order such punishment to begin at any time after the hearing is conducted.

H.    If the Warden approves the recommendation of the Hearing Officer, or a lesser punishment, he/she will:

1.    At units with computer terminal input capability: Coordinate with and forward or issue his/her comments and supporting documents to the institutional Social Service Coordinator. The Coordinator will insure the terminal operator takes the required action to effect the loss of good time in accordance with the Computer Terminal Operator's Manual, and implement classification procedures or other considerations. Institutional Social Services will forward/issue the completed and signed disciplinary report to the following:

a.    One copy to the Board of Pardons and Parole.

b.    One copy to the Director of Investigations and Intelligence in all cases where there has been a violation of Federal or State law.

c.    Original to the Director of Central Records, stamped as "Entered" at the terminal, initialed by the operator, and dated on the date of entry.

d.    One copy retained in the inmate's institutional file.

2.    At units without computer terminal capability: Submit his/her comments and supporting documents to the Director of Central Records for any further action needed to effect the loss of good time or other consideration. The Director of Central Records will accept the action of the Warden for less severe punishment as final. Additionally, units without computer terminal capability, will furnish one copy to the Board of Pardons and Paroles, and one copy to the Director of Investigations and Intelligence in all cases where there has been a violation of federal or state law. The

AR 403 January 30, 2003

original will be retained in the inmate's Central Record file. The Warden will notify the inmate in writing of his/her approval or recommended disapproval, and one copy of the Warden's action will be forwarded to Social Services for classification purposes and the same copy retained in the inmate's institutional file.

## VI    MISCELLANEOUS PROVISIONS

A.    Arrest and Hearing Based on Information From Confidential Sources

If the arrest of an inmate is made upon information received from confidential source(s), the following procedures should be followed:

1.    The identity of a confidential source(s) of information will remain confidential. Precautions must be taken to insure the reliability of any information received from a confidential source(s).

2.    The facts obtained from confidential source(s) will be presented verbally at the hearing by the person receiving the information from the confidential source.

3.    No decision in a disciplinary proceeding may be based upon information from an undisclosed informant unless there is corroborating information or evidence or unless the reliability of the source satisfies the Hearing Officer that the information is true. The basis for accepting the source as reliable should be indicated in item 18 on Form 225B.

B.    Excusing Witnesses Called by Inmate

As the names of witnesses desired by the accused have been obtained during the notification and serving process, they (witnesses) are required to appear, unless excluded for specific reasons by the Hearing Officer. Reasons for not calling a witness may include, but are not limited to: inmate witness declining to appear voluntarily; the witness being repetitive in that such witness is expected to provide the same information as other witnesses; the witness not having personal knowledge of the circumstances of the incident; endangering the security of the institution; or an existing possibility of retribution which could harm an individual. The reason (s) for not calling any witness requested by an inmate will be explained to the inmate and item 16 on the Form 225B must be completed.

C.    Determine if the Inmate is capable of acting in his/her own defense. If the inmate has been identified as a "mental health" inmate, review the disciplinary report to ascertain if an assessment of the inmate's mental status has been performed by the institutional psychologist. If an assessment has been done, and the inmate has been deemed capable of understanding the disciplinary process, then determine if the inmate is capable of acting in his/her own defense. If the inmate is not capable of acting in his/her own defense, then appoint an on-duty ALDOC employee to assist the inmate. If the inmate is provided assistance, the hearing may be delayed up to five (5) working days, if requested. Neither other inmate's nor free-world counsel may represent an inmate in a disciplinary hearing. Complete item 10 on the Form 225B. In any case where a disciplinary or rule violation has

been voided or otherwise overturned as a result of a technicality or due process violation, but where the behavior indicates the need for a more restrictive placement or custody, classification and/or the Central Review Board may classify the offender as deemed appropriate based upon the specific act or behavior itself.

D.   Adjudication - A major violation may be adjudicated with a behavioral citation in accordance with AR 414 provided the following conditions are met:

    1.   There is no injury to staff during the incident or as a result of the violation.

    2.   No consequences arise which result in the loss or destruction of property and security of the institution.

    3.   There is no serious injury to inmates as a result of the violation or incident.

    4.   The violator is not likely to receive disciplinary segregation.

    5.   With written justification any combination of the Citing Officer, Receiving Supervisor, or the Warden or his/her designee, determines that a behavioral citation is appropriate due to circumstances of the incident or violation.

