Court Copy

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION.

RECEIVED

2007 MAR 29 A 9 40

Richard Wayne Wright Sr. Bey,
        Plaintiff, Pro-Se,
    A I S # 187140,
        -vs-
Richard Allen et. al.,
        Defendant.

P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

* Civil Action No:
* 2:06-CV-863-WKW
*
*

Plaintiff Wright Sr. Bey Answer To The
Defendant's Counselor(s) Special Reports and
Answer's To The Plaintiff's Complaint

    I). Comes Now Plaintiff, Pro-Se. Richard
Wayne Wright, Sr. Bey, A.I.S. # 187140
by and through the Easterling Correctional
Facility (E.C.F.) in the above-style
and action and Files this Answer
to the defendant's Special Report and
Answer' Pursuant to the February
20, 2007 Order Court Doc. No 49 at
3) and February 7th, 2007 orde
(Court Doc No. 51) Denying Plaintiff's
Motion For an extension Of time.
Plaintiff States as Follow:

    2). Defendant Abercrombie allegedly
States through and by her attorney

Page 1 of 40

Special report and answer, Page Ten (10) "Statements of Facts" three (3) and defendants Abercrombie affidavit Exhibit (Ex)) One (1) page (pg)) two (2) parag. One (1) ["that the only Contact that she had with plaintiff was through her duties as a Law Library officer and providing Notary Service and my Sole involvement with inmate Wright Is through my duties as Law Library officer and providing Notary Service For him and other Inmates In population as well as those assign to Segregation Cells"]. Plaintiff Wright Jr. Bey made known to this Honorable Court within his initial Complaint and Amended Complaint portion One (1) and Amended Complaint portion two (2). Obviously, defendant Abercrombie has failed to address plaintiff Complaint in its totality and only addressed the part of plaintiff Complaint she desires by mentioning only her dealings with plaintiff Concerning notarizing documents. Defendant Abercrombie Failed to mention and address plaintiff initial Complaint in regard too Consulting her about the admin-str

Court Copy

stration Regulation (here after re-
Fered to as (Admin. Regs)) governing
plaintiff and Same Situated in
mates with in the Alabama Depart-
ment of Correction (here after
refered to as (A.D.oC.)) there at
Ventress Correctional Facility
here after refered to as (Ven-
tress (V.C.F.)). Plaintiff Sought Such
Admin Regs. Governing Weather
Condition before and after being
assaulted by the 'named' Prison
officials because plaintiff and
Other Same Situated inmates at
Ventress (V.C.F.) Was Force to go
outside in extremely Cold Weather
and hot Weather Condition,

    3). Plaintiff noted in his initial
Complaint On June 9, 2006 plaintiff
Wright Sr. Bey Written officer
Abercrombie about admin. Regs [(See
Ex. Five (5) labeled law library re-
quest From Segregation/Segregated
inmate(s) and (See also Ex. Six (6)';
Seven (7)'; Eight (8)'; Nine (9)'; and
Ten (10)]. These Exhibits mention
above Were sent to this Honor-
able Court With plaintiff initial
Complaint. Plaintiff mention (also)
in his initial Complaint Which

Page 3 of 40

involved defendants Abercrombie
Sending plaintiff to the shift
office to talk with Sgt. Carter
because plaintiff objected to
her worker preventing plaintiff
From using the type writter to
type his legal documents on two
(2) of the three (3) occations.

4). Defendant Abercrombie is
well aware and knows plaintiff con-
sulted and talk with her supervisors
Sgt. S. Carter and Lt. J Dowling
about the 'Admin. Regs.' and index's,
law library supplies. Health Care
providers contracts, etc. So de-
Fendant Abercrombic has fail to
mention these issues (as stated
in plaintiff complaint) through
and by her attorney / Special
report and answer and/or defendants
Abercrombie affidavit.

5). Defendant L. Brown asserts in
her written affidavit (Ex. #28) that
the orientation was (and is informa-
tive (on) how inmates are to properly
access by health care. This Orienta-
tion and/or orientation sheet de-
Fendants L. Brown mentioned (as

Page 4 of 40

Court Copy

Shown) and said inmates are in-
structed by medical care providers
is not included in the medical
records submitted to plaintiff.
This said orientation did not
include or give instructions on
how plaintiff can or could receive
proper medical treatment after
making medical complaint/grievance
or to 'whom' medical problems
are to be addressed to for proper
response.

6). Defendant Warden J. C. Giles,
Warden D. Parker, Captain L. M. Monk
Lt. M. Taylor, Lt. J. Dowling, Lt. D.
Flowers, Sgt. J. Carter, Sgt. C.
Longmire, Ofc. V. Stringer, and
Ofc. T. Person, Nurse A Marsh (LPN)
Nurse C. Hunter (L.P.N.) Nurse N.
Burks (D.O.N.) and (H.S.A.) and Dr.
J. Rayapati stated by and through
their attorney(s) 'that' plaintiff
Was placed in segregation as a
safety precaution this statement
asserted by defendant(s) to this
Honorable Court are misleading
and such action were (done) to
plaintiff for the sole purpose of
causing plaintiff further harm, in-

timidation of showing plaintiff
how 'they' can exercise their
power without restraints or care
of plaintiff life and disregard
A.D.O.C. Admin. Regs., Department of
Justice Standards, Health Care
policies, etc. Plaintiff shall make
ever attempt to show this Honor
able Court how (2) defendants
subjected him to unhealthy and
inhumane condition and why (?)

(7). Plaintiff properly informed
the Health Care providers(medical
defendant(s)) and the screening
officer [Ofc. Brown] upon arriving
at Ventress (V.C.F.) on March 4th,
2005 of the reaction's his body
under goes after taking Tuber-
culosis skin test (here after refered
to as [T.B. skin test]), [See plain-
tiff medical records submitted by
defendant's counselor(s) labeled
P.H.S. 0001, P.H.S. 0001A', P.H.S. 0001B',
P.H.S. 0001C and plaintiff had approxi-
mately five (5) T.B. skin test (annual
T.B. skin test and four (4) quarantine
T.B. skin test at Bullock through
and by the [Bullock County health
Department]) at Bullock Correctional

Page 6 of 40

*Court Copy*

Facility here after refered to as (Bullock (B.C.F.))], in the year 2004 prior to being transfered to Ventress (V.C.F.).

8). Plaintiff medical Records / documents submitted by medical defendant's Counselor(s) does not Contain these needed documents to substantiate his Clams (quarantine results, etc.) Plaintiff medical re-Cords labeled P.H.S. 0001A, PHS 0001B and P.H.S. 0001C indicates plaintiff properly informed the screening officer of the prior T.B. skin Test solution (effects and reaction) his body had after taking the repeated T.B. skin Testing at Bullock (B.C.F.)