E.   For mental health inmates deemed competent to participate in the disciplinary process, the disciplinary hearing officer will consider the mental health evaluation and any pertinent recommendations prior to determining the inmate's guilt or innocence in making a disposition of the case. The institutional psychologist will be contacted for clarification, if the hearing officer has questions about recommendations. If the inmate is found guilty, the hearing officer may impose punishment and/or refer the inmate for treatment.

F.   The disciplinary process will not proceed for an inmate deemed incompetent. The process will be suspended until the inmate has been restored to competency. The institutional psychologist will advise the disciplinary hearing officer when the inmate has been restored to competency, and the disciplinary hearing process can proceed. If the inmate has not been restored to competency within six months, information regarding the rule violation and the inmate's inability to proceed with the disciplinary hearing will be documented in an incident report. The incident report will be filed in the inmate's institutional file. The disciplinary report will be removed from the file and no further action will be taken.

G.   Referral for a mental health consultation to the disciplinary process may be made: 1) at the time of the rule violation, 2) when review of the disciplinary report identifies the inmate as having a serious mental illness, or 3) whenever an inmate not previously identified as having a serious mental illness demonstrates signs of compromised functioning during the hearing process.

**VII   SANCTIONS**

AR 403 January 30, 2003

A.  Annex A, Violations Table and Authorized Sanctions, contains a table listing by violation number and the violation type and sanctions. Annex B, Definitions and Examples of Rule Violations, contains definitions and examples of the violations listed in Annex A.

B.  Inmates removed from programs for conviction of a new crime will be permanently removed from eligibility for correctional incentive time by placement in Class IV CIT status permanently (See Administrative Regulation 427 and 432).

C.  Approved actions by the Warden or his/her designee is final and the sanctions will begin on the effective date shown on the charges.

VIII  **STANDARD OPERATING PROCEDURES**

Institutions may prepare a Standard Operating Procedure (SOP) to ensure compliance with provisions of this regulation.

IX  **APPEAL OF THE INMATE**

The inmate may not appeal the final action by the Warden or his/her designee.

X  **REFERENCE**

Administrative Regulation 414,  "Behavior Citation Procedures for Informal Disciplinary Actions"

XI  **SUPERSESSION**

This regulation supersedes Administrative Regulation 403, dated October 3, 1996.

Donal Campbell, Commissioner

**ANNEXES**

Annex A - Violations Table and Authorized Sanctions

Annex B - Definitions and Examples of Rule Violations

Annex C - ALDOC Disciplinary Report (ALDOC Form 225B)

Annex D - Notice of Postponement of Disciplinary Hearing (ALDOC Form 225D)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A**

**VIOLATION AGAINST PERSONS**

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 28 | HOMICIDE |
| 29 | ASSAULT ON PERSON(S) ASSOCIATED WITH THE ALDOC |
| 30 | ASSAULT ON PERSON(S) NOT ASSOCIATED WITH ALDOC |
| 31 | ASSAULT ON ANOTHER INMATE |
| 32 | SEIZING OR HOLDING HOSTAGES |
| 33 | UNLAWFULLY DETAINING ANY PERSONS |
| 34 | FIGHTING WITH A WEAPON |
| 35 | FIGHTING WITHOUT A WEAPON |
| 36 | SEXUAL ASSAULT (FORCIBLE) |
| 37 | SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING |
| 38 | INDECENT EXPOSURE/EXHIBITION |
| 39 | EXTORTION OR BLACKMAIL |
| 40 | ROBBERY |
| 41 | MAKING FALSE STATEMENT OR CHARGE TO A ALDOC EMPLOYEE WITH INTENT TO DECEIVE THE EMPLOYEE OR TO PREJUDICE ANOTHER PERSON |
| 42 | GATHERING AROUND AN EMPLOYEE IN A THREATENING OR INTIMIDATING MANNER |
| 44 | THREATS |