9). IF Defendants Tahir Siddig, M.D. ("Dr. Siddiq"); Samuel Rayapati M.D. ("Dr. Rayapati"); Nettie Burks R.N. Director of Nursing (D.O.N.), Health ~~Seve~~ service Adminstrator (H.S.A.); ("Nurse Burks"); Celeste Hunter, L.P.N. ("Nurse Hunter"); Anthonette Marsh, L.P.N ("Nurse Marsh") medical Defendants employed by "Prison Health Services", Inc. (P.H.S.) and/or Prison officials Mr. Jesse C.Giles (Warden III) ("Warden Giles");

Mr. Darrell Parker (Warden II) ("Warden Parker"); Mr. Marshall Larry Monk (COS II) (Captain) ("Capt. Monk"); Defendant Dorothy Flowers (Cos. I) (Liuetenant) ("Lt. Flowers"); Mary Taylor (COS.I) (Liuetenant) ("Lt. Taylor"); John Dowling (COS.I) (Liuetenant) ("Lt. J. Dowling"); Caroyln Longmire (CO.II) (Sergeant) ("Sgt. Longmire"); Sherwin Carter (CO.II) Sergeant ("Sgt. Carter"); Mr. Mark Bruton Classification Specialist Super-visor) and (Segregation / enemy Validate Committee member) ("Mr. Bruton") and Mr. Richard Allen (Prison Commissioner) (Mr. Allen") I would had used any amount of Reasonable assessment Concerning plaintiff's Complaints of the T.B. Skin test plaintiff would not have been Subjected to the following health hazard reactions From the T.B. Skin test at Ventress (V.C.F.).

(10). The Medical Staff Personel at Ventress (V.C.F.) does not wear Identification name tags and such has effected (in part) plaintiff ability to properly name the other medical defendants 'whom' heard plaintiff's Complaints prior to taking the T.B.

Page 8 of 40

Curtesy Copy

Skin test in June 2005 at Ventress
The other (unnamed) defendants whom
documented or should have docu-
mented plaintiff medical problems
are indicated by their signatures
which must (said person(s)) be pro-
perly identified by the (H.S.A.) Nurse
Burk' this identification would and
should include those 'who' took the
T.B. Skin test readings and witness
sores and spots plaintiff warned
them of prior to the T.B. Skin test
at Ventress (V.C.F.). Neither should
plaintiff been subjected to the two
(2) maliciously and capriciously
applied disciplinaries by Lt.J.Dowling
Lt. D. Flowers, officer Veronica
Stringer (Ofc. V. Stringer) Sgt. C.
Longmire, officer Terry Person ("Ofc.
Person") Falseley alleged plaintiff
Was Intentionally Creating a Security
Safety or Health hazard Institu-
tional Rule Violation(s) Sixty-two
(#62) on April 26, 2005 and March 24,
2006. Nor (should have) the named
prison officials discarded plaintiff's
complaints in order to wrongfully
and willingly apply the allege
Istitutional rule violations (#62)
mention above as showing on plaintiff

time sheet and inserted into his prison file in order to further injure and/or hinder plaintiff chance to sustain a good prison file and have a fair parole hearing at the said time (August 2009).

11) When plaintiff were placed in seg. (For the alleged institutional rule violation No. Sixty-two (#62)] plaintiff was intentionally placed around inmates whom' had tested postive for T.B. and (at that time) taking medication for T.B. (I.N.H). Other inmates whom had not taken T.B. skin test (whom) if plaintiff was a health hazard should not have been permited to come in contact with plaintiff when we were allowed 45 minutes to a hour for the (said) daily exercise time. These acts performed by defendant was done for the sole purpose of causing plaintiff harm by indangering plaintiff health) as well as, to intimidate him because he failed the past and present law suits.

12). Plaintiff was transfered to Ventress (V.C.F.) with inmate

Page 10 of 40

Marshal Jones From Bullock (B.C.F.)
Seg. Unit 'who' prison officials at
Bullock B.C.F. had to remove me out
of a double Seg. Cell due to inmate
Jones indirect threats inmate Jones
made to me Lt. Dowling Failed to
acknowledge and take the needed
precautionary measure to ensure
plaintiff Safety From Further physical
harm. After plaintiff remained in
population With inmate Jones be-
gan to show aggressive behavior
towards plaintiff through and by
indirectly threatening remarks Which
related back to the incident at
Bullock (B.C.F.) 'Within' ~~the incident~~ R.W.W.
~~at Bullock B.C.F~~ (R.W.W.) the Seg. Cell.
So again it Was reported to Lt. J.
Dowling this time personally by
plaintiff. Plaintiff Was escorted by
Said prison official to the admini-
strative building where defendant
J. Dowling await With defendant
Mark Bruton (in his office). There
Within Mr. M. Bruton office, defendant
J. Dowling and M. Bruton tried to Con-
Vince plaintiff 'that' there Were no
information Within plaintiff prison
File Concerning plaintiff being
Separated because of inmate Jones

Page 11 of 40

threats made to plaintiff by him.
Plaintiff reaffirmed the (Fears) of
being assault by another inmate. Mr.
M. Bruton became irritated because
plaintiff Would not take heed to
their Coercion and directly stated
he Would Contact the parole ~~board~~ R.W.W.
board to ensure they don't grant
me parole" because I Would not
sign a living agreement/peace treaty.

13). After plaintiff Was placed
in seq. at Ventress (V.C.F.) defendant
M. Bruton and sqt. Seals @defendant
Sherry Seals husband) decide on or
about March 1n, 2005 plaintiff
Wright Jr. Bey did not need to
remain in seq. or be placed in
protective Custody Status. Again
plaintiff reFuse to sign a living
agreement/peace treaty and Sub-
jected plaintiff tobe assaulted
by inmate Jones (regardless) of
plaintiff ~~to be assaulted by in-
mate~~ Concerns of being physically
harmed by inmate Jones, Plaintiff
tried to demostrate to the Honor
able Charles S. Coody Magistrate
Judge) the dangers he Was ex-
pose to repeatedly yet all,

Page 12 of 40

plaintiff efforts came to know avail. Plaintiff sought and seeks through and by Case <u>Richard Wayne Wright Jr. Vs. Sylvester Nettles et. al.</u> (No. 2:05-CV-439-A-WO) Some means of perservance of his life provided by (said) Court "but it comes to know help.

14). The Honorable Court (Judge Charles S. Coody) instructed plaintiff to filed a peparate § 1983 Complaint and discarded plaintiff's views of defendant acts of retaliation and for such cause plaintiff was coerce by said Court to filed case <u>Richard Wayne Wright Jr. Bey Vs. Richard Allen et. al.</u> (Civil Action NO 2:06 CV-863-WKW).