**SECURITY VIOLATION**

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 45 | ESCAPE BY FORCE |

Annex A to AR 403 (page 1 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

| | |
|---|---|
| 46 | ATTEMPT TO ESCAPE BY FORCE |
| 47 | ESCAPE WITHOUT FORCE |
| 48 | ATTEMPT TO ESCAPE WITHOUT FORCE |
| 49 | ABSENT WITHOUT LEAVE |
| 50 | BEING IN AN UNAUTHORIZED AREA |
| 51 | UNAUTHORIZED POSSESSION OF ESCAPE DEVICE |
| 52 | UNAUTHORIZED POSSESSION OF WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON |
| 53 | INCITING TO RIOT OR RIOTING |
| 54 | REFUSING TO WORK/FAILING TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK |
| 56 | FAILURE TO OBEY A DIRECT ORDER OF ALDOC OFFICIAL |
| 57 | INSUBORDINATION |
| 59 | DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS/HER DUTY |
| 60 | BRIBERY OR ATTEMPTED BRIBERY |
| 61 | DISRUPTING THE COUNT |
| 62 | INTENTIONALLY CREATING A SECURITY, SAFETY, OR HEALTH HAZARD |
| 63 | DISORDERLY CONDUCT |
| 64 | POSSESSION OF CONTRABAND. INCLUDES POSSESSION OF CURRENCY UNLESS APPROVED BY THE WARDEN |
| 65 | POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR |

Annex A to AR 403 (page 2 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

PARAPHERNALIA. ALSO, CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS, OR OTHER INTOXICANTS.

### PROPERTY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 68 | THEFT, DAMAGE, OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY |
| 69 | DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY |
| 70 | UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY |
| 71 | ARSON |
| 72 | FORGERY |
| 73 | COUNTERFEITING |

### POLICY VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 78 | FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE AND PASS |
| 86 | BEING FIRED FROM JOB |

### PERSONAL VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 90 | CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS |

### MISCELLANEOUS VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| 91 | CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |

Annex A to AR 403 (page 3 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**VIOLATIONS TABLE AND AUTHORIZED SANCTIONS**
**ANNEX A (Continued)**

| | |
|---|---|
| 92 | AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES |
| 93 | VIOLATION OF STATE OR FEDERAL LAW |
| 94 | SOLICITING SEXUAL ACT |
| PV | VIOLATION OF PAROLE (RECOMMENDED BY P&P) |

### WORK RELEASE AND SIR VIOLATIONS

| MAJOR RULE VIOLATION | VIOLATION TYPE |
|---|---|
| E8 | VIOLATION OF SIR CONTRACT |
| E9 | ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION |

NOTE:    Inmates are subject to all Rule Violations (28 thru E9). Rules E1 through E3 (see AR 414) and E8 and E9 (this regulation) are designed primarily to manage/govern behavior of inmates. In addition to punishments authorized for major violations outlined in this Annex, inmates who violate, and are convicted of, any of these rules (28 thru E9) may also be removed from the Work Release or SIR Program.

### AUTHORIZED SANCTIONS

1.    Loss of a portion or all good time the inmate has earned.

2.    Confinement to Segregation.

3.    Recommend custody review.

4.    Loss of any and all privileges up to 90 days.

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B**

**VIOLATION AGAINST PERSONS**

28  HOMICIDE - The death of a human being caused by another person's actions.

29  ASSAULT ON A PERSON (S) ASSOCIATED WITH THE ALDOC- Any willful attempt or threat to inflict injury upon an officer of ALDOC, employee, or other person associated with the ALDOC giving the victim reason to fear or expect immediate bodily harm.

30  ASSAULT ON A PERSON (S) NOT ASSOCIATED WITH ALDOC - See #29 above.

31  ASSAULT ON ANOTHER INMATE - See #28 or #29 above.

32  SEIZING OR HOLDING HOSTAGES IN ANY MANNER - Abducting any individual with the intent to hold him/her for ransom or reward, to use him/her as a shield, or to use him/her as an aid in the commission of a felony or escape.

33  UNLAWFULLY DETAINING ANY PERSON - Holding any person against his/her will, even though the intent to create a hostage situation was not present.

34  FIGHTING WITH A WEAPON - Two or more individuals engaging in a mutual combat with a weapon(s) or a device(s) used as a weapon(s) during which combat the principal aggressor cannot be determined.

35  FIGHTING WITHOUT A WEAPON - Similar to #34 above except that a weapon or device used as a weapon are not present.

36  SEXUAL ASSAULT (FORCIBLE) - See #29 above; assault with the intention to commit the crime of rape or other sexual offense.

37  SEXUAL OFFENSE (NON-FORCIBLE)/SOLICITING - Commission of any sexual act during which both participants act willingly. To include hugging, fondling, caressing, kissing, etc.