15). ON April 26, 2005 the medical defendants and prison official named here after alleged they had no knowledge of plaintiff Wright complaint of the allergic reaction his body under goes after taking the T.B. Skin test in the past. Nurse Burks (D.O.N.) (H.S.A.), Nurse Hunter (L.P.N.) Nurse Marsh ~~on Ap~~ (R.N.), Dr. S. Rayapati (M.D.) all alleged at that time the

Sores and spots on my body were
not from the T.B. Skin test.
Regardless of my verbally express
facts, that each time I had taken
the T.B. Skin test shot (in the
past two (2) years) my body
undergoes Sores and light spots
on my Skin. I showed "Nurse
Hunter and Nurse Marsh on April
26, 2005 the light spots and
where the Sores had healed from
the past testing (T.B.) Nurse
Hunter would not take regard
to plaintiff grievance and in
form Ms. Stringer (ofc.)(C.O.I) of
my reason for rejecting the T.B.
Skin test. I again explain to
ofc. Stringer and mention alterna-
tive testing of T.B. (x-rays, etc.)
to prevent another out break
which Nurse Marsh failed, to
document plaintiff medical com-
plaint at that time Mrs I.
Alexander (C.O.I) (ofc.) also tried
to incourage plaintiff to take
the T.B. test plaintiff again
attempted to (ofc. I Alexander)
explain the reason for his objecting
to another T.B. Skin test at
such Close intervals. Plaintiff

Court Copy

Showed ofc. Alexander the spots
and places where the sores had
appeared from the repeatious T.B.
Skin test at Bullock (B.C.F.). ofc.
Stringer express impatiency, in-
structed plaintiff to sit down in
the infirmary lobby until Lt.
Dowling arrives. once Lt. Dowling
arrived he escorted plaintiff to
a small area of the infirmary
(dish room hallway) and insisted
that I take the T.B. Skin test
and refuse plaintiff suggestion
(to confront and or question
Nurse Hunter about alternative
testing of T.B.). Lt. Dowling placed
plaintiff in seg. pending a dis-
ciplinary infraction.

16). Nurse Hunter, Nurse Burks
Nurse Marsh all alleged it was
time for plaintiff annual shot
but that is not true such occation
was taken due to defendant
Dowling malicious motives and
abuse of power. The medical De-
fendants supported defendant Lt.
Dowling action by failing to pro-
perly inform Lt. Dowling of plain-
tiff past reaction after taking

Page 15 of 40

Aplisol (T.B. Skin test solution) and plaintiff next annual T.B. Skin test Would not be due until July 2005 at the earliest. This left plaintiff Barring the burden of defendant Lt. Dowling arbitary and malicious application of the disciplinary infraction. When in Fact 'all' the medical defendants needed to do was inform Lt. Dowling plaintiff T.B. test was Current according to the Bullock County Health Department (quarantine, etc. which Was performed at Bullock (B.C.F.).

17) Plaintiff Was Visited by defendant d.C. Giles in the Segregation ~~building~~ holding cell and started " You don't need to be in Seg.'for this' Would you talk to Mrs. Burks (D.O.N.) (H.S.A.) and tell her what you are telling me, So I Can let you out!" I then Was escorted to Nurse Burks Office. I explain as plainly as possible of the Currency of the lattiest T.B. test at Bullock (B.C.F.) and reporting the symptoms I faced For the repeated testing

of T.B. at Bullock (B.C.F.) through and by quarantine, etc. Defendant Burks led plaintiff to believe she would check plaintiff medical files and inform warden J.C. Giles. Plaintiff later realize Defendants. J.C. Giles and Nurse Burks were intentionally misleading plaintiff and only talk with plaintiff to gather information from plaintiff (point of facts) so, that they could orchestrate the disciplinary in-fraction to appear legitimate. As soon as plaintiff arrived in the lobby of nine (9) Dorm after talking with nurse Burks as Warden Giles suggested Sgt. C. Longmire (Co.II) were waiting to hold the disciplinary hearing on May 5, 2005 subsequently plain-tiff was found guilty of the said Institutional Rule Violation No. sixty-two (# 62) by defen-dant C. Longmire (hearing officer) and Warden J.C. Giles approved the said disciplinary. Defendant does not afford inmates opper-tunity to appeal their decision con-cerning disciplinary(s) according

Page 17 of 40

to Adm. Regs #403 [See Defendants D.O.C. Officials (Ex #27) page 9 of 24, Section IX APPEAL OF THE INMATE. It States: The inmate may not appeal the Final action by the Warden or D.R.W.D. his/her designee".] Defendant Fail to give plaintiff a full and Complete Copies of the disciplinary's infractions (in question) after it has been finalized with the answer to the questions plaintiff ask Lt. Dowling plaintiff written and oral statements, etc.

18), On November 21, 2005 plaintiff were escorted to the Visitation yard (by dorm) to a table/ station where OFC. Lizzie McLeod (C.O.I) (BIF) and OFC. Scrooge (C.O.I) (BIF) were screening inmates for Hepatitis `B'. Plaintiff was informed by OFC. L. McLeod that he needed a Vaccine shot for Hepatitis `B'. Plaintiff R.W.W. questioned OFC. L. McLeod about the Vaccine She inturn Called Lt. J Dowling whom moments later were accompanied by Sgt. J (Carter) Lt. J. Dowling spoke to plaintiff

Page 18 of 40

Court Copy

aggressively (insisting plaintiff take the Vaccine). Plaintiff then reminded them [that] he has the right to reject the Vaccine because he does not belive he needs it. Plaintiff was instructed to stand by the drink machine. Shortly, after plaintiff was accompanied by other inmates (approximately four (4) to five (5)). Office Robbin took us to the chapel part of the Visitation building and showed us an educational video about Hepatitis A, B, and C. After Viewing the video ofc. Robbin Sent us back to the table where ofc. L. McLeod, ofc. Scrooge and nurse M. Benefield (believed to be) instructed me to sign a form. Plaintiff ask nurse M. Benefield how could he be tested. ofc. L. McLeod again put emphasis on me signing the form. Once I began reading the form, I discovered the form inidicate the A.D.O.C. would not be responsible for any reaction incountered after taking the Vaccine. When plain-tiff question the form (as to)

Page 19 of 40

What type of Sumptons he
Should expect ofc. L. McLeod
told me "Just sign the paper!"
Plaintiff then ask B. Menefield(?)
how Could I be tested, she in-
structed me to wait (there) and
walk towards the stations where
the Vaccine was being administered
again plaintiff was approached by
Lt. J. Dowling ask ofc. L. McLeod
"What was the problem now?" She
replied "he ~~would~~ (R.W.W.) won't
Signed the paper!" plaintiff informed
them he would like to be tested
'First' as the video suggest before
receiving any Vaccine Lt. J. Dowling
adverted plaintiff was tring
to be difficult Sgt S. Carter in-
terjected his thoughts instructing
plaintiff to stand on the wall
and don't move until he returns
Luckly. plaintiff was accompanied
by Four (4) of the other inmates
and sent by (Lt. J. Dowling) to the
Kitchen to eat and report back
to this building and sit over
there (pointing to a bench located
in the building). When plaintiff
return Lt. J. Dowling became more
Verbally aggressive insisting I

(Page 20 of 40

Sign a Waver. (Nurse A. Marsh had taken Nurse M. Benefeild place at the table). I told Lt. Dowling I'm not Waiving treatment I just would like to be tested. First Lt. a. Dowling then instruted Ofc. L. McLeod to sign the Waiver and let Nurse A. Marsh sign it. At that time Lt. Dowling order plaintiff to get out the building.