38  INDECENT EXPOSURE/EXHIBITIONISM - Exposure to sight of the private parts of the body in a lewd or indecent manner.

39  EXTORTION OR BLACKMAIL - Demanding or attempting to demand, or receiving money or anything of value in return for protection from others in order to avoid bodily harm, or under threat of any kind.

40  ROBBERY - The taking of property from another by the use of force, or the threat of the use of force with the intent to deprive that individual of the property.

41  MAKING FALSE STATEMENTS OR CHARGES –The speaking of slanderous, defamatory, or untrue words tending to prejudice another.

42  GATHERING IN A THREATENING OR INTIMIDATING MANNER - Self-explanatory.

Annex B to AR 403 (Page 1 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

44    THREATS - A communicated intent to do bodily harm to another individual or group by verbal or written expression.

**SECURITY VIOLATIONS**

45    ESCAPE BY FORCE - The departure out of the custody of the ALDOC or other legal agency by a lawfully detained inmate with the intent to avoid confinement by use of constraining power, compulsion, or force.

46    ATTEMPT TO ESCAPE BY FORCE - An endeavor to escape or conspire to escape by force (see #45 above) resulting in recapture prior to leaving state custody or other controlling agency.

47    ESCAPE WITHOUT FORCE - See #45 above, except hat there is no use of constraining power, compulsion, or force involved.

48    ATTEMPT TO ESCAPE (WITHOUT FORCE) - See #46 above, except that there is no use of constraining power, compulsion, or force involved.

49    ABSENT WITHOUT LEAVE - Not returning from leave or pass within two hours of the designated time.

50    BEING IN AN UNAUTHORIZED AREA - Also includes being ardent from assigned work area or place of employment and/or being absent from assigned quarters without permission.

51    UNAUTHORIZED POSSESSION OF ESCAPE DEVICE - Having in one's possession any device which could be used to attempt or effect an escape, such as, but not limited to, an instrument to pick a lock, a homemade key, a disguise, or a replica of a human being.

52    UNAUTHORIZED POSSESSION OF A WEAPON OR DEVICE THAT COULD BE USED AS A WEAPON - Any instrument which could be used in a violent manner, such as a device with a pointed and/or sharpened end, or a homemade club, or any item which appears to be a weapon.

53    INCITING TO RIOT OR RIOTING - To incite a riot is to solicit or urge other persons by speech or actions to engage in a conduct which would create a substantial risk to institutional security or public safety, whereas rioting is the action of five or more people engaging in such behavior.

54    REFUSING TO WORK/FAILURE TO CHECK OUT FOR WORK/ENCOURAGING OR CAUSING OTHERS TO STOP WORK - Self-explanatory.

56    FAILURE TO OBEY A DIRECT ORDER OF A ALDOC OFFICIAL - Not complying with an order issued by an ALDOC employee in the performance of duty.

57    INSUBORDINATION - Any act, gesture, remark or statement which obviously reflects disrespect to lawful authority.

Annex B to AR 403 (Page 2 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

59  DELAYING, HINDERING, OR INTERFERING WITH AN EMPLOYEE IN PERFORMANCE OF HIS DUTY - Self-explanatory.

60  BRIBERY OR ATTEMPTED BRIBERY - Offering or conferring upon a public servant anything of value with the intent to affect or influence official action, or receiving anything of value for such a purpose.

61  DISRUPTING THE COUNT - Any action intended to which otherwise effects a miscount of inmates within the institution.

62  INTENTIONALLY CREATING A SECURITY, SAFETY OR HEALTH HAZARD – Creating a situation which could cause serious impairment to the operation of        the institution, harm to individuals, or result in destruction of property.

63  DISORDERLY CONDUCT – Conduct or actions that would create risk, inconvenience, or alarm to normal institutional/facility security or routine operation.

64  POSSESSION OF CONTRABAND - The possession of any item not issued to the inmate by an ALDOC employee, sold in the Canteen Store or approved by the Warden, to include possession of U.S. currency in any amount, or items in excessive amounts.

65  POSSESSION OF UNAUTHORIZED OR UNPRESCRIBED DRUGS, INTOXICANTS, OR PARAPHERNALIA – To include anything used in the administration of drugs or for the manufacture of drugs: for example, a paper bag with traces of glue inside, or the ingredients to make home brew or an intoxicating substance, or storage by the inmate or possession by the inmate of any psychotropic medication unless a specific exception is made by the prescribing physician (the inmate must keep a copy of the physician's authorization with medication at all times).