19). On November 23, 2005 plaintiff Was assaulted by Sgt. J. Carter and Ofc. Roosevelt Brown (C.O.I)(Blw) in ten (10) dorm lobby. Officer R. Brown acted Unprofessionally by banging upon the rails (of plaintiff and other Same Situated inmates) assign bunks with his stick ofc. R. Brown Was ordering (in such manner) all inmates to get up and get dress (So that) When he announce yard Call We Would have to go stand Outside in the Cold. Plaintiff affidavit States how the incident Came about (See plaintiff affidavit Ex. One (1)).

20). Defendant J. Carter, C. Long-

mire, R. Brown and Levy Richardson
(here after refered to as (defendant
L. Richardson)) Collectively design
Statements / Affidavit to
deceive this Honorable Court, may
plaintiff explain. Defendant R. Brown
Says: "I (Co.I) Roosevelt Brown
assisted officer Levy Richardson
in placing Inmate Richard Wright
on the floor as to place hand
cuffs on him. (See Ex #3, pg #1,
lines 10 and 11.) Ofc. L. Richardson
states "... officer Richardson and
Sgt. Carter placed restraints on
inmate Wright (see Ex.(19.), Pg. #
2, line 5). Defendants have not
stated Correctly that they
hit plaintiff (S. Carter and R. Brown)
indicating what force they
used. Plaintiff did suffer physical
injuries and was taken to the
Bullock County Hospital by
ambulance. Plaintiff medical
records along with the three
(3) disciplinaries they wrong
fully applied upon plaintiff
will reveal and substantiate
plaintiff Complaint and affidavit.
Defendant C. Longmire joins her
Co-Workers by Formulating her

Page 22 of 40

Statement saying: Officer L. Richardson assisted Sgt. Carter in an attempt to restrain inmate Wright". (See Ex.(11), pg. #2, lines 17 and 18). Then defendants S. Carter Says: "I grasped Inmate Wright by his coat and belt Inmate Wright began to struggle Inmate Wright and myself Went to the Floor." Inmate Wright continued to resist Officer Richardson assisted me in an attempt to restrain Inmate Wright."(See Ex.(12), pg. #2, lines 16, 17, and 19).

21) Defendant S. Carter Said defendant L. Richardson assisted him, but R. Brown Verision Says defendant L. Richardson assisted him (in placing restraints). The Defendant C. Longmire goes on too say Sgt. S. Carter Caught inmate Wright by his coat and belt. Inmate Wright began to Struggle With Sgt. Carter Went to the Floor. Inmate Wright continued to resist. Officer Richardson assisted Sgt. Carter in an attempt to restrain Inmate Wright As they Were

Page 23 of 40

tring to restrain Inmate Wright, Officer Brown and I were trying to secure the lobby"... (see Ex.(M) pg. #2, lines (14) thur (19)). Defendant misleads this Honorable Court (or attempts too) by stating her and officer R. Brown were tring to secure the lobby". As Defendant Brown alleges he was restraining plaintiff, as if, he was at two different places at the same time. IF defendant are order to produce the disciplinaries in their totality, Plaintiff will be able to Further show defendants malicious acts done solely to cause plaintiff harm and scare him into submission by and through intimidation.

22), Several injuries plaintiff suffered to his body which will reflect the amount of unneeded Force they impliment upon plaintiff. Plaintiff needs the Full and Complete disciplinaries (incident reports, ofc statement Plaintiff statements etc.) and the reports From the doctor/ hospital (Bullock

Page 24 of 40

County) and paramedic reports).

23). Defendants tells this Honorable Court a Formulated Version/Story which also Conflicts (in testimony) with the statements made at the disciplinary hearing. ~~defendant~~ Defendants Failed to Submit the Five (5) disciplinary Lt. J. Dowling Wrongfully applied or (had) applied on plaintiff at the hearing and/or prior to the hearings and obtain the assistance of those whom he supervised (see plaintiff Ex.(2) Alabama Department of Correction Inmates Summary as of 03/29/2006 two (2) pages.

24). Inmate Alton Carter B/M #194650 was beaten by Sgt. J. Carter. ofc. R. Brown and ofc. D. Pullom For banging and/or yelling outside the lobby 'back' door of Ten (10) dorm lobby The Cubical ofc. (ofc Williams) unlocked It electronically So that the above named ofc's Could go out and grab inmate Carter. (See plaintiff Affidavit Ex.(1)).

Page 25 of 40

25). Defendant's R. Brown States [Inmate Alton Carter Blm # 194650 had exited but turned around and started coming back to the lobby stating;" You officers didn't have to do that to that inmate we inmates need to stick together". I order Inmate Alton Carter to get back. In- mate Carter refused and had to be restrained by officer David Pullom and myself". ] Defendant C. Longmire states [" officer Roosevelt Brown tried to stop inmate Carter ~~is~~ but inmate Carter re- sisted. Sgt. Carter assisted officer Brown in restraining In- mate Carter". ] (See Ex(10), pg. #3, lines 1 thur 3). Now Defendant David Pullom states I was in- volved with inmate Carter who came back into the dorm area and refused to leave."

26). Defendants R. Brown asserts Ofc. D. Pullom assisted him in restraining inmate Carter Defendant J. Carter did not mention having any dealing with Inmate Carter Defendant C. Longmire states posi

Court Copy

tively Sgt. Carter assisted officer Brown in restraining inmate Carter and not ofc. Pullom, but Defendant R. Brown mention ofc. Pullom and not Sgt. Carter as assisting him.

27), Defendant L. Richardson Claims I assaulted him see Ex. (19), pg. #2., line (5) and (6)). Defendant L. Richardson statement was different and done to heighten the story at the disciplinary hearing held by defendant L. Richardson statements were fabricated to Cause Persuasiveness and to show justification for the amount of force they used unneedfully.

(28). Defendant R. Brown allege I was inciting a riot or rioting on November 23, 2005 and stated You Inmate Richard Wright B(187140 Could have Cause a riot by stating; "We inmates need to stick together. I am not going outside its too Cold." Defendant J. Dowling believed and Supported defendant R. Brown Statement alone and made plaintiff guilty of said

rule violation.

29). Defendant L. Richardson assert 'as true' " I instructed inmate Wright to clear the lobby Inmate Wright failed to comply. See Ex. (19), pg #2, line (4)). Defendant R. Brown wrote plaintiff a disciplinary infraction alleging that he were the one that gave plaintiff a dirrect order to leave the lobby. These disciplinaries were designed in bad faith and to cause plaintiff harm. When in fact plaintiff ask defendant R. Brown to restrained him and he would like to see the shift commander but he refused.

## Conclusion

Plaintiff has shown the deliberate indifferences exhibited by and through the medical defendants which worked hand and hand with prison official at Bullock (B.C.F.) and Ventress (V.C.F.). Plaintiff knows and must take great

precaution While in the prison official care as the fullness of his complaint(s) begins to un fold Defendant's (prison officials) and/or their agents/co-workers are likely to execute another one of their formulated plans as they have done in the past. Case <u>Richard Wayne Wright Jr.-Vs-James Deloach et. al. (Civil Action No. 99-D-1405-N)</u> Which was dismissed as the result of plaintiff being seduced involuntarily with excessive and illegal amounts of psychotrophic drugs to distort his thought process at the time of the evidentiary hearing October 16 2001 Therefore the Prison officials retaliation act's Continue.