**PROPERTY VIOLATIONS**

68  THEFT, DAMAGE OR DESTRUCTION OF ANOTHER'S PERSONAL PROPERTY – The taking of the property of another person without threat, force, or coercion, with the intent to permanently deprive the owner of the property.

69  DESTROYING, STEALING, DISPOSING, ALTERING, DAMAGING, OR SELLING STATE PROPERTY - Self-explanatory.

70  UNAUTHORIZED POSSESSION OF OTHER'S PROPERTY - Self-explanatory.

71  ARSON - The malicious burning, either by fire or explosion, of state property or items belonging to the inmate or another person.

72  FORGERY - The altering, possession, or transfer of a written instrument or document with the intent to defraud or deceive.

Annex B to AR 403 (Page 3 of 4)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DEFINITIONS AND EXAMPLES OF RULE VIOLATIONS**
**ANNEX B (Continued)**

73    COUNTERFEITING - To copy or imitate, without authority, in order to deceive or defraud by passing the copy as the original; for example, altering postage stamps, money orders or other documents.

## POLICY VIOLATIONS

78    FAILURE TO COMPLY WITH THE AGREEMENT AND CONDITIONS OF LEAVE OR PASS - To include travel arrangements of the leave or pass plan.

86    BEING FIRED FROM A JOB - Being released from employment, or assigned job, because of sloppy work, insolent language, or other culpable behavior on the part of the inmate.

## PERSONAL VIOLATIONS

90    CONSUMPTION OR USE OF, OR UNDER THE INFLUENCE OF ALCOHOL, NARCOTICS OR OTHER INTOXICANTS - The use of unauthorized narcotic substance or other intoxicant by sniffing, injection, or orally ingesting.

## MISCELLANEOUS VIOLATIONS

91    CONSPIRACY TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - A combination or confederacy between two or more inmates **or** one or more inmates and one or more free world persons for the purpose of violating same departmental or institutional rule, even though the act is not consummated or carried out.

92    AIDING AND ABETTING ANOTHER TO COMMIT A VIOLATION OF DEPARTMENTAL OR INSTITUTIONAL RULES - To help, assist or facilitate the violation of a departmental or institutional rule by encouragement of counsel as to its commission with words, acts, support, presence, or assistance rendered.

93    VIOLATION OF STATE OR FEDERAL STATUTE - Self-explanatory.

94    SOLICITING SEXUAL ACT - Self-explanatory.

PV    VIOLATION OF PAROLE - Violation to be determined by Pardons and Paroles Officer/Board.

## WORK RELEASE AND SIR VIOLATIONS

E8    VIOLATION OF SIR CONTRACT – Self-explanatory

E9    ABSCONDING FROM SUPERVISION, ABSENT WITHOUT PERMISSION – Self-explanatory

Annex B to AR 403 (Page 4 of 4)

AR 403 January 30, 2003

ALDOC Form 225B

## ALABAMA DEPARTMENT OF CORRECTIONS
## DISCIPLINARY REPORT

1.     Inmate: _____     Custody: _____     AIS _____

2.     Facility: _____

3.     The above inmate is being charged by _____ with a violation of Rule
       Number _____ specifically _____ from regulation #_____ which
       occurred on or about _____, 20 _____ at (time) _____(am/pm), Location:
       _____. A hearing on this charge will be held after 24 hours from
       service.

4.     Circumstances of the violation(s) are as follows: _____

       _____

       _____

       _____          _____
              Date                               Arresting Officer/Signature/Rank

5.     I hereby certify that I have personally served a copy of the foregoing upon the above named inmate and I
       informed inmate of his/her right to present a written or oral statement at the hearing and to present
       written questions for the witnesses on this the _____ day of _____ 20 _____ , at (time)_____
       (am/pm).

       _____          _____
       Serving Officer/Signature/Rank           Inmate's Signature/AIS Number

6.     Witnesses desired? NO_____          YES_____
                          Inmate's Signature              Inmate's Signature

7.     If yes, list
       _____

       _____

8.     Hearing Date_____ Time _____ Place _____

9.     Inmate must be present in Hearing Room. If he/she is not present explain in detail on a additional page and
       attach.