   Plaintiff wrote affidavit(s) to Mr. Richard Allen prison Commissioner Concerning the dangers placed upon him by defendants at Ventress namely Warden J. C. Giles, Warden D. Parker, Captain L Monk, Lt. M. Taylor Lt. J. Holland, Mr. M. Bruton, Ms. R Pittman Sgt. C Longmire, Sgt. J. Carter, ofc. R. Brown, ofc L. Richardson & ofc A.

Page 29 of 40

Patterson (See Exh. No. (3))

Defendants Mr. R Allen, Warden J.C. Giles, Warden D. Parker and Captain L. Monk allowed Plaintiff to remain in Seg. Cells (Wrongfully) through and by assault executed by their agents. Discounted the explaination for plaintiff rejection of taking T.B. Solution at such close intervals as well as the reaction from Alifisol--T.B. Solution and the disciplinaries wrongfully applied while at Ventress (V.C.F.). Plaintiff lost a large amount of weight because the Supervisors named above allowed the defendant whom assault him to handle his food (intimidation). They allowed plaintiff to lay on the floor in the Seg. Cell after the assault on November 23, 2005 for appoximately or about thirteen (13) days. A full and complete copy of plaintiff medical file from the time he arrived at Ventress which also disclose these facts.

The Supervisors governing

Page 30 of 40

*Court Copy*

Ventress (V.C.F.) allows (CO.I's) Ofc. L. McLeod, Ofc. Scrooge and Ofc. Robbin to advise, explain or give educational material to inmates on November 21, 2005 (See Defendants Ex. PHS 0001-D)

A Drug Techician and/or in-Formation provide (by one) should have been made available to plaintiff and other similar situated inmates.

Lt. S. Holland should not have forbided medical defendants to provide plaintiff with a wheel chair each time plaintiff was ask would he like to shower and if he would not get up, walk to and stand in the shower he was denied shower. Even after plaintiff body oder became intolable defendants J. Holland on one occation made plaintiff crawl to the shower area (if he wanted to shower) When Sgt. C. Cargle recommend and suggested to get the wheel chair Lt. S. Holland reject such suggestion. Plaintiff did crawl to and from the shower.

Page 31 of 40

Plaintiff Complaints (Sick Call Slips) which were Submitted to the medical defendants made no Significant value. They did Charge plaintiff a Co-payment Fee of three (# 3.) dollars each time he Sign a Sick Call slip attempting to get treated For back pains, head aches, popping in joints, etc. Due to those injuries obtain in prison and/or Caused by D.O.C. officials these named medical defendants did minimized and discount plaintiff injuries and health problems through and by their Control of plaintiff diagnosis. Plaintiff was repeatedly diagnosed with rhinitis / Sinusitis to alter their failure to treat plaintiff back pains, etc. As Nurse N. Burks put it each time plaintiff fells out Sick Call Slips For the Same thing 'she' is going to Charge me three (#3.) dollars only Suffered Such dryness in his nasal pas-sage due to dryness in the Seg. Cells at Ventress (V.C.F.) which allow Ventilation to pass through the cracks of the doors of the Cells design For Seg and Such limited

Page 32 of 40

*Court Copy*

Ventilation Cause plaintiff dryiness and the need for nasal spray

Defendant N. Burks must have been the medical staff 'whom' evalvated plaintiff records and prescribed 600 milligrams of Humabid. The amount of Co-payment taken from plaintiff prison account must be given to plaintiff for follow up treatment.

As Concerning the process of Pharmaceutical testing at Ventress on inmates. Plaintiff must used Care in revealing the fulliness of experimental testing purpose because it involves reaction from the Combinational effects of Hepa-titis 'B' Vaccine and Alepsol. The Prison Ventress (V.C.F.) had an out break in what was Called Chicken pox' after taking the Hepatitis 'B' Vaccine and it required quarantining part of the prison population.

Plaintiff medical file does not show plaintiff receiving X-rays for all these stated Cervical Spine, lumbar Spine, right and left fore-

Page 33 of 40

arm, chest and facial series were x-rayed as they allege on page No. thirty-two (#32) of defendant report.

Medical Defendants and mental health personel hired by A.D.O.C. asserted Plaintiff had symptoms of unexplained and similar to those of dementia although all symptoms were not manifested or evident in 2002 as alleged. (See Ev. No. Five (#5))

Mr. Bob Riley (Governor) must Correct ~~apon~~ upon an order of in-junction placed upon him by this Honorable Court the prison officials acts exhibited as stated upon and by plaintiff Wright Sr. Bey From happening again to himself and/or other same similar situated inmates. ~~See Ev~~ R.W.W.

Medical defendant Ms. Burks Did order those she supervised to discount plaintiff complaint con-cerning T.B. Skin test solution. It is clear and understandable that the medical defendants are to support the interest of their em-

Page 34 of 40

ployer (P.H.S. Inc.) For their Con-
tinual employment after they en-
gage in acts against P.H.S. Con-
tracts. Plaintiff inform the prison
officials and medical defendants
here at Ventress (V.C.F.) upon his
arrival and the duration of his
stay march 4, 2005 thur January
17, 2007, After the prison official
at Ventress maliciously applied
the disciplinaries concerning and
alleging plaintiff intentionally
created a safety, his Security, and
health hazard Rule Violation No
Sixty - two (# 62) Nurse Burks
inform Certain nurses which
Screen plaintiff to stop documenting
Alipsol, (T.B. skin test P.P.D.) as
his allergies on the sick called
slip (see Defendants Exhibits, PHS
0001C, PHS 0158, PHS 0162, PHS, 0164
PHS 0165, PHS 0166 and PHS 0167-
0168 Just to mention a few) (see
also Ev.(5))

        Defendant N. Burks was
blunt by stating he would not
have an alternative test For T.B.
(see defendants Ev. PHS 0294). Nurse
Starks refuse to give me some

thing For pain and treat plaintiff on
this occation. (see Ex. PHS 0295).
Defendant Burks took the medica-
tion back on a nurse protolcol.
Shortly after that plaintiff
attempt to used the prescription
on 3rd Shift treatment Call
Nurse Young informed Nurse C.
Hunter ~~refuse to get plaintiff~~ R.W.W.
that Nurse N. Burks had prior
to given plaintiff medication.
Canceled prescription. So Nurse
C Hunter refuse to give plain
tiff the medication For back
pain ~~of his~~ or his Copy as well
this took placed on or about
February 20th 2006 at treat-
ment Call.

Defendant N. Burks and
Several of her Co-workers allege
plaintiff Sypmtoms Could not
been Cause by Alipsol T.B. SKin
Solution. Plaintiff had read in
the Alipsol insert that the sores
and spots and rashes may appear
as an reaction, unfortunately he
needs defendants to submit the
insert to this Court and plain-
tiff For future referances. Plain-

Page 36 of 40

Court Copy

tiff wrote defendant Burks and prison officials Supervisor requesting information pre pared by a drug technician who Knows and informs patients of reaction of drugs used in Combination through and by Federal Drug Association (F.D.A.)