10.    A finding is made that inmate (is/is not) capable of representing him/herself.

       _____
       Signature/Hearing Officer
11.    Plea: _____ Not Guilty _____ Guilty

12.    The Arresting Officer, inmate, and all witnesses were sworn to tell the truth.

       _____
       Signature/Hearing Officer

                                                        Annex C to AR 403 (Page 1 of 5)

                                                        AR 403 January 30, 2003

Arresting Officers testimony (at the hearing): _____

_____

_____

_____

13.    Inmate's Testimony:_____

_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony:_____

_____

_____

Witness: _____    Substance of Testimony: _____

_____

_____

14.    The inmate was allowed to submit written questions to all witnesses. Copy of questions and answers are attached.

_____
Signature/Hearing Officer

15.    The following witnesses were not called - Reason not called

1. _____    _____

2. _____    _____

3. _____    _____

Annex C to AR 403 (Page 2 of 5)

AR 403 January 30, 2003

16.    After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific) the Hearing Officer finds that:

_____

_____

_____

_____

17.    Basis for Findings of Fact:

_____

_____

_____

_____

18.    Hearing Officer's Decision: _____ Guilty _____ Not Guilty

19.    Recommendation of Hearing Officer:

                        _____

_____

_____

_____

_____

_____     _____
    Signature/Hearing Officer                  Type Name and Title

20.    Warden's Action – Date

_____

    Approved

_____

    Disapproved

_____

    Other (Specify)

_____

_____

21.    Reason if more than 30 calendar days delay in
    action._____

_____

22.  I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named inmate on this _____ day of _____ 20___ , at time)_____(am/pm).

_____          _____
Signature/Serving Officer/Title                    Inmate's Signature/AIS Number

Annex C to AR 403 (Page 3 of 5)

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**DISCIPLINARY REPORT (OPTIONAL)**

Inmate Name/AIS Number _____     Incident Report No._____

Facility: _____

CONTINUED ARRESTING OFFICER'S (AO) STATEMENT AND/OR QUESTIONS BY HEARING
OFFICER (QBHO) TO ARRESTING OFFICER: _____

_____

_____

_____

_____

CONTINUED INMATE'S STATEMENT AND/OR QUESTIONS BY HEARING OFFICER (QBHO)
TO INMATE: _____

_____

_____

_____

_____

CONTINUED WITNESS TESTIMONY (QBHO): _____

_____

_____

_____

_____

CONTINUED FINDINGS OF FACT: _____

_____

_____

_____

_____

Annex C to AR 403 (Page 4 of 5)

AR 403 January 30, 2003

CONTINUED BASIS FOR FINDINGS OF FACT: _____

_____

_____

_____

_____

CONTINUED HEARING OFFICER'S RECOMMENDATIONS: _____

_____

_____

_____

_____

OTHER: _____

_____

_____

_____

_____

Annex C to AR 403 (Page 5 of 5)

ALDOC Form 225D

AR 403 January 30, 2003

**ALABAMA DEPARTMENT OF CORRECTIONS**
**NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING**

Inmate's Name: _____    AIS #: _____

Violation(s): _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has

been rescheduled for _____

Reason for rescheduling: _____

_____

_____          _____
Inmate's Signature                              Serving Officer's Signature

---

**ALABAMA DEPARTMENT OF CORRECTIONS**
**NOTICE OF POSTPONEMENT OF DISCIPLINARY HEARING**

Inmate's Name: _____    AIS: _____

Violation (s): _____

Notice is hereby given that your Disciplinary hearing which was scheduled on _____ has been

rescheduled for _____

Reason for rescheduling: _____

_____

_____          _____
Inmate's Signature                              Serving Officer's Signature

Annex D to AR 403

AR 403 January 30, 2003



**STATE OF ALABAMA**

**DEPARTMENT OF CORRECTIONS**

Post Office Box 301501
Montgomery, Alabama 36130-1501

**Bob Riley**
GOVERNOR

**Donal Campbell**
COMMISSIONER

July 25, 2003

TO:  WARDENS                                                      CHANGE #1
      HEADS OF STAFF AGENCIES                    ADMINISTRATIVE REGULATION 403
      DIVISION HEADS
      ADMINISTRATIVE REGULATION MONITORS

**DISCIPLINARY HEARING PROCEDURES FOR MAJOR RULE VIOLATIONS**

PURPOSE:   To include contract security employees who will be serving in the same capacities as ALDOC employees.