Defendants did not give any reply Concerning what and/or how the Called was made in Valuing plaintiff, namely Sgt. M. smith, Warden J.C. Giles and ofc. ~~Ric~~ G. Richardson Findings Concerning plaintiff religious practices and problem with Chaplian D. Rieben. Plaintiff Sent many Exhibits with his initial Complaint but now Notice's defendants did not Comment on those.

Lt. M. Taylor, oFc. I Alexandra Warden Parker Failed to men- tion the threat Mr. M. Bruton made to plaintiff in seg. upon their Committee Visitation on or about August 16, 2006 Wed- nesday Stating I'm going to

make Sure he dont get out be
Fore I retirer."

Plaintiff Faced Such Cruel and
Unusual treatment as stated in
his Complaint which was performed
by defendant maliciously and in
bad Faith and as their Course
of design as retaliation.

Done this the 26th day of
March, 2007.

Respectfully Submitted,

Richard W. Wright Sr. Bey
Richard Wayne Wright Sr. Bey #187140
Fe Easterling Correctional Facility
Dorm C-2 Bed #13-B
200 Wallace Drive
Clio, Alabama 36017


Certificate of Service

This is to Certify that I
Richard Wayne Wright Sr. Bey,
Plaintiff, Pro-se. Comes in the
above encaptioned 'Motion' For
Production of Documents" and

Page 38 of 40

Court Copy

Certify I have Sent a Copy of this Said Motion of the Clerk of the Court and a additional Copy of this (Said) Motion be Forwarded to the medical de-Fendants Counselor:

William R. Lunsford
Balch & Bingham LLP
Post office Box 18668
Huntsville, Ala. 35804- 8668

Plaintiff Further ask that this Honorable Court to Forward a additional Copy of this Motion To the Prison Defendants Counselor, due to his minimum access to paper and postage and his mini-mum access to paper and pos-tage and his indigent Status which is as Follow:

Tara Knee
Department of Correction
P. O. Box 301501
301 Ripley Street
Montgomery Ala. 36130

I Plaintiff Richard Wayne Wright Sr. Bey Further Certify

Page 39 of 40

that I have placed said copies of this (said) Motion In the United States mail box here at Easterling (E.C.F.) with Parcel prepaid postage and the additional postage be provided by the designated Prison officials and properly address to this respected Court on this the 25th day of March, 2007.

Respectfully Submitted,

Richard W. Wright Jr. Bey
Richard Wayne Wright, Jr. Bey #187140
Easterling Correctional Facility
Dorm C-2 Bed 13B
200 Wallace Drive
Clio, Alabama 36017

Richard W. Wrightsr. Bey #181148

Easterling Correctional Facility

Dorm C-2 Bed 13-B

200 Wallace Drive

Clio, Ala. 36017

Legal Mail



Legal Mail

Postage Needed.

Office Of The Clerk

United States District Court

P.O.Box 711

Montgomery, Alabama 36101-0711

Court's Copy

STATE OF ALABAMA)
COUNTY OF BARBOUR)

<u>AFFidavit</u>

Before Me, the undersigned authority A Notary Public in and For said County and state of Alabama at Large personally appeared Richard Wayne Wright Sr. Bey who being Know to me and being by me First Confirms desposes and says under oath as Follows:

My name is Richard Wayne Wright, Sr. Bey A.I.S #187140 I am presently incarcerated in the Alabama Department of Correction (A.D.O.C.) at Ventrees Correctional Facility (V.C.F.) Post Office Box 767, Clayton Alabama 36016. I am over the age of twenty-Five (25) years of ages.

I Richard Wayne Wright, Sr. Bey has indicated below several letters that he mailed with proper postage! yet it did not reach it's destination. These prison official here at Ventress Correctional Facility (V.C.F) has designed a policy which permits inmates to transport/handle Segregation inmates and inmates populations (out going) Stamp mail. The prison officials(s)

Page 1 of 5

Exhibit 3

whom/who are responsible to ensure such stamp, address mail leaves this institution (V.C.F.) properly are allowing certain inmate to bare this responsibility. Plaintiff Wright Bey has sent several letters to the Alabama Department of Correction (A.D.O.C.), Internal and Investigation (I & I) division, due to the seriousness of the issues mention by (me) within these documents. I find it hard to believe this department (I & I) division receive these important papers and just decided not to respond to (said) complaints. Plaintiff Wright Bey has also sent important document to the Prison Commissioner (Donal Campbell and Richard Allen) and receive (as well) no response. Its certain at this time, who (the inmate's being permitted to handle the postal mail or the prison officials) are preventing this mail from reaching its destination. For one, when inmate Wright Bey family members contacted the legal assistant firm (designed in part) to assist certain inmate(s) claims/cases the (said) firm indicated they had not

Page 2 of 5

Court's Copy

<u>AFFidavit</u>

received any mail from me concern
the issue discussed in the sent mail
It was properly address and on one
occation the postage was requested
to be paid/supplied (per inmate legal
mail service) at this institution (V,C,F)
and on the other occation plaintiff
provided the postage stamp but con-
cerning the intended mailed letter/
documents plaintiff Wright Bey re-
ceived (as noted above) no responses.

　　　This problem with plaintiff
Wright Bey mail being tampered
with, did not begin here at this in-
stitution V.C.F, but are some of
the same similar effects which
Followed me here from Bullock
Correctional Facility (B.C.F.) due
to Filing Complaints with the
State Court's and Federal Court's
I did not have to deal with inmate's
being permitted and prescribed
to handle other inmates mail at
(B.C.F.). Neither did I have this pro-
blem inmate's being granted the
priviledge to take the stamps off
other inmate(s) mail(if they would
like to) as well as open the mail
to check the contents, nor were

Page 3 oF 5

Exhibit 3

inmate's at Bullock (B.C.F.) permitted to handle, Segregation inmates mail this policy designed here at Ventress (V.C.F.) should be Corrected Plaintiff Wright Bey has address the issue to the Federal United States chief Magistrate Judge) Honorable Charles S. Coody in part Concerning in coming (legal mail) that had been open on two (2) occasions, one (1) occation said to be a mistake, the other occation (which I was housed in the infirmary), in which, unknown 'who' open it before the officer delivered it and was any of the content taken out prior to the officer delivery. I seek your assistance to stop and/or prevent these acts and practices I have described herein. IF for any reason. I should have refered this Complaint/Affidavit to another other than the past master general 'First' (1st), I earnestly ask that I be informed in writing (or any other effective means you deem fit) of the proper person (name, title and address) or if a different government agency. Also if this is not sent to the proper person and/or place would you forward this

Page 4 of 5

<u>Affidavit</u>

document to that person(s) and/or place and inform me (For Future ~~response~~ R.W.W responses) of such. I await your response and I thank you in advance for your time addressing this important matter/issues. End of statement.

I declare under penalty of perjury that the foregoing is true and correct.