CHANGES TO BE MADE:

| Reference | Action Required |
|---|---|
| Section IA | Change the second sentence to read:<br>"The Commissioner, or designee(s), Wardens, ALDOC employees and contract employees whose duties involve the Hearing or processing of disciplinary proceedings are responsible for following the provisions of this regulation." |
| Section IIIA | Change the first sentence to read:<br>"The arrest or charge of an inmate for a rule violation may be made by any employee or contract employee of the ALDOC." |
| Section IIIB | Change the first sentence to read:<br>"Wardens will appoint an ALDOC employee, or contracted employee, to serve as Hearing Officer of any charge(s) brought against an inmate pursuant to AR 403." |

Section IVC

Change the fourth sentence to read:
"If the inmate is not capable of acting in his/her own defense, the appoint an on-duty ALDOC employee, or contracted employee, to assist the inmate."

File this numbered change at the back of the regulation after annotating both the index and the regulation to indicate the required changes have been completed. Advise all personnel in your organization of the change to this regulation.

Donal Campbell, Commissioner

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY,
STATE OF ALABAMA

Richard Wayne Wright, SR.,              )
                                        )
          Plaintiff,                    )
                                        )
                                        )     CIVIL ACTION NO.
VS.                                     )     2:06CV-863-WKW-CSC
                                        )
Richard Allen, et al.,                  )
                                        )
     Defendants

<u>AFFIDAVIT OF LINDA BROWN</u>

Before me, the undersigned authority, a Notary Public in and for said County and

State of Alabama at large personally appeared one Linda Brown, who being known to me

and being by me first duly sworn deposes and says on oath as follows:

My name is Linda Brown, and I am presently employed as Regional Clinical

Manager of the Office of Health Services for the Alabama Department of Corrections.

My responsibilities include overseeing the clinical services at the major facilities in the

state of Alabama.  My past work includes 12 years of Correctional experience and

administrative duties.  I am over 21 years of age.

 Upon review of the medical records of Richard Wright, the medical record reveals that

Mr. Wright was incarcerated at Ventress Corrections from March 4, 2004, until January

17, 2007.

Inmates that arrive to Ventress Corrections are given the orientation on how to properly

access health care. The sick call process, pill pass times, dental process, mental health

processes, and the grievance procedure, to mention a few, are discussed in this

orientation.



DEFENDANT'S
EXHIBIT
28

The is a process on sight for inmates to have their medical complaints and or medical problems addressed.

The physician progress notes and physician order sheet mentions the medications that were prescribed for Mr. Wright. In reviewing the records, it appears that he was not denied any medication ordered by his perscribers. There is no documentation from the prescribing practitioners that a medical treatment was ordered and was denied to Mr. Wright.

Regarding the screening and treatment of tuberculosis, the ADOC follows the guidelines from the Alabama Department of Public Health. The record indicates that Mr. Wight refused to have an annual tuberculosis skin test on April 2005. As a result the medical staff notified the security staff. Mr. Wright was placed in segregation as a safety precaution on April 28, 2005. On June 30, 2005, Mr. Wright agreed to take the tuberculosis skin test. After the test results returned negative for tuberculosis or exposure to tuberculosis, medical then notified the security staff of the negative results. Mr. Wright was released from segregation on June 30, 2005.

Mr. Wright again refused to take the tuberculosis skin test on March 24, 2006. The medical staff notified security. Mr. Wright was again placed in segregation as a safety precaution. On September 18, 2006, Mr. Wright has a negative chest-x-ray and was released from segregation. No tuberculosis medication was ordered by the medical providers.

To the best of my knowledge, I am not aware of any sort of experimental or research testing on the inmates incarcerated in the Alabama Department of Corrections.

There are no sick call requests found in the record requesting mental health services for

dementia.

I am not aware of any grievances that have been submitted or filed by Mr. Wright.

To the best of my knowledge, the aforementioned facts are true and correct.


*Linda S Brown*

LINDA S. BROWN


SWORN TO AND SUBSCRIBED BEFORE ME AND GIVEN UNDER MY HAND

AND OFFICIAL SEAL THIS THE 26th DAY OF January 2007.


NOTARY PUBLIC


My commission expires 6 Mar 08