Done this the 21st day of June, 2006.

Respectfully Submitted,
<u>Richd W. Wright Sr. Bey</u>
Richard Wayne Wright, Sr. Bey #187140
Ventress Correctional Facility
Post Office Box 767
Clayton, Alabama 36016

<u>Notary Statement</u>

Subscibed And Confirms To Before Me This ___ 27th day of ___ June ___, ~~June~~ R.W.W. 2006.

<u>Richd W Wright Sr. Bey</u>          <u>Carolyn R. Abercrombie</u>
Affiant                              Notary Public

My Commission Expires August 18, 2007
My Commission Expire Dated
Page 5 of 5

Exhibit 3

# HEPATITIS B VACCINE

## WHAT YOU NEED TO KNOW

## 1 Why get vaccinated?

**Hepatitis B is a serious disease.**
The hepatitis B virus (HBV) can cause short-term (acute) illness that leads to:
- loss of appetite
- tiredness
- pain in muscles, joints, and stomach
- diarrhea and vomiting
- jaundice (yellow skin or eyes)

It can also cause long-term (chronic) illness that leads to:
- liver damage (cirrhosis)
- liver cancer
- death

About 1.25 million people in the U.S. have chronic HBV infection.

Each year it is estimated that:
- 80,000 people, mostly young adults, get infected with HBV
- More than 11,000 people have to stay in the hospital because of hepatitis B
- 4,000 to 5,000 people die from chronic hepatitis B

**Hepatitis B vaccine can prevent hepatitis B.** It is the first anti-cancer vaccine because it can prevent a form of liver cancer.

## 2 How is hepatitis B virus spread?

Hepatitis B virus is spread through contact with the blood and body fluids of an infected person. A person can get infected in several ways, such as:
- by having unprotected sex with an infected person
- by sharing needles when injecting illegal drugs
- by being stuck with a used needle on the job
- during birth when the virus passes from an infected mother to her baby

About 1/3 of people who are infected with hepatitis B in the United States don't know how they got it.

Hepatitis B                                    7/11/2001

## 3 Who should get hepatitis B vaccine and when?

1) Everyone 18 years of age and younger
2) Adults over 18 who are at risk

Adults at risk for HBV infection include:
- people who have more than one sex partner in 6 months
- men who have sex with other men
- sex contacts of infected people
- people who inject illegal drugs
- health care and public safety workers who might be exposed to infected blood or body fluids
- household contacts of persons with chronic HBV infection
- hemodialysis patients

If you are not sure whether you are at risk, ask your doctor or nurse.

✓ **People should get 3 doses of hepatitis B vaccine according to the following schedule.** *If you miss a dose or get behind schedule, get the next dose as soon as you can. There is no need to start over.*

| Hepatitis B Vaccination Schedule | | WHO? | |
|---|---|---|---|
| | | Infant whose mother is infected with HBV | Infant whose mother is not infected with HBV | Older child, adolescent, or adult |
| **WHEN?** | First Dose | Within 12 hours of birth | Birth - 2 months of age | Any time |
| | Second Dose | 1 -2 months of age | 1 - 4 months of age (at least 1 month after first dose) | 1 - 2 months after first dose |
| | Third Dose | 6 months of age | 6 - 18 months of age | 4 - 6 months after first dose |

- The second dose must be given at least 1 month after the first dose.
- The third dose must be given at least 2 months after the second dose and at least 4 months after the first.
- The third dose should *not* be given to infants under 6 months of age, because this could reduce long-term protection.

Adolescents 11 to 15 years of age may need only two doses of hepatitis B vaccine, separated by 4-6 months. Ask your health care provider for details.

Hepatitis B vaccine may be given at the same time as other vaccines.



## 4 Some people should not get hepatitis B vaccine or should wait

People should not get hepatitis B vaccine if they have ever had a life-threatening allergic reaction to baker's yeast (the kind used for making bread) or to a previous dose of hepatitis B vaccine.



People who are moderately or severely ill at the time the shot is scheduled should usually wait until they recover before getting hepatitis B vaccine.

Ask your doctor or nurse for more information.

## 5 What are the risks from hepatitis B vaccine?

A vaccine, like any medicine, is capable of causing serious problems, such as severe allergic reactions. The risk of hepatitis B vaccine causing serious harm, or death, is extremely small.

Getting hepatitis B vaccine is much safer than getting hepatitis B disease.

Most people who get hepatitis B vaccine do not have any problems with it.

### Mild problems
* soreness where the shot was given, lasting a day or two (up to 1 out of 11 children and adolescents, and about 1 out of 4 adults)
* mild to moderate fever (up to 1 out of 14 children and adolescents and 1 out of 100 adults)

### Severe problems
* serious allergic reaction (very rare)

## 6 What if there is a moderate or severe reaction?

**What should I look for?**

Any unusual condition, such as a serious allergic reaction, high fever or unusual behavior. Serious allergic

reactions are extremely rare with any vaccine. If one were to occur, it would be within a few minutes to a few hours after the shot. Signs can include difficulty breathing, hoarseness or wheezing, hives, paleness, weakness, a fast heart beat or dizziness.

**What should I do?**

* Call a doctor, or get the person to a doctor right away.

* Tell your doctor what happened, the date and time it happened, and when the vaccination was given.

* Ask your doctor, nurse, or health department to report the reaction by filing a Vaccine Adverse Event Reporting System (VAERS) form.

  Or you can file this report through the VAERS web site at www.vaers.org, or by calling 1-800-822-7967.

  *VAERS does not provide medical advice*

## 7 The National Vaccine Injury Compensation Program

In the rare event that you or your child has a serious reaction to a vaccine, a federal program has been created to help you pay for the care of those who have been harmed.

For details about the National Vaccine Injury Compensation Program, call 1-800-338-2382 or visit the program's website at www.hrsa.gov/osp/vicp

## 8 How can I learn more?

* Ask your doctor or nurse. They can give you the vaccine package insert or suggest other sources of information.

* Call your local or state health department's immunization program.

* Contact the Centers for Disease Control and Prevention (CDC):
  - Call 1-800-232-4636 (1-800-CDC-INFO) or 1-888-443-7232
  - Visit the National Immunization Program's website at www.cdc.gov/nip or CDC's Division of Viral Hepatitis website at www.cdc.gov/hepatitis




**U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES**
Centers for Disease Control and Prevention
National Immunization Program

Vaccine Information Statement
Hepatitis B (7/11/01)                    42 U.S.C. § 300aa-26

ALABAMA DEPARTMENT OF CORRECTIONS
INMATE SUMMARY AS OF 03/29/2006

CBR716-3

INST: 043
CODE: CODRVK

AIS: 00187140     INMATE: WRIGHT, RICHARD WAYNE SR          RACE: B   SEX: M

INST: 043 - VENTRESS CORRECTIONAL CENTER     DORM: HO   JAIL CR: 000Y06M 06D

DOB: 08/15/1967   SSN: 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                    PREVIOUS AIS: P00530L4

ALIAS: WRIGHT, RICHARD                  ALIAS: WRIGHT, RICHARD W

ADM DT: 04/30/1996 DEAD TIME: 000Y 00M 00D

ADM TYP: NEW COMIT FROM CRT W/O REV OF       STAT: REMOVED FROM SEGREGATION

CURRENT CUST: MED-9   CURRENT CUST DT: 08/24/2004  PAROLE REVIEW DATE: AUG 2009

SECURITY LEVEL: (4) FOUR

SERVING UNDER ACT446 LAW IN CLASS IV        CURRENT CLASS DATE:  04/30/1996
INMATE IS EARNING : PROHIBITED FROM EARNING GOODTIME

| COUNTY | SENT DT | CASE NO | CRIME | JLPCR | TERM | |
|---|---|---|---|---|---|---|
| LEE | 04/30/95 | N95000005 | BURGLARY I | 0186 | 025Y 00M 00D | CS |
| | ATTORNEY FEES : $000250 | | HABITUAL OFFENDER = N | | | |
| | COURT COSTS : $0000323 | | FINES : $0000000 | RESTITUTION = $0000050 | | |
| LEE | 04/30/96 | N95000007 | ASSAULT II | 0186 | 010Y 00M 00D | CC |
| | COURT COSTS : $0000315 | | FINES : $0000000 | RESTITUTION = $0000050 | | |

| TOTAL TERM | MIN RELD DT | GOOD TIME BAL | GOOD TIME REV | LONG DATE |
|---|---|---|---|---|
| 025Y 00M 00D | 10/23/2020 | 000Y 00M 00D | 000Y 00M 00D | 10/23/2020 |

INMATE LITERALS
**********************************************************************

DETAINER WARRANTS SUMMARY
   INMATE CURRENTLY HAS NO DETAINER WARRANT RECORDS
**********************************************************************

ESCAPEE-PAROLE SUMMARY

   INMATE CURRENTLY HAS NO PAROLE RECORDS

   INMATE CURRENTLY HAS NO PROBATION 754 RECORDS

   INMATE HAS NO ESCAPES FROM ADOC SINCE OBSCIS RECORDING B
**********************************************************************

DISCIPLINARY/CITATION SUMMARY

>> DISCIPLINE: 03/23/2006  TIME LOST: 000Y00M00D   CUST FROM MED9 TO MED9
   DISCIPLINE TYPE: MAJOR              AT INST: 043   RULE NUMBER: 52
   RETAINED DAYS: 0000    SEQ #: 08   RULE LIT: INT. CREATE SECURITY/SAFETY/HEALTH

>> DISCIPLINE: 12/07/2005  TIME LOST: 000Y00M00D   CUST FROM MED9 TO MED9
   DISCIPLINE TYPE: MAJOR              AT INST: 043   RULE NUMBER: 56
   RETAINED DAYS: 0000    SEQ #: 07   RULE LIT: FAIL TO OBEY A DIRECT ORDER OF DO

CONTINUED ON NEXT PAGE
(Exhibit I)

CBR716#3

ALABAMA DEPARTMENT OF CORRECTIONS
INMATE SUMMARY AS OF 03/29/2006

INST: 043
CODE: CDRVK

*************************** CONTINUATION ***************************

AIS: 00187140    INMATE: WRIGHT, RICHARD WAYNE SR          RACE: B   SEX: M

*********************************************************************

DISCIPLINARY/CITATION SUMMARY

>> DISCIPLINE: 12/07/2005   TIME LOST: 00Y00M00D    CUST FROM MED9 TO MED9
   DISCIPLINE TYPE: MAJOR                  AT INST: 043     RULE NUMBER: 53
   RETAINED DAYS: 0000    SEQ #: 06    RULE LIT: INCITING TO RIOT OR RIOTING

>> DISCIPLINE: 12/01/2005   TIME LOST: 00Y00M00D    CUST FROM MED9 TO MED9
   DISCIPLINE TYPE: MAJOR                  AT INST: 043     RULE NUMBER: 29
   RETAINED DAYS: 0000    SEQ #: 05    RULE LIT: ASSAULT ON PERSONS ASSC. WITH DOC

>> DISCIPLINE: 05/10/2005   TIME LOST: 00Y00M00D    CUST FROM MED9 TO MED9
   DISCIPLINE TYPE: MAJOR                  AT INST: 043     RULE NUMBER: 62
   RETAINED DAYS: 0000    SEQ #: 04    RULE LIT: INT. CREATE SECURITY/SAFETY/HEALTH

>> DISCIPLINE: 12/01/2004   TIME LOST: 00Y00M00D    CUST FROM MED9 TO MED9
   DISCIPLINE TYPE: MAJOR                  AT INST: 045     RULE NUMBER: 31
   RETAINED DAYS: 0000    SEQ #: 03    RULE LIT: ASSAULT ON ANOTHER INMATE

>> DISCIPLINE: 09/22/2003   TIME LOST: 00Y00M00D    CUST FROM MIN9 TO MIN9
   DISCIPLINE TYPE: MAJOR                  AT INST: 045     RULE NUMBER: 38
   RETAINED DAYS: 0000    SEQ #: 02    RULE LIT: INDECENT EXPOSURE # EXHIBITION

   >> CITATION: 10/01/1997                  CUST FROM MED9 TO MED9
      CITATION TYPE: BEHAVIOR CITATION      AT INST: 004     RULE NUMBER: 85
   RETAINED DAYS: 0000    SEQ #: 01    RULE LIT: VIOLATION OF INSTIT. RULES OR REG

(Exhibit 19)

*Court Copy*

DEMENTIA EDUCATION AND TRAINING
20-50-70-thru 20-60-74

(7) The life expectancy for a dementia victim to 6 to 8 years after onset.

Alzheimer's disease and similar illness I do not contain lawyers intelligence information/knowledge, not the proper knowledge of the laws concerning civil procedures.

(6) Alabama currently has 52,800 dementia victim and will have almost 70,000 victims by the years 2010.

INFORMATION RECORDS AND RESEARCH DATA

(a) Generally § 20-50-61 The commissioner of mental health and or his authorized to receive data from private or public agencies or agents for the purpose of research and study in mental health. All data received shall be used by the commissioner or persons designated by him for research and study and for program planning. No criminal or civil action may be brought against any person or agency who shall provide or submit such data to the commissioner.

Prison official Copy

## DEMENTIA EDUCATION AND TRAINING

20-50-70 thru 20-50-74
(7) The life expectancy for a dementia victim to  6 to 8 years
after onset.
Alzheimer's discase and  similar illness I do not contain lawyers
intelligence information/knowledge, nor the proper knowledge of
the laws concerning civil procedures.
(6) Alabama currently has 52,800 dementia victim and will have
almost 70,000 victims by the years 2010.
    INFORMATION RECORDS AND RESEARCH DATA
(a) Generally § 20-50-61 The commissioner of mental health and or
his authorized to receive data from private or public agencies or
agents for the purpose of research and study in mental health.
All data received shall be used by the commissioner or persons
designated by him for research and study and for program
planning. No criminal or civil action may be brought against any
person or agency who shall provide or submit such data to the
commissioner.